## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY WIENER, derivatively on behalf of EATON VANCE MUNICIPALS TRUST,<br><br>Plaintiff,<br><br>v.<br><br>EATON VANCE DISTRIBUTORS, INC., BENJAMIN C. ESTY, ALLEN R. FREEDMAN, WILLIAM H. PARK, RONALD A. PEARLMAN, HELEN FRAME PETERS, HEIDI L. STEIGER, LYNN A. STOUT, RALPH F. VERNI, and THOMAS FAUST,<br><br>Defendants,<br><br>and<br><br>EATON VANCE MUNICIPALS TRUST,<br><br>Nominal Defendant. | Civil Action No. 10-10515-DPW |

## MEMORANDUM OF LAW OF THE INDEPENDENT TRUSTEE DEFENDANTS AND NOMINAL DEFENDANT EATON VANCE MUNICIPALS TRUST IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

GOODWIN PROCTER LLP

Stacey B. Ardini (BBO #663161)
53 State Street
Boston, MA 02109
(617) 570-1000

Mark Holland (*pro hac vice*)
Mary K. Dulka (*pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

*Attorneys for the Independent Trustee Defendants and the Trust*

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF PLAINTIFF'S ALLEGATIONS ........................................................2

    A.    The Parties ........................................................................... 2

    B.    Plaintiff's Allegations ............................................................. 4

    C.    Plaintiff's Pre-Lawsuit Demand and the Board's Response ..................... 6

        1.    The Board's Consideration of the Demand Letter ....................... 6

        2.    The Response to Plaintiff's Demand ...................................... 8

            a.    Meaning of the Term "Special Compensation" ................. 8

            b.    Impact of the *Financial Planning* Decision...................... 8

            c.    Alleged Violations of Law...................................... 9

            d.    Relative Costs and Benefits to Taking Actions in Demand Letter ...................................................................... 9

ARGUMENT .............................................................................................10

I.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 23.1 AND MASSACHUSETTS LAW ..................................................10

    A.    The Pleading Requirements For Derivative Actions ............................. 10

        1.    Fed. R. Civ. P. 23.1 ...................................................... 10

        2.    Massachusetts' Business Judgment Rule................................. 11

    B.    The Complaint Fails to Plead Particularized Facts to Rebut the Business Judgment Presumption............................................................. 13

        1.    A Majority of the Board Was Independent................................ 13

        2.    The Board Rejected the Demand in Good Faith and After a Reasonable Inquiry ...................................................... 14

    C.    Plaintiff's Conclusory Allegations of Illegal Conduct Do Not Preclude Application of the Business Judgment Rule ......................................... 15

II.  PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST THE INDEPENDENT TRUSTEES ................................................................................16

    A.    The Complaint Fails to Allege Sufficient Facts to State a Claim for Breach of Fiduciary Duty for Failure to Oversee the Trust's Distribution Payments.......... 16

    B.    Plaintiff Fails to State a Claim for Waste of the Trust's Assets ............................. 19

CONCLUSION...........................................................................................................................20

LIBNY/4915781.1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

Abramowitz v. Posner,
    672 F.2d 1025 (2d Cir. 1982)................................................................11

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009).....................................................................16

Blake v. Smith,
    2006 WL 4114305 (Mass. Super. Dec. 11, 2006) ............................18, 19

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) ..................................................................19

Canadian Commercial Workers Indus. Pension Plan v. Alden,
    2006 WL 456786 (Del. Ch. Feb. 22, 2006) ........................................18

In re Caremark International Inc. Derivative Litigation,
    698 A.2d 959 (Del. Ch. 1996)........................................................ 17-18

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984)............................................................................11

Desimone v. Barrows,
    924 A.2d 908 (Del. Ch. 2007)............................................................18

Financial Planning Association v. SEC,
    482 F.3d 481 (D.C. Cir. 2007)..................................................... passim

Gonzalez Turul v. Rogatol Distributors, Inc.,
    951 F.2d 1 (1st Cir. 1991)...................................................................11

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996) ................................................................12

Halebian v. Berv,
    590 F.3d 195 (2d Cir. 2009)..............................................................13

Halpert Enterprises, Inc. v. Harrison,
    2008 WL 4585466 (2d Cir. Oct. 15, 2008).........................................11

Harhen v. Brown,
    431 Mass. 838 (2000) ......................................................... 11-12, 13, 17

LIBNY/4915781.1

*ING Principal Protection Funds Derivative Litig.*,
    369 F. Supp. 2d 163 (D. Mass. 2005) ........................................................13

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) .................................................................................11

*In re Kauffman Mutual Fund Actions*,
    479 F.2d 257 (1st Cir. 1973) ....................................................................15

*Landy v. D'Alessandro*,
    316 F. Supp. 2d 49 (D. Mass. 2004) ..........................................................15

*Levine v. Smith*,
    591 A.2d 194 (Del. 1991) ...................................................................12, 15

*Litt v. Wycoff*,
    2003 WL 1794724 (Del. Ch. Mar. 28, 2003).............................................16

*Sachs v. Sprague*,
    401 F. Supp. 2d 159 (D. Mass. 2005) ........................................................17

*Stegall v. Ladner*,
    394 F. Supp. 2d 358 (D. Mass. 2005) ........................................................13

*Stiegele ex rel. Viisage Tech., Inc. v. Bailey*,
    2007 WL 4197496 (D. Mass. Aug. 23, 2007) .......................................17, 18

