# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JEFFREY WIENER, derivatively on behalf of
EATON VANCE MUNICIPALS TRUST,

     Plaintiff,

v.

EATON VANCE DISTRIBUTORS, INC.,
BENJAMIN C. ESTY, ALLEN R. FREEDMAN,
WILLIAM H. PARK, RONALD A.
PEARLMAN, HELEN FRAME PETERS,
HEIDI L. STEIGER, LYNN A. STOUT,
RALPH F. VERNI, and THOMAS FAUST,

     Defendants,

and

EATON VANCE MUNICIPALS TRUST,

     Nominal Defendant.

Civil Action No. 10-10515-DPW

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EATON VANCE DISTRIBUTORS, INC.'S AND THOMAS E. FAUST JR.'S MOTION TO DISMISS THE VERIFIED DERIVATIVE COMPLAINT

Ryan M. Tosi (BBO #661080)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
Tel:  (617) 261-3100
Fax:  (617) 261-3175
ryan.tosi@klgates.com

Charles L. Eisen (admitted *pro hac vice*)
Jeffrey B. Maletta (admitted *pro hac vice*)
**K&L GATES LLP**
1601 K Street, NW
Washington, DC  20006-1600
Tel:  (202) 778-9000
Fax:  (202) 778-9100
charles.eisen@klgates.com
jeffrey.maletta@klgates.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 4

    A.      The Regulatory Framework ................................................................... 4

    B.      Statement of Facts ................................................................................. 6

ARGUMENT ....................................................................................................................... 9

I.      THE COMPLAINT FAILS TO ALLEGE A VIOLATION OF THE ICA OR THE ADVISERS ACT ....................................................................................... 11

    A.      The *Financial Planning* Case Does Not Outlaw Payments Made Under Rule 12b-1 ........................................................................ 11

    B.      The Complaint Fails to State a Claim Under Section 47(b) ................................. 14

II.      PLAINTIFF'S CLAIMS UNDER STATE LAW SHOULD BE DISMISSED ............... 16

    A.      The Court Should Exercise Its Discretion to Dismiss Counts II Through IV ....... 16

    B.      The Complaint Does Not State a Claim for Breach of Contract ........................... 17

    C.      The Claims for Breach of Fiduciary Duty and Waste Against Mr. Faust Should Be Dismissed ................................................................... 17

CONCLUSION ................................................................................................................... 18

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .................................................................................... 9

*Beddall v. State Street Bank & Trust Co.*,
   137 F.3d 12 (1st Cir. 1998) ............................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 9

*Brooks v. AIG SunAmerica Life Assur. Co.*,
   480 F.3d 579 (1st Cir. 2007) ......................................................................... 17

*Financial Planning Ass'n v. Securities and Exchange Comm'n*,
   482 F.3d 481 (D.C. Cir. 2007) ................................................................ passim

*GFL Advantage Fund, Ltd. v. Colkitt*,
   272 F.3d 189 (3d Cir. 2001) ..................................................................... 14, 15

*ING Principal Protection Funds Derivative Litig.*,
   369 F. Supp. 2d 163 (D. Mass. 2005) .................................................... 1, 8, 15

*Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
   464 F. Supp. 528 (D. Md. 1978) .............................................................. 12, 13

*Luzerne County Ret. Bd. v. Makowski*,
   627 F. Supp. 2d 506 (M.D. Pa. 2007) ............................................................ 12

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) ....................................................... 14, 17

*In re Stone & Webster, Inc., Securities Litig.*,
   253 F. Supp. 2d 102 (D. Mass. 2003) .............................................................. 6

*Thomas v. Metropolitan Life Ins. Co.*, No. CIV-07-0121-F
   2009 WL 2778663 (W.D. Okla. Aug. 31, 2009)............................................. 12

*Todisco v. Verizon Commc'ns, Inc.*,
   497 F.3d 95 (1st Cir. 2007) ............................................................................. 9

*United States ex rel. Crennen v. Dell Marketing L.P.*, No. 06-10596
   --- F. Supp. 2d ----, 2010 WL 1713633 (D. Mass. Apr. 27, 2010)................... 9

*Yameen v. Eaton Vance Distrib., Inc.*
   394 F. Supp. 2d 350 (D. Mass. 2005) ....................................................... 1, 13

*Zerman v. Jacobs*,
    510 F. Supp. 132 (S.D.N.Y. 1981) ................................................................................ 14

*Zerman v. Jacobs*,
    672 F. 2d 901 (2d Cir. 1981) ....................................................................................... 14


**Federal Statutes**

Securities Exchange Act of 1934, Section 29(b), 15 U.S.C. § 78cc(b) ................................... 14, 15

Investment Company Act of 1940, Section 22, 15 U.S.C. § 80a-22 .......................................... 1, 5

Investment Company Act of 1940, Section 38(c), 15 U.S.C. § 80a-37(c) ............................... 3, 16

Investment Company Act of 1940, Section 44, 15 U.S.C. § 80a-43 ........................................... 16