*In re Stratus Computer, Inc. Securities Litigation*,
    1992 WL 73555 (D. Mass. Mar. 27, 1992)..................................................17

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 80a-46(b) ....................................................................................6

15 U.S.C. § 80b-2(11) ....................................................................................4

15 U.S.C. § 80b-2(11)(C) ....................................................................5, 8, 9, 14

15 U.S.C. § 80b-2(11)(F) ................................................................................5

17 C.F.R. § 270.12b-1 ............................................................................ *passim*

17 C.F.R. § 275.202(a)(11)-1.......................................................................5, 8

Fed. R. Civ. P. 8(a) ...............................................................................2, 16, 17

Fed. R. Civ. P. 9(b) ..............................................................................1, 2, 17

iv

Fed. R. Civ. P. 12(b)(6).............................................................................................................1, 11

Fed. R. Civ. P. 23.1 ............................................................................................................. *passim*

Mass. Gen. Laws ch. 156D, § 7.42 ..........................................................................................12

Mass. Gen. Laws ch. 156D, § 7.44(a)...........................................................................12, 13, 14

Mass. Gen. Laws ch. 156D, § 7.44(d) .................................................................................. 12-13

Mass. Gen. Laws ch. 182 ..................................................................................................11, 13

v

Defendants Benjamin C. Esty, Allen R. Freedman, William H. Park, Ronald A. Pearlman, Helen Frame Peters, Heidi L. Steiger, Lynn A. Stout and Ralph F. Verni (together, the "Independent Trustees") and Nominal Defendant Eaton Vance Municipals Trust (the "Trust") submit this memorandum of law in support of their motion, pursuant to Rules 23.1, 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint in its entirety, with prejudice.

## PRELIMINARY STATEMENT

Plaintiff, purportedly a shareholder of the Trust, brings this action derivatively on behalf of the Trust against its Trustees for breach of fiduciary duty and waste. Plaintiff has also sued the Trust's distributor, Eaton Vance Distributors, Inc. ("EVD"), for violations of the Investment Company Act of 1940 ("ICA") and common law. Plaintiff's allegations arise out of payments the Trust makes to brokers for selling and servicing its shares. These payments are made pursuant to a Rule 12b-1 Plan, so-called because the Plan was implemented in accordance with the Securities and Exchange Commission's ("SEC") Rule 12b-1, which was promulgated in 1980 to permit investment companies such as the Trust to pay for certain marketing and distributions expenses out of fund assets. Plaintiff argues that these payments suddenly have become unlawful because of a 2005 decision by the United States Court of Appeals for the District of Columbia Circuit that did not consider the issue or even mention Rule 12b-1.

Before bringing his lawsuit, Plaintiff made a demand upon the Trust's Board that the Trust cease making such payments and sue the brokers who sell Trust shares to collect such past payments. The Board -- including a majority of its Trustees who are unaffiliated with the Trust's adviser or distributor and thus are considered "independent" -- carefully and thoroughly considered Plaintiff's allegations. The Board determined, in the exercise of its reasonable business judgment, that the payments are not unlawful, and that it would not be in the best interests of the Trust or its

shareholders to take the actions Plaintiff demanded.  The Board's decision to reject Plaintiff's

demand is entitled to protection under the business judgment rule.  Plaintiff has failed to plead

particularized facts as required by Rule 23.1 and Massachusetts law, explaining why this Court

should not respect the business judgment rule.

Plaintiff's claims against the Independent Trustees also should be dismissed for the

separate and independent reason that the Complaint fails to state a claim for breach of fiduciary

duty or waste of Trust assets.  Plaintiff's conclusory allegations of intentional, conscious

wrongdoing by the Independent Trustees in permitting the allegedly unlawful payments do not

meet the pleading standards of Rule 8(a), let alone Rule 9(b) of the Federal Rules of Civil

Procedure, particularly when no court or other regulatory authority has deemed such payments to

be unlawful.[1]

## STATEMENT OF PLAINTIFF'S ALLEGATIONS

### A.    The Parties

Plaintiff alleges that he owns Class C shares of the Eaton Vance National Municipal

Income Fund ("Income Fund"), one of the twenty-five separate "series" or mutual funds (the

"Funds") that comprise the Trust.[2]  The Trust is an open-end management investment company

registered with the SEC under the ICA.[3]  The Income Fund's investment objective is to provide

current income exempt from regular federal income tax.[4]

---

[1]    The Independent Trustees also incorporate the arguments contained in EVD's and Thomas Faust's June 7, 2010 Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint ("EVD Memorandum"), to the extent that those arguments apply to the claims against the Independent Trustees.

[2]    Compl. ¶¶ 10-11.

[3]    Compl. ¶¶ 2, 11.

[4]    See Income Fund's February 1, 2009 Prospectus ("Prospectus") at 2.  EVD is submitting a copy of the Income Fund's Prospectus and its Statement of Additional Information ("SAI") in connection with its Memorandum.  See Declaration of Jeffrey B. Maletta ("Maletta Decl."), Exhibits A and B.