Investment Company Act of 1940, Section 47(b)(1), 15 U.S.C. § 80a-46 .............. 2, 3, 14, 15, 16

Investment Advisers Act of 1940, Section 202(a)(11)(C),
    15 U.S.C. § 80b-2(a)(11)(C) ........................................................... 2, 10, 11,  12

28 U.S.C. § 1331 ........................................................................................................................ 16

28 U.S.C. § 1337 ........................................................................................................................ 16

28 U.S.C. § 1367 ........................................................................................................................ 17


**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8(a) ....................................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 9


**Federal Regulations**

Securiteis and Exchange Commission Rule 12b-1, 17 C.F.R. § 270.12b-1 ........................ passim

Securities and Exchange Commission Rule 17d-3, 17 C.F.R. § 270.17d-3 .................................. 6

Securities and Exchange Commission Rule 38a-1(a), 17 C.F.R. § 270.38a-1 ............................ 15

**Securities and Exchange Commission Releases**

Bearing of Distribution Expenses by Mutual Funds, Investment Company Act
Release No. 11414, 45 Fed. Reg. 73898 (Nov. 7, 1980)............................................................. 4, 6

Proposed Rule Change by NASD Relating to the Limitation of Asset-Based
Sales Charges as Imposed by Investment Companies, SEC
Release No. 29070, 56 Fed. Reg. 16137 (Apr. 19, 1991) ............................................................... 5

SEC Order Approving Proposed NASD Rule Change Relating to Limitation of
Asset-Based Sales Charges as Imposed by Investment Companies,
SEC Release No. 34-30897, 57  Fed. Reg. 30985 (July 13, 1992) ............................................ 4, 5

**Other Authorities**

National Association of Securities Dealers Notice to Members 93-12.......................................... 5

National Association of Securities Dealers Rule 2830 ............................................................. 5,6

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Eaton Vance Distributors, Inc. ("EVD") and Thomas E. Faust Jr. ("Mr. Faust") submit this Memorandum of Law in Support of Their Motion to Dismiss the Verified Derivative Complaint ("Complaint").

## PRELIMINARY STATEMENT

The Complaint attacks payments made by mutual funds (the "Funds") that are a series of Eaton Vance Municipals Trust (the "Trust") to EVD under a Distribution Agreement between the Trust and EVD.  The payments are made in accordance with Distribution Plans (the "Plans") adopted by the Funds pursuant to Securities and Exchange Commission Rule 12b-1, 17 C.F.R. § 220.12b-1 promulgated under the Investment Company Act of 1940 (as amended) (the "ICA"), 15 U.S.C. § 80a-1, *et seq.*  Pursuant to the Plans and in accordance with disclosures in the Funds' registration statement, EVD uses these payments to compensate third-party broker-dealers for sales of Fund shares and/or for shareholder servicing and maintenance of shareholder accounts. The Plans and the payments of "12b-1 fees" thereunder (which have been the subject of prior decisions by this Court)[1] have become an established practice in the mutual fund industry following the promulgation of Rule 12b-1 by the Securities and Exchange Commission ("SEC") in 1980.  In addition to the express regulatory authority for the Trust's payment of these fees pursuant to Rule 12b-1, the uses of 12b-1 fees and the amounts that may be charged are regulated by Rule 2830 promulgated by the National Association of Securities Dealers ("NASD") under the authority granted by Section 22 of the ICA, 15 U.S.C. § 80a-22.  The Plans and the

---

[1]     *See Yameen v. Eaton Vance Distrib., Inc.*, 394 F. Supp. 2d 350 (D. Mass. 2005); *see also ING Principal Protection Funds Derivative Litigation*, 369 F. Supp. 2d 163 (D. Mass. 2005) ("*ING*").

Distribution Agreement are reviewed annually by the Board of Trustees and the Plans and the fees paid under them are fully described in the Trust's relevant SEC filings.

Notwithstanding clear statutory and regulatory authority, many years of accepted practice, and full disclosure to investors, Plaintiff contends that  payments under the Plans violate the ICA and the Investment Advisers Act of 1940, as amended ("Advisers Act"), 15 U.S.C. § 80b-1 *et seq.*, because some of the fees paid to broker-dealers who sell Fund shares are calculated as a small percentage of the net asset value of the shares sold by those broker-dealers. Citing *Financial Planning Ass'n v. Securities and Exchange Comm'n*, 482 F.3d 481 (D.C. Cir. 2007) ("*Financial Planning*"), Plaintiff alleges that the selling broker-dealers' receipt of compensation that is determined as a percentage of Fund assets ("Asset-Based Compensation") requires those broker-dealers to register with the SEC as investment advisers under the Advisers Act, which they allegedly have not done.