LIBNY/4915781.1

The Trust's Board (the "Board") consists of nine trustees, all of whom are named as defendants.  The eight Independent Trustees have no affiliation with the Trust's adviser, Boston Management and Research ("BMR"), or EVD.[5]  The Independent Trustees are:

- Benjamin C. Esty, a Professor of Business Administration and Finance Unit Head at the Harvard University Graduate School of Business Administration;

- Allen R. Freedman, a private investor and consultant, and a director of Assurant, Inc. (insurance provider) and Stonemor Partners (owner/operator of cemeteries);

- William H. Park, Vice Chairman of Commercial Industrial Finance Corp., a specialty finance company;

- Ronald A. Pearlman, a Professor of Law at Georgetown University Law Center;

- Helen Frame Peters, a Professor of Finance at the Carroll School of Management at Boston College, and an Adjunct Professor of Finance at Peking University in Beijing, China;

- Heidi L. Steiger, a Managing Partner at Topridge Associates LLC, a global wealth management firm;

- Lynn A. Stout, a Professor of Corporate and Securities Law at the University of California at Los Angeles School of Law; and

- Ralph F. Verni, Chairman of the Trust's Board, a consultant and private investor.

The ninth Trustee, Thomas Faust, is CEO and President of BMR, and is classified by the Trust as "interested" under the ICA.[6]

EVD acts as the principal underwriter for Trust shares.[7]  SEC Rule 12b-1, adopted in 1980, allows an investment company such as the Trust to use its own assets to pay for the distribution of its shares.[8]  Since 1997, the Trust has had Rule 12b-1 plans for distribution of its shares, which

---

[5]   *See* Compl. ¶¶ 12-18 and Ex. 2, February 8, 2010 Letter at Ex. A.  *See also* Maletta Decl. Ex. B, SAI at 11.

[6]   Compl. ¶ 19; *see also* Maletta Decl. Ex. B, SAI at 10.

[7]   Compl. ¶ 20.

[8]   *See* Compl. ¶ 45 (quoting 17 C.F.R. § 270.12b-1(a)(2)).

3

continue in effect from year to year so long as they are approved at least annually by the Trustees.[9]

Pursuant to those plans, the Trust pays EVD for distributing its shares pursuant to a distribution

agreement with EVD, and EVD then enters into selling agreements with broker-dealers who

distribute (*i.e.*, sell) Trust shares to public investors.[10]

### B.     Plaintiff's Allegations

The Complaint focuses on the Trust's payments to EVD pursuant to the Rule 12b-1 Plans,

and certain payments by EVD to broker-dealers.  These payments are calculated based on daily net

asset values of Trust shares.[11]  The Complaint refers to these payments as "Asset-Based

Compensation."[12]  According to the Complaint, because the distribution agreements between the

Trust and EVD and the selling agreements between EVD and the broker-dealers authorize

payments of such Asset-Based Compensation to EVD and broker-dealers, those payments are

unlawful under the ICA, the Investment Advisers Act of 1940 ("Advisers Act"), and the D.C.

Circuit's decision in *Financial Planning Association v. SEC*, 482 F.3d 481 (D.C. Cir. 2007).[13]

The Complaint argues that Section 202(a)(11) of the Advisers Act defines an "investment

adviser" as "any person who, for compensation, engages in the business of advising others . . . as

to the value of securities or as to the advisability of investing in, purchasing, or selling

securities."[14]  Absent an exception, then, a broker-dealer who falls within this definition must

register under the Advisers Act and establish "advisory accounts" for its customers subject to the

Advisers Act's requirements (as opposed to regular brokerage accounts not governed by the

---

[9]     *See* Maletta Decl. Ex. B, SAI at 22.

[10]    Compl. ¶ 45.  A fuller description of EVD's agreement with the Trust appears in EVD's
        Memorandum.

[11]    Compl. ¶¶ 45-46.

[12]    Compl. ¶¶ 4, 46.

[13]    Compl. ¶ 3.

[14]    Compl. ¶ 22; *see* 15 U.S.C. § 80b-2(11).

4

Advisers Act).  Congress provided such an exception in Section 202(a)(11)(C) – the "Broker-Dealer Exclusion" – which states that the term "investment adviser" does not include any broker or dealer whose provision of investment advice is "solely incidental" to the conduct of its business as a broker or dealer and who receives no "special compensation" for that advice.[15]  Plaintiff contends that, although the Advisers Act does not define the term "special compensation," it means "any form of compensation other than transactional commissions," including Asset-Based Compensation.[16]

Under Section 202(a)(11)(F), the SEC also can designate other persons to be excluded from the Advisers Act.[17]  The Complaint discusses how the SEC invoked that authority to enact a new rule in 2005, SEC Rule 202(a)(11)-1, which provided that a broker "will not be deemed to be an investment adviser based solely on its receipt of special compensation" if certain disclosure and other conditions are met.[18]  The Financial Planning Association petitioned the D.C. Circuit Court to overturn the SEC's new rule on the grounds that the SEC lacked authority to promulgate it.  The court agreed and struck SEC Rule 202(a)(11)-1 as of October 1, 2007.[19]

According to the Complaint, the decision in *Financial Planning* means that "as of October 1, 2007, broker-dealers [who are not registered under the IAA] can not receive Asset-Based Compensation with respect to brokerage accounts."[20]  Because the Trust and EVD made and continue to make such allegedly unlawful Asset-Based Compensation payments, Plaintiff brings claims against EVD for breach of contract and to void the Trust's distribution agreement with

---

[15]   Compl. ¶ 23; *see* 15 U.S.C. § 80b-2(11)(C).

[16]   Compl. ¶ 25.

[17]   Compl. ¶ 30; *see* 15 U.S.C. § 80b-2(11)(F).

[18]   Compl. ¶ 30 & n.5; *see* 17 C.F.R. § 275.202(a)(11)-1(a)(1) and (c).