Based on this novel theory, Plaintiff asserts two claims against EVD.  The first, based on Section 47(b), alleges that the performance of the Distribution Agreement "involves violations of the ICA and SEC Rule 38a-1" promulgated thereunder, and therefore that "[t]he Trust is obligated to void the broker-dealer compensation provisions in its Distribution Agreement" and obtain restitution of the payments made to EVD.  Compl. ¶ 62.  The second claim alleges that EVD has breached its contract with the Trust based on EVD's breach of its warranty in the Distribution Agreement "that it comply with the federal securities laws."  Compl. ¶¶ 65-67. Plaintiff asks the Court to declare that the payments are unlawful and to enjoin further payments, and to order restitution from EVD of past payments.  As to Mr. Faust, and the other Trustees, the Complaint seeks damages for alleged breach of fiduciary duty and waste in approving the payments under the Distribution Agreement.  Compl. ¶¶ 71-80.

There is no basis for these claims.

The Trust makes Rule 12b-1 payments to EVD for the purpose of compensating brokers for their efforts in selling Fund shares, for marketing services performed by EVD and/or for shareholder and account maintenance services provided by a broker-dealer or other financial intermediary. Nothing in *Financial Planning* or the Advisers Act outlaws such payments. Moreover, there are no allegations of fact in the Complaint, as opposed to legal conclusions, suggesting that these payments are used to compensate broker-dealers for investment advice so that they would be required to register as investment advisers. Consequently, the Trust's payment and EVD's receipt of the fees under the Distribution Agreement discussed in the Complaint are entirely lawful. In the absence of any violation of the ICA, or any other statute or regulation, the claims against EVD and Mr. Faust, and indeed against all the Trustees, fail to state a claim and should be dismissed with prejudice.

In addition, the Defendants' reliance on Rule 12b-1 provides a complete defense under ICA Section 38(c) to the claims under Section 47(b) and once this claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining claims.

The claims against Mr. Faust and EVD also must be dismissed for the separate reasons set forth in the Memorandum of Law in Support of the Motion to Dismiss filed by the Independent Trustees ("Trustees' Memorandum"). [2] As set forth in detail in the Trustees' Memorandum, Plaintiff's effort to pursue these claims derivatively in the Trust's name fails. The Trustees have considered and rejected, for the sound reasons described in their Memorandum, Plaintiff's demand that the Trust take action on his claims.

---

[2] Mr. Faust and EVD adopt and incorporate herein the arguments made in the Memorandum of Law filed by the Independent Trustees: (1) that the decision of the Trustees to reject Plaintiff's demand is a business judgment warranting dismissal of Plaintiff's Complaint by this Court; and (2) that the Complaint fails to state a claim against the Trustees.

# BACKGROUND [3]

## A.    The Regulatory Framework

The Complaint barely acknowledges the regulatory framework for Rule 12b-1 fees which governs the payments at issue, but it is the essential starting point for analyzing Plaintiff's claims.

Rule 12b-1 fees are authorized and regulated by a comprehensive set of rules adopted by the SEC and NASD, beginning in 1980 with the SEC's promulgation of Rule 12b-1.[4] Before adoption of these rules, the primary method used by mutual funds to pay sales-related expenses (principally commissions to brokers through which investors purchase their fund shares) was to deduct a front-end sales charge, sometimes referred to as a "load" from the offering price of mutual fund shares.[5] Under Rule 12b-1, as an alternative to shares on which a front-end sales charge is assessed (Class A shares in this and most other instances), the mutual fund industry developed other share classes (usually Class B and Class C shares) that carry no "up-front" sales charges. Instead, these shares are assessed an "asset-based sales charge" or distribution fee that is paid from fund assets to the distributor of fund shares. *Id.*[6] Such a distribution fee is expressly

---

[3]      EVD and Mr. Faust reserve their rights to contest any of the facts as pleaded.

[4]      *See* Bearing of Distribution Expenses by Mutual Funds, Investment Company Act Release No. 11414, 45 Fed. Reg. 73898 (Nov. 7, 1980) ("12b-1 Adopting Release") (adopting Rule 12b-1). Rule 12b-1 was adopted under the authority of Section 12(b) of the ICA, which authorizes the SEC to prescribe rules under which an open-end investment company may act as distributor of its shares.

[5]      *See* SEC Order Approving Proposed NASD Rule Change Relating to Limitation of Asset-Based Sales Charges as Imposed by Investment Companies, SEC Release No. 34-30897, 57  Fed. Reg. 30985, 30985-86 (July 13, 1992) ("NASD Rule Release").

[6]      Shareholders who do not pay a front-end sales load and who sell, or redeem, these shares within a few years of purchasing generally also must pay a "contingent deferred sales charge" upon redemption.  *See* NASD Rule Release at 30986.

authorized by Rule 12b-1 to cover expenses of distribution, including but not limited to "advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature." *Id*.