[19]   Compl. ¶¶ 32-33; *see Financial Planning*, 482 F.3d at 488-89.

[20]   Compl. ¶ 34.

EVD under ICA Section 47(b).  Plaintiff also brings claims against the Trustees for common law

breach of fiduciary duty and waste of Trust assets for allowing these supposedly unlawful

payments.[21]

### C.    Plaintiff's Pre-Lawsuit Demand and the Board's Response

Plaintiff brings his complaint derivatively on behalf of the Trust.  Before filing suit, on

September 17, 2009, Plaintiff's counsel sent a Demand Letter to the Trust's Board, making the

same allegations contained in the Complaint.  Plaintiff demanded that the Board "[c]ause the Trust

to cease funding or permitting payments of Asset-Based Compensation to broker-dealers" and

"[t]ake all reasonable and necessary steps, including litigation, to restore to the Trust" all such past

payments.[22]  On February 8, 2010, independent legal counsel for the Independent Trustees, at the

direction of the Board, sent a seven-page letter (the "Response Letter") rejecting Plaintiff's

demand.[23]

#### 1.    The Board's Consideration of the Demand Letter

As the Response Letter explains, the Demand Letter was presented to the Board at its

regularly scheduled meeting on October 19, 2009.[24]  The Board authorized and directed its

Compliance Reports and Regulatory Matters Committee (the "CRRMC") to consider the demand

and make recommendations to the Independent Trustees and the entire Board.[25]  Three of the

Independent Trustees — Ronald A. Pearlman, a Professor of Law, Lynn A. Stout, a Professor of

---

[21]    Compl. ¶¶ 57-80.

[22]    *See* Compl. Ex. 1, at 9.

[23]    *See* Compl. Ex. 2.

[24]    The Response Letter mistakenly states October 19, 2008, but obviously occurred after receipt of the
Demand Letter.  (Response Letter at 1.)

[25]    Response Letter at 1.

Law, and Heidi L. Steiger, an asset management executive — comprise the CRRMC.[26]  The

CRRMC, together with the other Independent Trustees, took legal advice from Goodwin Procter

LLP, independent legal counsel to the Independent Trustees, and Morgan Lewis & Bockius LLP,

special independent legal counsel to the Independent Trustees retained to provide advice

concerning Plaintiff's demand.[27]

The CRRMC reviewed and analyzed the relevant agreements and arrangements involving

the Trust, EVD, and broker-dealers for the sale and servicing of Trust shares.  The CRRMC

considered whether any of those payments involved violations of law.  It also analyzed the costs

and benefits associated with taking the actions requested in the Demand Letter.  The CRRMC

concluded that "the foregoing payments do not constitute violations of law and that it would not be

in the best interests of the Trust or its shareholders to pursue the actions identified in the Demand

Letter."[28]

At a February 8, 2010 Board meeting, the CRRMC presented its recommendations -- as

well as the basis for such recommendations -- first to the Independent Trustees, without any

representatives from EVD or its affiliates present, and then to the full Board.[29]  The full Board, as

well as the Independent Trustees voting separately, voted to accept the CRRMC's

recommendation and reject Plaintiff's demand.[30]  The Board also directed independent legal

---

[26]  *Id.* at Ex. A; *see also* Maletta Decl. Ex. B, SAI at 13.

[27]  Response Letter at 2.

[28]  *Id.*

[29]  *Id.*

[30]  *Id.*  As the Response Letter notes, Thomas Faust – the only Trustee who is not Independent – abstained
from the full Board vote.  *Id.* at 2 n.2.

counsel for the Independent Trustees to deliver the Response Letter to Plaintiff's Counsel explaining the reasons for its decision.[31]

### 2.   The Response to Plaintiff's Demand

The Response Letter explained the principal reasons for the Board's rejection of Plaintiff's demands.

### a.   Meaning of the Term "Special Compensation"

The Board, acting through the CRRMC, examined the various types of Asset-Based Compensation which the Trust pays to EVD under the Rule 12b-1 plans and distribution agreements, as well as the payments by EVD to brokers under various selling and marketing support agreements, and determined that none of the payments is directly attributable to or specifically for the provision of investment advice.[32]  The Board also determined that the term "special compensation" as used in Section 202(a)(11)(C) refers to compensation (regardless of form) paid to a broker that is directly attributable to or specifically for the broker providing investment advice, and thus all Asset-Based Compensation is not necessarily "special compensation."[33]  The Board therefore concluded the payments at issue by the Trust and EVD are not "special compensation" as that term is used in Section 202(a)(11)(C), because they are not paid for investment advice.

### b.   Impact of the *Financial Planning* Decision

The Board concluded that *Financial Planning* stood for the proposition that the SEC lacked authority to adopt Rule 202(a)(11)-1.  The Board found no evidence that the treatment of Rule 12b-1 fees for purposes of Section 202(a)(11)(C) was an issue presented to the court in *Financial*

---

[31]   *Id.* at 7.

[32]   *Id.* at 4-5.

[33]   *Id.* at 2.