In Section 22(b) of the ICA, adopted in 1970, Congress granted the NASD the power to regulate all charges for sale of mutual fund shares, including the distribution fees at issue in this case.[7]  NASD Rule 2830 (previously known as Section 26 of the NASD Rules of Fair Practice), entitled "Investment Company Securities," sets the permissible charges for distribution of investment company shares.[8]  Under Rule 2830, an investment company may pay a broker-dealer both an "asset-based sales charge" and a "service fee."[9]  Rule 2830 defines "sales charge" as "all charges or fees that are paid to finance sales or sales promotion expenses . . . ."  Rule 2830(b)(8).  "Service fees" are defined as "payments by an investment company for personal service and/or the maintenance of shareholder accounts."  Rule 2830(b)(9).  Rule 2830 authorizes broker-dealers to receive payments based on net asset values of fund shares.  An "asset-based sales charge" is defined as "a sales charge that is deducted from the net assets of an investment company and does not include a service fee."  Rule 2830(b)(8)(A).  The asset-based sales charge may not exceed .75 of 1 percent per annum of the average annual net assets of the investment company plus interest.  Rule 2830(d)(2)(E).  Service fees may not exceed .25 of

---

[7]     *See* Proposed Rule Change by NASD Relating to the Limitation of Asset-Based Sales Charges as Imposed by Investment Companies, SEC Release No. 29070, 56 Fed. Reg. 16137, 16139 (Apr. 19, 1991).

[8]     The SEC approved this Rule.  *See* NASD Rule Release, 57 Fed. Reg. at 30989-90.

[9]     *See* Questions #23 and #24 of NASD Notice to Members 93-12 (a copy of which is included as Ex. A to the Legal Appendix).

1 percent of average net assets per annum.  Rule 2830(d)(2)(E) and (d)(5).  Thus, the total for

sales and service fees may not exceed 1 percent.

SEC Rule 17d-3 completes the regulatory framework governing 12b-1 fees.  Promulgated

at the same time as Rule 12b-1, Rule 17d-3 allows funds to enter into written agreements with

their affiliates who serve as the principal underwriter of fund shares to permit the funds to make

payments to the affiliates in connection with the distribution of those shares.  17 C.F.R.

§ 270.17d-3.  S*ee also* 12b-1 Adopting Release, 45 Fed. Reg. at 73904-06.  The Distribution

Agreement is such a written agreement.

### B.      Statement of Facts

Plaintiff Jeffrey Wiener alleges that he owns Class C shares of a single mutual fund, the

Eaton Vance National Municipal Income Fund (formerly the Eaton Vance National Municipals

Fund) ("Income Fund"), a series of the Trust.  Compl. ¶ 10.  The following facts are taken from

the Complaint and the Registration Statement on Form N-1A  filed by the Trust, and effective on

February 1, 2009 (in effect at the time of Plaintiff's demand on the Trust's Board).  The

Registration Statement includes the Prospectus and Statement of Additional Information ("SAI")

for the Income Fund. [10]

---

[10]      Plaintiff quotes from the Trust's "public filings" without specifying the sources. *See*
Compl. ¶ 46.  Under these circumstances, in ruling on a motion to dismiss pursuant to Rule
12(b)(6), the Court may take judicial notice of matters of public record, documents sufficiently
referred to in the Complaint, and other indisputably authentic documents underlying Plaintiff's
claims. *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (documents on
which a complaint depends and to which it refers "merge[] into the pleadings and the trial court
can review [them] in deciding [a Rule 12(b)(6)] motion").  SEC filings fall within these
parameters. *In re Stone & Webster, Inc., Securities Litig.*, 253 F. Supp. 2d 102, 128 n.11 (D.
Mass. 2003) (noting that court may take notice on motion to dismiss of facts present in publicly
available government documents).  In this regard, attached to the Declaration of Jeffrey B.
Maletta ("Maletta Decl.") submitted herewith are the relevant portions of the Registration
Statement for the Income Fund, the Prospectus and the SAI, which is incorporated by reference
into the Prospectus.  Copies are attached to the Maletta Declaration as Exhibits A and B,
respectively, and are available online on the SEC website.

EVD is a registered broker-dealer and a member of the Financial Industry Regulatory Authority, the successor to the NASD.  Compl. ¶ 20.  The Trust is a registered investment company that offers the Funds as separate series.  Compl. ¶¶ 2, 11.  Mr. Faust is one of nine Trustees of the Trust and has been classified as an "interested" Trustee for purposes of the ICA.

The Trust has elected to act as a distributor of its own shares.  Compl. ¶ 45.  In this capacity, the Complaint alleges, "[t]he Trust is financing distribution activities, including making compensation payments to broker-dealers for sales of Trust shares and for on-going servicing of shareholders, out of Trust assets, *as allowed by SEC Rule 12b-1*."  Compl. ¶ 45 (emphasis supplied).  To effect this distribution, the Trust has entered into a Distribution Agreement with EVD, which appoints EVD as the principal underwriter of the Funds and under which EVD distributes the shares of the Funds offered by the Trust.[11]  Compl. ¶ 46.  EVD buys from the Trust sufficient shares to fill orders it has received from financial services firms.[12]  Under the Distribution Agreement, the Trust pays to EVD fees in accordance with the Plans, which are calculated as a percentage of net assets of the Funds.[13]  As described in the Prospectus in the Registration Statement, the Fund allegedly owned by Plaintiff, the Income Fund, *see* Compl. ¶ 10, offers different classes of shares: A, B and C, with differing fee structures. [14]  Purchasers of Class A shares generally  pay a "front-end" sales charge up to a maximum of 4.75 percent which is paid at the time of purchase.  Maletta Decl. ¶ 10, Ex. A at 10.  *Id.*  Under the Class A Plan,

---

[11]    The Distribution Agreement and Amendment thereto are publicly filed with the SEC. *See* Maletta Decl. ¶ 4. Ex C.