8

*Planning*.  The court "did not determine, explicitly or implicitly, that Rule 12b-1 fees or any other particular form of 'asset-based' compensation constitutes 'special compensation' for purposes of Section 202(a)(11)(C) in all instances."[34]

The Board found it "highly unreasonable" that if the court intended to address the issue, it would have ignored without comment more than 25 years of regulatory action regarding Rule 12b-1 fees.[35]  The Board also found that if Plaintiff's interpretation of *Financial Planning* was correct (*i.e.*, that all Asset-Based Compensation such as Rule 12b-1 payments to brokers is now prohibited unless they establish advisory accounts), it was "highly unreasonable" to think that the SEC and FINRA – the authorities charged with overseeing regulation of mutual funds and broker-dealers – "would have failed to take any action to put these industries on notice of such interpretation subsequent to *Financial Planning*."[36]

      c.     <u>Alleged Violations of Law</u>

Because the Board concluded that the payments to EVD and the selling brokers do not constitute "special compensation" and thus did not violate the law, it found "no evidence to suggest that the policies and procedures of the Trust and its service providers are inadequate to prevent such alleged violations of law." [37]  The Board therefore concluded that payments under the Trust's Rule 12b-1 plans did not constitute "waste" of the Trust's assets.[38]

      d.     <u>Relative Costs and Benefits to Taking Actions in Demand Letter</u>

The Board also considered the relative costs and benefits of taking the actions demanded. For the reasons stated above, the Board determined that the likelihood of prevailing on such claims

---

[34] *Id.* at 3.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 5.

[38] *Id.* at 6.

LIBNY/4915781.1

was "extremely remote."[39]  The Board also concluded that, "in the absence of any court or regulatory pronouncement requiring different action while such claims are pending," brokers would likely refuse to establish "advisory accounts" for their customers holding Trust shares, and instead would encourage customers to exchange their Trust shares for other mutual funds, causing the Trust to lose assets, which would harm the remaining shareholders.[40]

*  *  *

The Response Letter concluded that, for all of the reasons discussed therein, the Board (including all of the Independent Trustees voting separately), in the exercise of its reasonable business judgment, determined that the payments identified in the Demand Letter do not result in violations of law and that it would not be in the best interests of the Trust or its shareholders to take the actions Plaintiff demanded.[41]  This lawsuit followed.

**ARGUMENT**

**I.**

**THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 23.1 AND MASSACHUSETTS LAW**

**A.    The Pleading Requirements For Derivative Actions**

1.    <u>Fed. R. Civ. P. 23.1</u>

Because this is a derivative action, Plaintiff's complaint must comply with Rule 23.1 of the Federal Rules of Civil Procedure.  Rule 23.1 states that "[t]he complaint *shall . . . allege with particularity* the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1 (emphasis added).  The United States Supreme Court has explained

---

[39]    *Id.* at 6.

[40]    *Id.* at 7.

[41]    *Id.*

10

that Rule 23.1 is grounded in "the basic principle of corporate governance that the decisions of a

corporation – including the decision to initiate litigation – should be made by the board of

directors." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530 (1984).  This "'demand

requirement' affords the directors an opportunity to exercise their reasonable business judgment

and 'waive a legal right vested in the corporation in the belief that its best interests will be

promoted by not insisting on such right.'"[42]  A court should dismiss a derivative complaint on a

Rule 12(b)(6) motion where a plaintiff fails to plead particularized facts demonstrating why the

refusal of his demand was wrongful.[43]

### 2. Massachusetts' Business Judgment Rule

Federal courts should apply the substantive law of the company's state of incorporation to

determine what facts must be pleaded regarding demand.  *Kamen v. Kemper Fin. Servs., Inc.*, 500

U.S. 90, 96-97 (1991).[44]  Here, the Trust is a voluntary association or trust with transferrable

shares established under Chapter 182 of the Massachusetts General Laws, commonly referred to as

a "Massachusetts business trust." [45]  Massachusetts law therefore applies.

A "basic principle of corporate governance" under Massachusetts law (as in many other

states) is the business judgment rule, which recognizes that "the board of directors . . .  should set

the corporation's business policy, including the decision whether to pursue a lawsuit."  *Harhen v.*

---

[42]   *Id.* at 533 (citation omitted).

[43]   *See, e.g., Halpert Enterprises, Inc. v. Harrison,* 2008 WL 4585466, at *3 (2d Cir. Oct. 15, 2008)
(affirming dismissal of derivative complaint where the plaintiff's allegations with regard to the board
committee's investigation of the demand "did not raise a reasonable doubt as to whether the board
satisfied its duty of due care," and thus the plaintiff "has not met the heavy burden imposed upon it");
*Abramowitz v. Posner,* 672 F.2d 1025, 1034 (2d Cir. 1982) (affirming dismissal of derivative
complaint where the plaintiffs did not allege any facts to show that rejection of their demand was
wrongful).

[44]   *Accord Gonzalez Turul v. Rogatol Distributors, Inc.*, 951 F.2d 1, 2 (1st Cir. 1991) (applying law of
state of incorporation).

[45]   Compl. ¶ 11.

LIBNY/4915781.1

*Brown*, 431 Mass. 838, 844-48 (2000).  In *Harhen*, the Supreme Judicial Court of Massachusetts

explained:  "[t]he business judgment rule affords protection to the business decisions of directors,

including the decision to institute litigation, because directors are presumed to act in the best

interests of the corporation."[46]  Courts have long held that unless a plaintiff alleges facts that

"challenge the board's good faith or the reasonableness of the board's investigation of the

plaintiff's demand," an independent board's decision to refuse a plaintiff's demand "is entitled to

the protection of the business judgment rule" and the plaintiff's complaint should be dismissed.[47]

In 2004, the Massachusetts Legislature codified and strengthened the common law business

judgment rule by enacting the Massachusetts Business Corporation Act, G.L. c. 156D (the

"MBCA").  Massachusetts now requires that before instituting a derivative action, a shareholder

must demand in writing that the board of directors (or comparable authority) take suitable action.