[12]    Maletta Decl. Ex. C at Section 2.

[13]    *Id.* at Section 5(c) and (d).

[14]    The Fund also offers Class I shares to clients of financial intermediaries.  Maletta Decl. Ex. A at 11.

Class A shares pay .25 percent of average daily net assets per year as a distribution and service fee. *Id.* at 12.  Purchases of Class B and Class C shares are not subject to an upfront sales charge. *Id.* at 10.  Under the relevant Plans, Class B and C shares pay a total of 1 percent of average daily net assets per year to EVD, of which .25 percent is a service fee. *Id.* at 12. Class B shares convert to Class A shares after eight years and from that point on pay only the 25 basis point service fee. *Id.* at 10.  After one year, EVD pays selling broker-dealers commissions, distribution fees and service fees, as described in the Prospectus. Id at 12-13. [15]  These distribution arrangements, which are typical of those in place for thousands of other mutual funds, give investors a choice of how to pay the sales charges associated with their purchases of fund shares.  Investors are able to pay the sales-related expenses up front or spread them over time. *See ING*, 369 F. Supp. 2d at 167.

The Complaint alleges that EVD enters into agreements with other registered broker-dealers who effect retail sales of Fund shares ("Selling Agreements"). [16]  Consistent with NASD Rule 2830, those contracts provide for payments in two forms: commissions based on sales of Fund shares, and service fees for servicing shareholders holding Fund shares.  Compl. ¶¶ 45-46. [17]  These payments are alleged to amount to "Asset-Based Compensation" for the selling broker-dealers; payments are calculated on the net asset values of the Fund shares purchased and held in the broker-dealer's customer accounts.  Compl. ¶ 46.  In addition, the Complaint alleges

---

[15]    The Plans and the fees paid thereunder are described in greater detail in the SAI.  Maletta Decl. Ex. B at 21-22.

[16]    A copy of the form of Selling Agreement used by EVD is an Exhibit to the Registration Statement and is filed with the SEC as an Exhibit to a prior amendment to the Registration Statement.  Maletta Decl. Ex. D.

[17]    Contrary to the allegations in the Complaint, there is nothing in the Selling Agreement that suggests an agency relationship.

EVD "makes 'market support' and/or 'administrative services' payments to broker-dealers based on daily net asset values of shares held in customer accounts."[18]   Compl. ¶ 46.   The Complaint refers to these payments generally as "Asset-Based Compensation," *see, e.g.*, Compl. at ¶¶ 45-46, without drawing distinctions between the form and purpose of the various payments. *Id.* ¶ 46.

## ARGUMENT

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on is face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Even under the generous standards of Rule 8(a) of the Federal Rules of Civil Procedure, "threadbare recitals of elements of cause of action, supported by mere conclusory statements, do not suffice." *Id. See United States ex rel. Crennen v. Dell Marketing L.P.*, No. 06-10546, --- F. Supp. 2d ----, 2010 WL 1713633, at *2 (D. Mass. Apr. 27, 2010).  Furthermore, if it appears that – as here – plaintiff cannot recover on any viable theory, then dismissal of the claims with prejudice is proper as any amendment would be futile.  *See Todisco v. Verizon Commc'ns, Inc.*, 497 F.3d 95, 98 (1st Cir. 2007) (affirming district court's denial of motion to amend after court dismissed complaint under Fed. R. Civ. P. 12(b)(6)).

---

[18]   These arrangements are described in the Fund's Prospectus.  *See* Maletta Decl. Ex. A at 11.  *See* Compl. ¶ 46.  (The Complaint seeks no relief as to these market support payments, only as to payments made from the Trust pursuant to the Distribution Agreement.  *See id.* ¶¶ 62, 66 and Prayer for Relief.)  In any event, there are no allegations that the marketing support payments are used to pay for investment advice.

Notwithstanding these clear pleading requirements, all of Plaintiff's claims depend entirely on conclusory allegations that a payment of "Asset Based Compensation" in any form is compensation for investment advice.  Consequently, Plaintiff alleges, the Distribution Agreement violates the ICA and the Advisers Act because the ultimate recipients of payments made under that Agreement are not registered investment advisers.  Based on these flawed premises, Count I alleges that the Trust is obligated to assert ICA Section 47(b) "to void the broker-dealer compensation provisions in its Distribution Agreement" between the Trust and EVD, because the payments made pursuant to those provisions are "unlawful."  Compl. ¶¶ 62, 63.  In Count II, Plaintiff alleges that EVD is liable for breach of contract because it has breached its warranty in the Distribution Agreement that it will comply with the federal securities laws. The claims alleged against the Trustees for breach of fiduciary duty (Count III) and acts of waste (Count IV) are based on the same legal premise.