Mass. Gen. Laws ch. 156D, § 7.42.  Section 7.44(a) then provides, in relevant part:

> A derivative proceeding commenced after rejection of a demand
> shall be dismissed by the court on motion by the corporation if the
> court finds that . . . [a majority of independent directors] has
> determined in good faith after conducting a reasonable inquiry upon
> which its conclusions are based that the maintenance of the
> derivative proceeding is not in the best interests of the corporation.[48]

Section 7.44(d) sets forth a procedure for the corporation to seek dismissal of a derivative

claim.  It provides that if the company establishes that a majority of the board was independent

when it rejected the plaintiff's demand, and that the board rejected the demand in good faith after

---

[46]   *Id.* at 845.

[47]   *Id.* at 844-45.  *See also Grimes v. Donald*, 673 A.2d 1207, 1220 (Del. 1996) (affirming dismissal of the
complaint for "fail[ure] to include particularized allegations which would raise a reasonable doubt that
the Board's decision to reject the demand was the product of a valid business judgment"); *Levine v.
Smith*, 591 A.2d 194, 215 (Del. 1991) (affirming dismissal of the derivative complaint "for failure to
plead particularized facts sufficient to create a reasonable doubt" that the Board's rejection of the
demand was wrongful).  As seen in *Harhen*, Massachusetts courts often cite and rely upon Delaware
case law regarding the business judgment rule and refusal of demand.  *E.g., Harhen*, 431 Mass. at 845.

[48]   Mass. Gen. Laws ch. 156D, § 7.44(a).

LIBNY/4915781.1

reasonable inquiry, and the plaintiff does not plead particularized facts to rebut this showing, then the complaint must be dismissed under Section 7.44(d).[49]

Chapter 156D, by its terms, applies to business corporations.  Although no Massachusetts state court has yet decided the issue, this Court has held that those requirements also apply to business trusts organized under Mass. Gen. Laws ch. 182.[50]  Application of these rules requires the dismissal of Plaintiff's Complaint here.[51]

### B.    The Complaint Fails to Plead Particularized Facts to Rebut the Business Judgment Presumption

#### 1.    A Majority of the Board Was Independent

There appears to be no dispute that the Independent Trustees – who occupy eight seats on the Trust's nine-member Board – are independent.  Plaintiff's own Complaint acknowledges that eight out of the nine Trustees are classified as "independent" within the meaning of the ICA.[52]  As Exhibit A to the Response Letter demonstrates, none of the Independent Trustees is or was during the relevant time period a director, officer, employee or other "interested person" of EVD or the

---

[49]   Section 7.44(d) states:  "If the corporation moves to dismiss the derivative suit, it shall make a written filing with the court setting forth facts to show (1) whether a majority of the board of directors was independent at the time of the determination by the independent directors and (2) that the independent directors made the determination in good faith after conducting a reasonable inquiry upon which their conclusions are based.  Unless otherwise required by subsection (a), the court shall dismiss the suit unless the plaintiff has alleged with particularity facts rebutting the corporation's filing in its complaint or an amended complaint or in a written filing with the court."  Mass. Gen. Laws ch. 156D, § 7.44(d).

[50]   *See ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005) (a business trust "in practical effect is in many respects similar to a corporation," and therefore universal demand requirement of ch. 156D applies to business trusts) (citation and internal quotation marks omitted); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 367 (D. Mass. 2005) (same).

[51]   Very few reported decisions – none of which is analogous here -- discuss application of Section 7.44(a) or (d).  In one case, the plaintiff sent a demand letter to the board, but then filed a derivative action before the board finished considering the demand, and the Second Circuit recently certified a question to the Massachusetts Supreme Judicial Court as to whether Section 7.44 applies in that situation.  *See Halebian v. Berv*, 590 F.3d 195 (2d Cir. 2009).  Prior to Section 7.44's enactment, however, courts routinely dismissed derivative complaints for failure to allege facts showing that an independent board's refusal of a demand was not based on a reasonable, good faith exercise of their business judgment.  *E.g., Harhen*, 431 Mass. at 844-48.

[52]   *See* Compl. ¶¶ 12-19.

Trust's adviser, BMR.  A majority of the Trust's Board thus was independent at the time it

considered Plaintiff's demand and voted to reject that demand at its February 8, 2010 meeting.[53]

> 2.   The Board Rejected the Demand in Good Faith and After a Reasonable Inquiry

The Response Letter also demonstrates that the Board "made the determination [to reject

the demand] in good faith after conducting a reasonable inquiry upon which their conclusions are

based."[54]  The Independent Trustees conducted a detailed and thorough review, assisted

throughout by highly experienced independent counsel.  As discussed *supra*, following extensive

analysis, the Board determined that:

- None of the payments at issue was directly attributable to or specifically for the provision of investment advice and thus did not fall within the meaning of "special compensation;"

- The court in *Financial Planning* did not decide that Rule 12b-1 fees or any other particular form of "asset-based" compensation constitutes "special compensation" for purposes of Section 202(a)(11)(C) in all instances;

- Because the payments at issue did not involve violations of law, there was no waste of Trust assets from those payments, nor were the Trust's or EVD's policies and procedures inadequate; and

- The probability of any recovery to the Trust was extremely remote and would likely result in loss of Trust assets while the claims were pending, as brokers moved their customers to other mutual funds rather than establish "advisory accounts."