While Plaintiff purports to find violations of the ICA and SEC Rules adopted thereunder, the Complaint alleges that such violations are premised on Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11)(C), and the *Financial Planning* decision (*see* Compl. ¶ 3), which held that the SEC could not, through adopting a regulation, directly alter the limitation set by the Advisers Act on a broker-dealer's ability to receive special compensation for providing investment advice to its customers.

Plaintiff's claims fail because there has been no violation of any law or breach of any contractual term by EVD, or any other party to this case.  As the Complaint acknowledges, "[t]he Trust is financing distribution activities, including making compensation payments to broker-dealers for sales of Trust shares and for on-going servicing of shareholders, out of Trust assets, *as allowed by SEC Rule 12b-1*."  Compl. ¶ 45 (emphasis added).  Plaintiff misreads *Financial*

*Planning* to bar all "Asset Based Compensation" to broker-dealers, including that authorized under Rule 12b-1.  In fact, that decision has nothing to say about payments for distribution and shareholder servicing, nor does Section 202(a)(11) of the Advisers Act.  In the absence of any allegation that the payments in fact are being used to pay for investment advice rather than for the stated purposes (being selling commissions and to compensate for shareholder servicing), the Complaint fails to state a claim and should be dismissed with prejudice in its entirety.

I.     **THE COMPLAINT FAILS TO ALLEGE A VIOLATION OF THE ICA OR THE ADVISERS ACT**

A.     **The *Financial Planning* Case Does Not Outlaw Payments Made Under Rule 12b-1**

Plaintiff reads the *Financial Planning* decision to bar "Asset-Based Compensation" for broker-dealers who do not register as investment advisers under the Advisers Act.  This reading is based on the legal conclusion that "[a]s a result of the 'Broker-Dealer' Exclusion [Section 202(a)(11)], the *form of compensation* that a broker-dealer receives on a particular customer account is typically a determinative of what law governs the account."  Compl. ¶ 26 (emphasis in original).  This reading is simply wrong.  There is no support for it in the *Financial Planning* decision, or anywhere else in the law.  To the contrary, as the *Financial Planning* decision makes clear, it is the purpose of the compensation, and the nature of the services rendered, that determine whether a broker-dealer must register under the Advisers Act.

*Financial Planning* involved a challenge to a rule promulgated by the SEC in 2005 (the "new Rule") that exempted broker-dealers who received "special compensation" for providing investment advice from the requirement that they register as investment advisers.  The challenge was mounted by an association of financial planners who asserted a competitive injury if broker-dealers were allowed to offer competing advisory services without registering as advisers,

11

subject to regulation under the Advisers Act.  *Financial Planning*, 482 F.3d at 486-87.  The D.C.

Circuit concluded that the new Rule was inconsistent with Section 202(a)(11)(C) of the Advisers

Act, which exempts from registration "any broker or dealer whose performance of [investment

advisory] services is solely incidental to the conduct of his business as a broker or dealer, and

who receives no special compensation therefor."  *Id.* at 494.

   *Financial Planning* did not change the law, as Plaintiff contends.  It adopted a reading of

the Advisers Act that is fully consistent with payment of asset-based 12b-1 fees.  The Court

noted with approval the SEC's longstanding interpretation of the term "special compensation" to

describe a situation where a broker-dealer assesses charges that were "directly related to giving

of advice."  *Id.* at 491, n.7.  Thus, under the Advisers Act, only "special compensation" directly

related to providing investment advice triggers the registration requirement.  The Court

concluded that because the SEC's new Rule was expressly intended to permit broker-dealers to

receive such "special compensation" without registering, a majority of the Court concluded that

the new Rule was contrary to the statutory exception, and therefore the SEC had exceeded its

rulemaking authority in adopting it.  *Id.* at 492.  Nowhere in its opinion did the Court suggest

that its reading of the Advisers Act affected the validity of Rule 12b-1 plans in any way.

   Other courts, both before and after *Financial Planning*, have read the Advisers Act the

same way: to require registration only when a broker-dealer receives compensation paid

specifically for investment advice.  *See Thomas v. Metropolitan Life Ins. Co.*, No.

CIV-07-0121-F, 2009 WL 2778663, *6-10 (W.D. Okla. Aug. 31, 2009) (registration not required

where compensation was for "making the sale"); *Luzerne County Ret. Bd. v. Makowski*, 627 F.

Supp. 2d 506, 573-74 (M.D. Pa. 2007) (compensation for transaction-related services and

administration of investment fund is not special compensation for investment advice); *Kaufman*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 464 F. Supp. 528, 538 (D. Md. 1978) (broker-dealer not an investment adviser as any investment advice was incidental to services as broker on account).