The Board therefore exercised its reasonable business judgment and concluded that Plaintiff's

claims had no merit and that instituting legal action as demanded by Plaintiff would not be in the

best interest of the Trust.  The Response Letter thus makes the showing required by Massachusetts

law.

---

[53]   *See* Response Letter at 2; *see also* Maletta Decl. Ex. B, SAI at 11.

[54]   Mass. Gen. Laws ch. 156D, § 7.44(d).

14

### C.    Plaintiff's Conclusory Allegations of Illegal Conduct Do Not Preclude Application of the Business Judgment Rule

The Complaint does not even attempt to plead facts to rebut the showing that the Board was independent and acted in good faith and after reasonable inquiry in rejecting Plaintiff's demand.  Instead, Plaintiff attempts to circumvent the business judgment rule by alleging that "no business judgment is involved in deciding to continue to violate the federal securities laws."[55] Such a tautological allegation does not protect a complaint from dismissal under the business judgment rule.

As the First Circuit has explained, a shareholder derivative action "necessarily alleges some illegal transaction or conduct harmful to the corporation."  *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 265 (1st Cir. 1973).  Such an allegation does not take a complaint outside the business judgment rule.  In *Kauffman*, the plaintiff alleged that the mutual funds' management fees were excessive and noncompetitive in purported violation of the ICA and the antitrust laws. The First Circuit noted that if by merely making such allegation, "the directors are to be presumed incapable of exercising sound business judgment," then "Rule 23.1 would become virtually meaningless – a stockholder would be entitled to try the case on the merits, (viz., to establish that the fees were excessive, or improperly arrived at, or in violation of the antitrust laws) to show that he had a right to bring it."[56]  The "hard core" of the business judgment doctrine covers situations in which directors might approve a decision that, "in the end, proves to be unlawful."  *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 64 (D. Mass. 2004).  Hence, in *Landy*, the court applied the

---

[55]    Compl. ¶ 56.

[56]    *Id.* Although *Kauffman* and other cases discussed *infra* are demand futility cases, not demand refused cases, the pleading standard in both contexts is whether the facts alleged create a "reasonable doubt" that the board's actions should be protected by the business judgment rule. *See, e.g., Levine v. Smith*, 591 A.2d 194, 210-12 (Del. 1991).

LIBNY/4915781.1

business judgment rule despite the plaintiff's allegations that the compensation plan at issue violated the company's reorganization plan and Massachusetts law.[57]

Here, Plaintiff's conclusory allegation of illegal conduct likewise does not preclude dismissal of his complaint.  Because Plaintiff has failed to plead any facts – let alone the requisite particularized facts under Rule 23.1 – as to why the Board's rejection of his demand is not entitled to protection under the business judgment rule, Plaintiff's Complaint should also be dismissed for failure to comply with Rule 23.1.

## II.

### PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST THE INDEPENDENT TRUSTEES

Plaintiff's claims against the Independent Trustees should be dismissed for the separate and independent reason that the Complaint fails to state a claim for breach of fiduciary duty or waste of Trust assets.  As the United States Supreme Court recently stated, under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[58]  Plaintiff has not done so here.

### A.   The Complaint Fails to Allege Sufficient Facts to State a Claim for Breach of Fiduciary Duty for Failure to Oversee the Trust's Distribution Payments

Plaintiff's breach of fiduciary duty claim alleges that all of the Trustees engaged in an "intentional dereliction of duty" and a "conscious disregard" of their responsibilities and acted in

---

[57]   *See also Litt v. Wycoff*, 2003 WL 1794724, at *7 (Del. Ch. Mar. 28, 2003) (rejecting the plaintiff's allegations that a bank's decision to implement an employee compensation program was not entitled to protection under the business judgment rule because it was illegal).

[58]   *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1955 (2007)).

LIBNY/4915781.1

"bad faith" to the shareholders by permitting unlawful payments of Asset-Based Compensation to broker-dealers in connection with Trust shares held in brokerage accounts.[59]  As this Court has stated, "[c]laims alleging intentional breaches of fiduciary duties are subject to the heightened pleading requirements of Rule 9(b)."  *Sachs v. Sprague*, 401 F. Supp. 2d 159, 170, n.15 (D. Mass. 2005).  Thus, in *In re Stratus Computer, Inc. Securities Litigation*, 1992 WL 73555, at *7-8 (D. Mass. Mar. 27, 1992), the court dismissed derivative breach of fiduciary duty claims under Massachusetts law for failure to satisfy Rule 9(b) where "[i]t is not at all clear which defendants are alleged to have performed what specific acts that would constitute" such a breach.  Here, Plaintiff's Complaint does not charge any particular Trustee with any specific wrongdoing, and instead makes a blanket assertion as to all Trustees which falls short of Rule 9(b)'s requirements.

Even under Rule 8(a), let alone Rule 9(b), Plaintiff's breach of fiduciary duty claim fails. The Trustees' purported failure to oversee "the compliance policies and procedures of the Trust and its service providers" which permitted the allegedly unlawful payments, as well as their alleged failure to "investigate the legality of the broker-dealer compensation payments," are known in corporate jurisprudence as "*Caremark*" claims.[60]

As this Court has recognized, *Caremark* claims are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Sachs*, 401 F. Supp. 2d at 164 (quoting *Caremark*, 698 A.2d at 967); *accord Stiegele ex rel. Viisage Tech., Inc. v. Bailey*, 2007 WL 4197496, at *10 (D. Mass. Aug. 23, 2007).  Specifically,

> Where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation, … only a *sustained or systematic failure* of the board to exercise oversight – such as an *utter failure* to attempt to assure a

---

[59]   Compl. ¶¶ 72-73.