Nothing in the Complaint suggests that the payments made under the Plans are "special compensation" in any way connected with the providing of investment advice.  To the contrary, to the extent the Complaint says anything about the purpose and use of the payments, it admits that they are compensation for sales of securities and servicing of fund shareholders.  *See*, *e.g.*, Compl. ¶ 45.  This admission is hardly surprising since the Trust's Registration Statement and the Distribution Agreement consistently refer to or reflect the purpose of the payments to be compensation or reimbursement for the sale of shares, distribution expenses, and/or servicing and account maintenance.  *See* Maletta Decl. Ex. A at  4 (describing amount and use of Rule 12b- fees); Ex. C ¶ 5 (describing payments from Trust for commissions, distribution fees, sale expenses and service).  The Complaint's acknowledgement is consistent with the recognition by this Court, and others, in the context of challenges to Rule 12b-1 fees as excessive, that the asset-based charges paid by the Funds are designed to compensate broker-dealers for sales and/or for supporting "the sales efforts of the company by assuring that there will be follow-up account maintenance" through shareholder servicing.  *Yameen v. Eaton Vance Distrib., Inc.*, 394 F. Supp. 2d 350, 354-55, n.4 (D. Mass. 2005).  The Advisers Act's requirement that broker-dealers who receive "special compensation" for investment advice must register simply has no application to payments for such core functions of a broker-dealer, whatever their form.  Nothing in the *Financial Planning* decision changes that conclusion.

**B.      The Complaint Fails to State a Claim Under Section 47(b)**

Once the payments are placed in their regulatory context, it is plain that Plaintiff's first claim, under Section 47(b) of the ICA, should be dismissed.[19]

Section 47(b) does not regulate conduct; it provides a remedy under which the parties to a contract may seek to rescind it if that contract violates another provision of "this title" – the ICA or the regulations issued under the ICA. *See, e.g.*, *Stegall v. Ladner*, 394 F. Supp. 2d 358, 378 (D. Mass. 2005). Section 47(b) is interpreted consistently with other voidability provisions of the federal securities laws such as Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b).[20] These provisions do not support a claim absent an allegation that the relevant contract itself (here the Distribution Agreement) is illegal. *See*, *e.g.*, *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 200-02 (3d Cir. 2001) (holding that under Section 29(b) only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts); *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981).

Plaintiff's Section 47(b) claim is defective in a number of respects. First, as discussed in the preceding section, there is no violation of any law. Plaintiff's reading of *Financial Planning* is simply wrong; nothing in the Advisers Act prohibits the Trust's payment to EVD of asset-based compensation and EVD's payment of sales commissions and/or services fees to broker-

---

[19]      Section 47(b)(1) provides that "[a] contract that is made, or whose performance involves a violation of *this title*, or any rule, regulation or order thereunder, is unenforceable by either party . . . ." 15 U.S.C. § 80a-46 (emphasis added).

[20]      Section 29(b) provides in pertinent part that "[e]very contract made in violation of any provision of this chapter or any rule or regulation thereunder, and every contract … heretofore or hereafter made the performance of which involves a violation of …any provision of this chapter or any rule or regulation hereunder, shall be void …."

dealers who sell shares of the Trust.  In the absence of a violation of some other provision of the ICA, the Section 47(b) claim fails.

Even assuming for purposes of argument that Plaintiff is correct in his reading of *Financial Planning*, Plaintiff's chain of logic does not place the Distribution Agreement in violation of the ICA.  The only alleged violation of the securities laws would be of the Advisers Act, not the ICA, the "title" referenced in Section 47(b)(1).  The Complaint's asserted violation of Rule 38a-1, issued under the ICA, is a red herring.  Rule 38a-1 imposes no obligations on EVD, the only Defendant named in Count I, or any other Defendant.  It imposes obligations only on registered investment companies and their Chief Compliance Officers ("CCO").  For example, an investment company must adopt a compliance plan and designate a CCO.  *See* Rule 38a-1(a)(1) and (4), 17 C.F.R. § 270.38a-1(a).  The CCO must report violations of federal securities laws to the Board.  Rule 38a-1(a)(4)(iii), 17 C.F.R. § 270.38a-1.  There is no allegation that these requirements have not been satisfied.  Plaintiff attempts to spin from these provisions affirmative obligations on the part of the Trustees to take the action that he demands in the Complaint.  But the Rule imposes no such obligations.

Count I also fails because Plaintiff does not allege that the Distribution Agreement itself is unlawful, only that its performance "involves a violation" of the Advisers Act.  *See*, *e.g.*, Compl. ¶ 61.  This is insufficient to state a claim.  *See GFL Advantage Fund*, 272 F.3d at 200-02.  As noted above, the Complaint contains no allegation that the Distribution Agreement involves payments to a broker-dealer to provide "investment advice" to any customer in exchange for compensation.  Thus, there is nothing to support the contention that the Distribution Agreement or its performance requires a violation of the law.  *Cf. ING*, 369 F. Supp. 2d at 169 (dismissing claims that 25 basis point service fee was excessive where no allegation that fees are unrelated to

services being rendered).  Moreover, the Distribution Agreement indicates that payments are

being made for functions other than the rendering of investment advice, so that the Distribution

Agreement can be performed without a purported violation of the Advisers Act.  *See* Maletta

Decl. Ex. C ¶ 5 (providing for, *inter alia*, accrual of commissions for sale of Class B and C

shares based on percentage of price received by Fund, and payment of accrued amounts through

asset-based fee).  Thus, even under Plaintiff's erroneous construct, the Distribution Agreement

would encompass lawful performance.