[60]   Compl. ¶ 72-73; *see In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996).  As noted *supra*, Massachusetts courts frequently look to Delaware for guidance on corporate issues.  *See, e.g., Harhen,* 431 Mass. at 845.

> reasonable information and reporting system exists – will establish the lack of good faith that is a necessary condition to liability.

*Caremark*, 698 A.2d at 971 (emphasis added). Imposition of liability for failure to monitor thus "require[s] a finding that the directors acted with the state of mind traditionally used to define the mindset of a disloyal director – bad faith – because their indolence was so persistent that it could not be ascribed to anything other than a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance." *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007).[61] Where a plaintiff fails to plead sufficient facts showing such bad faith, he fails to state an oversight claim. *Id.*

Plaintiff's allegations in this case fall short of this standard. Plaintiff accuses the Trustees of a failure to oversee compliance policies and procedures of the Trust and its service providers, and of a failure to investigate the legality of the payments at issue. These allegations hardly establish a conscious disregard of duties, or a "sustained, systemic failure" of oversight. Indeed, unlike most *Caremark* claims, where it is undisputed that something illegal or inappropriate occurred (*e.g.*, accounting fraud, self-dealing transactions), here no court or regulatory authority has ever stated that the payments at issue are illegal. In such circumstances, there can hardly be a conscious, sustained failure to monitor and detect such illegality.[62] Plaintiff's breach of fiduciary duty claim therefore should be dismissed for failure to state a claim.

---

[61]   *See, e.g., Canadian Commercial Workers Indus. Pension Plan v. Alden*, 2006 WL 456786, at *7-8 (Del. Ch. Feb. 22, 2006) (dismissing *Caremark* claim where "[a]bsent supporting facts" as to the directors' sustained and systemic failure of oversight, conscious knowledge of not doing their jobs, or ignoring red flags, "bald conclusions need not and will not be accepted as sufficient to survive a motion to dismiss"); *Desimone*, 924 A.2d at 940 (rejecting the "conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so," in the absence of any facts to support that claim); *Stiegele,* 2007 WL 4197496, at *9-10 (same). *See also Blake v. Smith*, 2006 WL 4114305, at *7 (Mass. Super. Dec. 11, 2006) (dismissing breach of fiduciary duty for failure to state a claim where plaintiff failed to allege facts sufficient to show the directors acted in bad faith or engaged in intentional misconduct).

[62]   *See* Response Letter at 3.

LIBNY/4915781.1

### B.      Plaintiff Fails to State a Claim for Waste of the Trust's Assets

Plaintiff's assertion that the "Trustee Defendants have caused a *per se* waste of valuable Trust assets" as a result of the allegedly unlawful Asset-Based Compensation paid to EVD and the broker-dealers also lacks merit.[63]  To plead a claim for corporate waste under Massachusetts law, a plaintiff must show "that the directors' decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interest."  *Blake*, 2006 WL 4114305, at *10.  *Blake* dismissed a waste claim where the allegations were "far too vague to support an inference that the purported misconduct was motivated by bad faith or that [the directors] received improper benefits."[64]

Here, the Board concluded that the past and ongoing payments were not illegal, and a majority of the Independent Trustees approved the Rule 12b-1 plans each year based on a determination that there was a reasonable likelihood that they would benefit the Trust and its shareholders.[65]  Plaintiff does not allege that the Trust failed to receive any distribution services from EVD or the broker-dealers in exchange for the Rule 12b-1 payments, or that those services were somehow inadequate, or that the payments were excessive.  In fact, the Board determined that "significant harm" would likely result to the Trust by pursuing litigation against EVD and the broker-dealers.[66]  Because Plaintiff has failed to plead any facts to support an "egregious or irrational" decision that could not have been in the Trust's best interest, his waste claim should be dismissed.

---

[63]     Compl. ¶ 78.

[64]     *See also Brehm v. Eisner,* 746 A.2d 244, 263 (Del. 2000) (waste is confined to "unconscionable cases where directors irrationally squander or give away corporate assets," and thus no waste exists if "there is *any substantial* consideration received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile") (internal quotation and citation omitted).

[65]     Response Letter at 6.

[66]     *Id.* at 7.

LIBNY/4915781.1

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety,

with prejudice.

Dated:  June 7, 2010                          Respectfully submitted,


                                              GOODWIN PROCTER LLP


                                              _____/s/ Stacey B. Ardini_____
                                              Stacey B. Ardini (BBO #663161)
                                              53 State Street
                                              Boston, MA 02109
                                              Tel: (617) 570-1000
                                              Fax: (617) 523-1231
                                              sardini@goodwinprocter.com


                                              Mark Holland (admitted *pro hac vice*)
                                              Mary K. Dulka (admitted *pro hac vice*)
                                              The New York Times Building
                                              620 Eighth Avenue
                                              New York, NY  10018
                                              Telephone:  (212) 813-8800
                                              Fax:  (212) 355-3333

                                              mholland@goodwinprocter.com
                                              mdulka@goodwinprocter.com

                                              *Attorneys for the Independent Trustee Defendants and*
                                              *the Trust*


## CERTIFICATE OF SERVICE

I, Stacey B. Ardini, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 7, 2010.


                                              _____/s/ Stacey B. Ardini_____


20