Finally, to the extent that the Complaint relies on a violation of the ICA, no relief can be

granted, as EVD has a complete defense under Section 38(c) of that Act.  15 U.S.C. § 80a-37(c).

Section 38(c) provides that "[n]o provision of this title imposing any liability shall apply to any

act done or omitted in good faith in conformity with any rule, regulation or order of the [SEC],"

even if such rule, regulation or order may subsequently be rescinded or invalidated.  As the

Complaint itself establishes, the payments made under the Plans have been made "as allowed by

Rule 12b-1" (Compl. ¶ 45) and other SEC and NASD regulations.  There is no allegation that the

Defendants could not rely in good faith on this regulatory framework.  Therefore, no liability

may be based on Section 47(b).

In sum, as the parties' performance of the Distribution Agreement involves plainly lawful

activities undertaken in reliance on Rule 12b-1, Section 47(b) provides no basis for a claim.

Accordingly, Count I should be dismissed with prejudice.

## II.     PLAINTIFF'S CLAIMS UNDER STATE LAW SHOULD BE DISMISSED

### A.     The Court Should Exercise Its Discretion to Dismiss Counts II Through IV

The Complaint alleges, based on a federal question, jurisdiction under ICA § 42, 15

U.S.C. § 80a-43 and 28 U.S.C. §§ 1331 and 1337.  The remaining claims, for breach of contract,

breach of fiduciary duty and waste, are all before the Court only on an allegation of supplemental

jurisdiction and 28 U.S.C. § 1367.  See Compl. ¶ 7.

The Complaint's claim under Section 47(b) against EVD provides the only basis for

federal jurisdiction.  Since Plaintiff has failed to state a claim with respect to this section, the

Court may decline to exercise supplemental jurisdiction and dismiss Counts II through IV.  *See*

*Stegall*, 394 F. Supp. 2d at 378, n.26.

> **B.      The Complaint Does Not State a Claim for Breach of Contract**

Count II alleges a breach of contract, based on purported violation of a warranty in the

Distribution Agreement that EVD will comply with the securities laws.[21]  As demonstrated in the

preceding sections, the Complaint does not allege a violation of any of the securities laws.

Accordingly, Count II fails to state a claim and should be dismissed as well.  *See Brooks v. AIG*

*SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (In order to state a viable breach

of contract claim plaintiff "must do more than allege, in conclusory fashion, that the defendant

breached the contract, by describing, with 'substantial certainty,' the specific contractual promise

the defendant failed to keep").

> **C.      The Claims for Breach of Fiduciary Duty and Waste Against Mr. Faust**
> **Should Be Dismissed**

Mr. Faust is the only Trustee alleged to be an "interested person" within the meaning of

the ICA.  However, the Complaint contains no specific allegations concerning Mr. Faust that

---

[21]      Neither the Distribution Agreement nor the Selling Agreement with selling broker-dealers contains such a sweeping warranty.  These documents do contain assurances that the broker-dealers are in fact registered as broker-dealers.  The Distribution Agreement states that EVD agrees it "will use its best efforts duly to conform with the requirements of all state and federal laws relating to the sale" of Fund securities.  *See* Maletta Decl. Ex. C at ¶ 4.  In the Selling Agreement, the broker-dealers similarly agree to comply with "all applicable laws, rules and regulations" relating to the sale of shares.  Maletta Decl. Ex. D at ¶ 4(h).  Thus, there is no contractual term to support this claim.

distinguish him from the group of Trustees as a whole.  As Plaintiff concedes, his entire case, including the claims against the Trustees for breach of fiduciary duty and for waste, depends on the conclusion that the payment of Asset-Based Compensation in connection with the sale of fund shares and servicing of shareholder accounts violates the Advisers Act.  As demonstrated above, the Trust's payment of Rule 12b-1 fees violates no law and is entirely consistent with the regulatory framework.  Accordingly, the claims against Mr. Faust and all Trustees should be dismissed for failure to state a claim.  In addition, because there are no allegations of fact upon which to base these claims against Mr. Faust, the claims should be dismissed on the grounds set forth in Parts II. A and B of the Trustees' Memorandum.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Trustees' Memorandum, the Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,

EATON VANCE DISTRIBUTORS, INC. and
THOMAS E. FAUST JR.

By their attorneys,

/s/ Ryan M. Tosi
Ryan M. Tosi (BBO #661080)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
Tel:  (617) 261-3100
Fax:  (617) 261-3175
Dated:  June 7, 2010                              ryan.tosi@klgates.com

Charles L. Eisen (admitted *pro hac vice*)
Jeffrey B. Maletta (admitted *pro hac vice*)
**K&L GATES LLP**
1601 K Street, NW
Washington, DC  20006-1600
Tel:  (202) 778-9000
Fax:  (202) 778-9100
charles.eisen@klgates.com
jeffrey.maletta@klgates.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, if any, on this 7th day of June 2010.

/s/ Ryan M. Tosi
Ryan M. Tosi