**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

JEFFREY WIENER, derivatively on behalf of
EATON VANCE MUNICIPALS TRUST,

      Plaintiff,

v.

EATON VANCE DISTRIBUTORS, INC.,
BENJAMIN C. ESTY, ALLEN R. FREEDMAN,
WILLIAM H. PARK, RONALD A.
PEARLMAN, HELEN FRAME PETERS,
HEIDI L. STEIGER, LYNN A. STOUT,
RALPH F. VERNI, and THOMAS FAUST,

      Defendants,

and

EATON VANCE MUNICIPALS TRUST,

      Nominal Defendant.

Civil Action No. 10-10515-DPW

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
EATON VANCE DISTRIBUTORS, INC.'S AND THOMAS E. FAUST JR.'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Ryan M. Tosi (BBO #661080)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
Tel:  (617) 261-3100
Fax:  (617) 261-3175
ryan.tosi@klgates.com

Charles L. Eisen (admitted *pro hac vice*)
Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (*pro hac vice* application to
be submitted)
**K&L GATES LLP**
1601 K Street, NW
Washington, DC  20006-1600
Tel:  (202) 778-9000
Fax:  (202) 778-9100
charles.eisen@klgates.com
jeffrey.maletta@klgates.com
nicholas.terris@klgates.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................4

ARGUMENT ............................................................................................................................7

I.   The Payments To EVD Under The Distribution Plans Do Not Violate
     The Advisers Act ............................................................................................................7

II.  The Individual Counts Against EVD Fail To State A Claim ...........................................10

     A.   The Amended Complaint Fails to State a Claim Under ICA § 47(b) .................. 10

     B.   The Amended Complaint Fails to State a Claim for "Contract Voiding".............13

     C.   The Amended Complaint Fails to State a Claim for Breach of Contract .............16

III. The Claims For Breach Of Fiduciary Duty And Waste Against Mr. Faust
     Should Be Dismissed......................................................................................................17

CONCLUSION ..........................................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .................................................................................. 7

*Beddall v. State Street Bank & Trust Co.,*
    137 F.3d 12 (1st Cir. 1998).......................................................................... 5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 7

*Brooks v. AIG SunAmerica Life Assur. Co.,*
    480 F.3d 579 (1st Cir. 2007)...................................................................... 16

*Burks v. Lasker,*
    441 U.S. 471 (1979) ................................................................................... 14

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ................................................................................... 12

*D.R. Wilder Mfg. Co. v. Corn Products Refining Co.,*
    236 U.S. 165 (1915) ................................................................................... 14

*Erie R. Co. v. Tompkins,*
    304 U.S. 64 (1938) ..................................................................................... 14

*Financial Planning Ass'n v. Securities and Exchange Comm'n,*
    482 F.3d 481 (D.C. Cir. 2007)...........................................................passim

*General Life of Mo. Inv. Co. v. Shamburger,*
    546 F.2d 774 (8th Cir. 1976) ..................................................................... 14

*GFL Advantage Fund, Ltd. v. Colkitt,*
    272 F.3d 189 (3d Cir. 2001) ...................................................................... 13

*Gonzaga Univ. v. Doe,*
    536 U.S. 273 (2002) ................................................................................... 12

*ING v. Principal Protection Funds Litig.,*
    369 F. Supp. 2d 163 (D. Mass. 2005)........................................................ 13

*Kassover v. UBS Fin. Serv.,*
    619 F. Supp. 2d 28 (S.D.N.Y. 2008) ......................................................... 10

*Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    464 F. Supp. 528 (D. Md. 1978)...................................................................................... 10

*Kelly v. Kosuga*,
    358 U.S. 516 (1959) .......................................................................................................... 14

*Luzerne County Ret. Bd. v. Makowski*,
    627 F. Supp. 2d 506 (M.D. Pa. 2007).............................................................................. 10

*Rothberg v. Rosenbloom*,
    808 F.2d 252 (3d Cir. 1986) ............................................................................................ 14

*Smith v. Franklin/Templeton Distr. Inc.*,
    2010 WL 2348644 (N.D. Cal. 2010)……………………………………………… passim

*Smith v. Oppenheimer Funds Distr.*,
    Civil Action No. 10-CV-00655-JLK-KMT (D. Col.) ...................................................... 1

*Smith v. Oppenheimer Funds Distr.*,
    No. 1:10-CV-00654-JLK (D. Col.) .................................................................................. 1

*Stegall v. Ladner*,
    394 F. Supp. 2d 358 (D. Mass. 2005)........................................................................11, 17

*In re Stone & Webster, Inc., Securities Litig.*,
    253 F. Supp. 2d 102 (D. Mass 2003) ............................................................................... 5

*Thomas v. Metropolitan Life Ins. Co.*,
    2009 WL 2778663 (W.D. Okla. Aug. 31, 2009)............................................................ 10

*Yameen v. Eaton Vance Distrib., Inc.*,
    394 F. Supp. 2d 350 (D. Mass. 2005).....................................................................passim

*Zerman v. Jacobs*,
    510 F. Supp. 132 (S.D.N.Y. 1981) ................................................................................. 13

**State Cases**

*City of Lawrence v. Falzarano*,
    380 Mass. 18, 402 N.E. 2d 1017 (1980)......................................................................... 15

*LeClair v. Norwell*,
    430 Mass. 328, 719 N.E. 2d 464 (1999).......................................................................... 15

*Town Planning and Engineering Associates, Inc.*,
    369 Mass. 737, 342 N.E. 2d 706 (1976)...........................................................................15

**Federal Statutes**

Investment Company Act of 1940, § 12(b), 15 U.S.C. § 80a-12(b) ..........................................  8

Investment Company Act of 1940, § 22, 15 U.S.C. § 80a-22(b) ................................................  8

Investment Company Act of 1940, § 36(a), 15 U.S.C. § 80a-35(a) ........................................3, 11

Investment Company Act of 1940, § 38(c), 15 U.S.C. § 80a-37(c) ...........................................13

Investment Company Act of 1940, § 44, 15 U.S.C. § 80a-43 ....................................................17

Investment Company Act of 1940, § 47(b), 15 U.S.C. § 80a-46(b) ...................................passim

Investment Advisers Act of 1940, § 2(a)(11), 15 U.S.C. § 80b-2(a)(11)...........................passim

28 U.S.C. § 1367 .......................................................................................................................17

28 U.S.C. § 1331 .......................................................................................................................17

**Federal Regulations**

Securities and Exchange Commission Rule 38a-1, 17 C.F.R. § 270.38a-1 ................................12

Securities and Exchange Commission Rule 38a-1(a), 17 C.F.R. § 270.38a-1(a) .......................12

**Other Authorities**

Investment Advisers Act of 1940, Investment Advices Act Release No. 1633 ..........................15

Securities Exchange Act of 1934 Release No. 30897 (July 13, 1992)...................................  2, 8

S. Rep. No. 293.........................................................................................................................15

Defendants Eaton Vance Distributors, Inc. ("EVD") and Thomas E. Faust Jr. ("Mr. Faust") submit this Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint and Demand for Jury Trial ("Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

This case is part of a broadside attack on fees paid by mutual funds in accordance with Rule 12b-1 of the Investment Company Act of 1940 ("ICA") that has already been rejected in *Smith v. Franklin/Templeton Distr. Inc.,* 4:09-cv-4775-PJH, 2010 WL 2348644 (N.D. Cal. June 8, 2010).[1]

Plaintiff is a shareholder in one of the mutual funds ("Funds") that is a series of Eaton Vance Municipals Trust (the "Trust").  EVD is the Trust's distributor and the individual defendants are its trustees ("Trustees").  In his Amended Complaint, plaintiff attacks 12b-1 payments from the Trust to EVD, which EVD uses to compensate broker-dealers who sell Fund shares.

The core premise of the lawsuit is that the payment of 12b-1 fees to a broker-dealer that is not also registered as an investment adviser pursuant to the Investment Advisers Act of 1940 ("Advisers Act") is illegal.  According to plaintiff, the receipt of 12b-1 fees, which plaintiff labels "asset-based compensation," Am. Compl. ¶¶ 33-34, transforms a broker into an investment adviser under Advisers Act § 202(a)(11), which generally defines an investment adviser as "any person who, for compensation, engages in the business of advising others … as to the value of securities."  Plaintiff recognizes that the Advisers Act expressly excludes from the

---

[1]    This is one of a number of lawsuits and "investigations" mounted by the same counsel making essentially identical allegations and leveling the same legal challenge against the same established practices.  The plaintiff who filed the *Franklin* case also filed two other cases, *Smith v. Oppenheimer Funds Distr.*, Civil Action No. 10-CV-00655-JLK-KMT (D. Col.), and *Smith v. Oppenheimer Funds Distr.*, No. 1:10-CV-00654-JLK (D. Col.).  In addition, the website for plaintiff's lead counsel states that they are "investigating" more than 20 other mutual fund complexes.  *See* www.milberg.com, "Investigation of Improper Mutual Fund Sales Practices."

definition of an investment adviser "any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker and who receives no special compensation therefor." 15 U.S.C. § 80b-2(a)(11)(C). Nonetheless, citing *Financial Planning Ass'n v. SEC*, 482 F.3d 481 (D.C. Cir. 2007), plaintiff maintains that 12b-1 fees are "special compensation," rather than transactional commissions (which plaintiff concedes that a broker may legally receive).

Plaintiff's theory is meritless. Rule 12b-1 fees are transaction-based compensation in that they are tied to the sale of particular mutual fund shares. And much of the purpose of Rule 12b-1 is to facilitate an investor's ability to finance the payment of a sales load to his broker. *See, e.g.*, *Yameen v. Eaton Vance Distributors, Inc.*, 394 F. Supp. 2d 350, 354-55 (D. Mass. 2005). Accordingly, the SEC views Rule 12b-1 fees as the functional equivalent of a broker's commission, and they are regulated as such by the National Association of Securities Dealers ("NASD"). *See* Exchange Act Release No. 30897, 1992 WL 159735, 57 Fed. Reg. 30,985, 30,986, 30,988-90 (July 13, 1992); *Franklin*, 2010 WL 2348644 at *8. As the *Franklin* court recognized, moreover, *Financial Planning* "is irrelevant to the payment of the distribution fees known as '12b-1 fees' that plaintiff challenges in the present case." *Id.* Indeed, *Financial Planning* had no occasion to consider 12b-1 fees or the meaning of "special compensation." It merely struck down an unrelated SEC rule promulgated 25 years after Rule 12b-1.

While plaintiff's failure to allege any unlawful conduct resolves the case in its entirety, there are numerous additional grounds to dismiss each of the individual claims of the Amended Complaint. Based on his erroneous theory that it is illegal for brokers to receive 12b-1 fees, plaintiff asserts five purported shareholder derivative claims set out in separate "counts." Each is legally deficient.

Count I (against EVD) is based on § 47(b) of the ICA, 15 U.S.C. § 80a-46(b).  Plaintiff

alleges that the performance of the Trust's Distribution Agreement with EVD pursuant to which

the Trust pays 12b-1 fees to EVD, ultimately results in a violation of the Advisers Act by the

recipient broker-dealers.  Plaintiff claims that this implicates EVD's "duties [that] arise under

Section 36(a) of the ICA and SEC Rule 38a-1 thereunder"; Am. Compl. ¶ 73.  Therefore,

according to plaintiff, "[t]he Trust is obligated to void the broker-dealer compensation provisions

in its Distribution Agreement" and obtain restitution of the payments made to EVD.  Am.

Compl. ¶¶ 74-75.

But plaintiff has no claim under § 47(b).  *See Franklin*, 2010 WL 2348644 at *7-8.  The

alleged violation of the Advisers Act does not render the Trust's Distribution Agreement

voidable under § 47(b), which requires predicate violation of the ICA enforceable by plaintiff.

The vague duties conjured up by plaintiff under § 36(a) and Rule 38a-1 do not supply plaintiff

with a right of action.  And plaintiff has failed to allege any contract that is itself unlawful (as

opposed to allegedly illegal transactions pursuant to a lawful contract) – another prerequisite to a

§ 47(b) claim.  Moreover, defendants' reliance on Rule 12b-1 in paying distribution fees

provides a complete defense under ICA § 38(c) to the claims under § 47(b).

Count II (against EVD) is similar to plaintiff's § 47(b) claim.  It seeks "contract voiding"

and restitution under state law, again relying on a purported violation of the Advisers Act by the

broker-dealers and supposed "duties [of EVD] created by the ICA," not to make "unlawful"

payments.  Am. Compl. ¶¶ 76-80.[2]  Count II is preempted because it seeks to impose additional

consequences under state law for the supposed illegality of the Distribution Agreement under

---

[2]     Paragraph 80 of the Amended Complaint is missing text.  The intent appears to be to
track paragraph 75.

federal law.  Even if it were not preempted, state law does not pile on additional and potentially inconsistent sanctions based on the supposed illegality of a contract under a federal statute.

Count III alleges that EVD has breached its contract with the Trust based on EVD's breach of its warranty in its Distribution Agreement with the Trust "that it comply with the federal securities laws."  Am. Compl. ¶¶ 81-86.  This claim is also preempted.  And plaintiff has simply distorted the contractual language and has failed to identify any provision of the Distribution Agreement that would have been breached by EVD's allegedly illegal conduct.

The Amended Complaint also includes two counts against Mr. Faust and the other Trustees, which both turn on the alleged violation of the Advisers Act: Count IV, for alleged breach of fiduciary duty in permitting the "unlawful" 12b-1 payments, and Count V, for waste in authorizing the payments.  Am. Compl. ¶¶ 87-96.

These claims must be dismissed for the separate reasons set forth in the Memorandum of Law filed by the independent trustees and the Trust in support of their Motion to Dismiss the Amended Complaint ("Trustees' Memorandum").  As set forth in detail in the Trustees' Memorandum, which is incorporated by reference herein, plaintiff's effort to pursue these claims derivatively in the Trust's name fails.  The Trust's board has considered and rejected, for the sound reasons described in the Trustees' Memorandum, plaintiff's demand that the Trust take action on his claims.

## BACKGROUND

The Amended Complaint contains few averments of fact[3] but many conclusory legal allegations setting out plaintiff's position on Rule 12b-1 fees.  It does allege that plaintiff owns Class C shares of a single mutual fund, the Eaton Vance National Municipal Income Fund (formerly the Eaton Vance National Municipals Fund) ("Income Fund"), a series of the Trust.

---

[3]       EVD and Mr. Faust reserve their rights to contest any of the facts as pleaded.

Am. Compl. ¶ 9.  Plaintiff references the Trust's public filings as a source of some of his

allegations (Am. Compl. ¶¶ 1, 44).  The Amended Complaint also describes, and in selective

instances quotes from, the Funds' Distribution Plans, Distribution Agreement and the agreements

between EVD and the broker-dealers concerning the sale of Fund shares ("Selling Agreement").

Am. Compl. ¶¶ 44-46.  Accordingly, the relevant facts are taken from the Amended Complaint

and the Registration Statement on Form N-1A filed by the Trust, and effective on February 1,

2009 (in effect at the time of plaintiff's demand on the Trust's board of trustees), which includes

the Prospectus and Statement of Additional Information for the Income Fund describing the

Distribution Plans, and the Distribution Agreement and form of Selling Agreement, all of which

were filed publicly with the Securities and Exchange Commission ("SEC").[4]

Plaintiff Jeffrey Wiener allegedly has owned Class C shares of the Income Fund since

May 17, 2007.  Am. Compl. ¶ 9.  Defendant EVD is a registered broker-dealer and a member of

the Financial Industry Regulatory Authority, the successor to the NASD.  Am. Compl. ¶ 19.  The

Trust is a registered investment company that has established the Funds as separate series.  *Id.*

¶¶ 2, 10.  Mr. Faust is one of nine Trustees of the Trust and has been classified as an "interested"

Trustee for purposes of the ICA.  *Id.* ¶ 18.  The remaining Trustees are all disinterested or

"independent."  Am. Compl. ¶¶ 11-17.

The Trust has elected to act as a distributor of its own shares.  *Id.* ¶ 48.  To effect this

distribution, the Trust has adopted Distribution Plans for certain classes of fund shares and has

---

[4]      Copies of the relevant documents are attached to the Declaration of Jeffrey B. Maletta
("Maletta Decl.") submitted with EVD's and Mr. Faust's motion to dismiss the initial complaint.
*See* Dckt. no. 15.  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court may take
judicial notice of matters of public record, documents sufficiently referred to in a complaint, and
other indisputably authentic documents underlying plaintiff's claims.  *Beddall v. State Street
Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).  SEC filings fall within these parameters.  *In
re Stone & Webster, Inc., Securities Litig.*, 253 F. Supp. 2d 102, 128 n.11 (D. Mass. 2003).

entered into the Distribution Agreement with EVD, which appoints EVD as the principal

underwriter of the Funds.  Am. Compl. ¶ 44.  EVD buys from the Trust sufficient shares to fill

orders it has received from financial services firms.  Maletta Decl. Ex. C at Section 2.  Under the

Distribution Agreement, the Trust pays to EVD fees in accordance with the Distribution Plans.

*Id.* at Section 5(c) and (d).

The relevant Distribution Plans are described in the Prospectus in the Registration

Statement for the Income Fund, the Fund in which plaintiff allegedly owns shares.  *See id.*;

Maletta Decl. Ex. A at 10.[5]  Individual investors such as plaintiff have a choice among different

classes of shares with differing fee structures.  Maletta Decl. Ex. A at 10.  *See Yameen v. Eaton*

*Vance Distributors, Inc.*, 394 F. Supp. 2d at 352-53 (D. Mass. 2005) (describing generally

similar share classes available for Eaton Vance Tax-Managed Growth Fund 1.1).

Investors in Class A shares pay a sales charge or "load" at the time of purchase of up to

4.75 percent.  Maletta Decl. Ex. A at 10, 12.  Purchasers of Class B and Class C shares pay no

up-front sales charge.  *Id.*  These classes pay .75 percent of net assets annually as a distribution

fee to EVD.  *Id.*  Class B and C shareholders who redeem within certain periods after purchase

may pay a contingent deferred sales charge.  *Id.* at 12.  All three classes pay a .25 percent service

fee.  *Id.* at 12.[6]

These distribution arrangements, which are typical of those in place for a multitude of

other mutual funds, give investors a choice of how to pay the sales charges associated with their

purchases of fund shares.  The applicable 12b-1 fees are paid by each class to EVD under the

---

[5]    The Income Fund has four classes of shares outstanding, three of which – Classes A, B, and C – have adopted Distribution Plans.

[6]    These fees are consistent with the limitations on sales compensation imposed by Rule 2830 of the NASD.  *See* NASD Rule 2830(d).  The Income Fund also offers Class I shares through certain financial intermediaries.  *See* Maletta Decl. Ex. A at 11.

Distribution Agreement.  EVD, in turn, enters into contracts with the registered broker-dealers who effect retail sales of Fund shares in the format of the Selling Agreement.  Maletta Decl. Ex. D at ¶ 1.  The Selling Agreement spells out the broker-dealer's obligations in selling Fund shares and its compensation for its selling efforts.  Those contracts provide for payments based on the sale of Fund shares through transactional commissions, or through dealer discounts, and service fees for servicing shareholder accounts holding Fund shares.  *Id.*

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This requires pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "[T]hreadbare recitals of elements of cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

The Amended Complaint falls far short of this standard.

## I.      THE PAYMENTS TO EVD UNDER THE DISTRIBUTION PLANS DO NOT VIOLATE THE ADVISERS ACT

The Amended Complaint makes it very clear that plaintiff's entire case hinges on § 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11)(C), and the *Financial Planning* decision (*see* Am. Compl. ¶¶ 2, 4).  Under plaintiff's reading of that statute, a broker-dealer can receive only "transactional commissions" and asset-based compensation is not a "transactional commission," it is "special compensation" for investment advisers.  Am. Compl. ¶¶ 31-33.

There are two flaws in this argument.  First, to implicate the Advisers Act at all, the payments must be "special compensation" for investment advice.  There is no allegation that EVD, the recipient of the payments under the Distribution Agreement under attack, is giving any

investment advice to anyone.  The payments received by EVD are expressly for sales

transactions and shareholder account services.

Second, and more fundamentally, the contention that these asset-based fees are not

functionally "transactional commissions," Am. Compl. ¶ 33, is simply wrong.  The amounts paid

to the selling broker-dealer are paid solely as the result of a transaction: the sale of Fund shares.

No sale, no payment.  In addition, 12b-1 fees may differ based on the particular investment

company securities the broker sells and that are maintained in the brokerage account.  Such

incentives provide much of the impetus for broker-dealer regulation.

Indeed, Rule 12b-1 is part of a longstanding and multilayered regulatory scheme

governing mutual fund distribution arrangements authorized by the ICA.  Rule 12b-1 is expressly

authorized by § 12(b) of the ICA, 15 U.S.C. § 80a-12(b).  Section 12(b) allows the SEC to adopt

rules under which a mutual fund may act as a distributor of its own shares, as the Trust has

elected to do here.  In § 22(b) of the ICA, 15 U.S.C. § 80a-22(b), Congress granted the NASD

the power to regulate all charges for sales of mutual fund shares, including the distribution fees

at issue in this case.  NASD Rule 2830[7], which was promulgated pursuant to § 22(b) and has

been approved by the SEC, *see Yameen*, 394 F. Supp. 2d at 354, demonstrates that much of the

purpose of Rule 12b-1 is to facilitate an investor's ability to effectively finance the payment of a

sales load **to his broker**.  *See* Exchange Act Release No. 30897, 1992 WL 159735, 57 Fed. Reg.

30,985, 30,989 (July 13, 1992) ("The [SEC] is of the opinion that the rule change carries out the

NASD's congressional mandate to prevent excessive sales charges on mutual fund shares" and

ensures that "broker-dealers, sales personnel and underwriters … receive reasonable

compensation" and "that investors are charged reasonable sales loads"); *id.* (NASD's authority to

---

[7]      A copy of NASD Rule 2830 is included as Ex. A. to the Legal Appendix to this
Memorandum.

"regulate comprehensively mutual fund fees received by members" comports with "the statutory

mandate of section 22(b) that gives the NASD authority to prohibit excessive sales loads");

*Yameen*, 394 F. Supp. 2d at 354 (Rule 12b-1 effectively allows investors in mutual funds "to

choose between paying distribution and service charges up front and spreading them out over a

period of several years").  Rule 2830(b)(8) accordingly includes "asset based sales charge[s]"

within the definition of "sales charges," all of which are subject to the limitations of the Rule.

*See* Rule 2830(d).  Rule 2830 similarly regulates service fees.  *See* Rule 2830(d)(5).

Nothing in any of the federal securities laws states that an investor cannot elect to spread

a commission payment over a number of years, as plaintiff apparently elected to do in purchasing

Class C shares, rather than paying the whole, potentially higher commission, up front.

*Financial Planning* does not relate to this structure in any way.  *See Franklin*, 2010 WL

2348644, at *8 (recognizing that *Financial Planning* is "irrelevant" in this context).  *Financial

Planning* involved a challenge to a rule promulgated by the SEC in 2005 that, contrary to the text

of the Advisers Act, exempted broker-dealers who received "special compensation" for

providing investment advice from the requirement that they register as investment advisers.  The

D.C. Circuit struck down the rule, concluding that the conduct permitted by the rule was outside

the scope of the statutory exemption granted in § 202(a)(11)(C) of the Advisers Act.  482 F.3d at

494.  The court did not consider 12b-1 fees and did not address (let alone alter) the statutory

exemption for "any broker or dealer whose performance of [investment advisory] services is

solely incidental to the conduct of his business as a broker or dealer, and who receives no special

compensation therefor."

Other courts, both before and after *Financial Planning*, have read the Advisers Act to

exempt broker-dealers from registration where the compensation related to sales and other

broker-dealer functions.  *See Thomas v. Metropolitan Life Ins. Co.*, No. CIV-07-0121-F, 2009 WL 2778663, *6-10 (W.D. Okla. Aug. 31, 2009) (registration not required where compensation was for "making the sale"); *Kassover v. UBS Fin. Serv.*, 619 F. Supp. 2d 28, 34 (S.D.N.Y. 2008) (dismissing complaint that failed to allege broker-dealer was paid special compensation for investment advice or that any advice was not solely incidental to maintenance of brokerage accounts); *Luzerne County Ret. Bd. v. Makowski*, 627 F. Supp. 2d 506, 573-74 (M.D. Pa. 2007) (compensation for transaction-related services and administration of investment fund is not special compensation for investment advice); *Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 464 F. Supp. 528, 538 (D. Md. 1978) (broker-dealer not an investment adviser as any investment advice was incidental to services as broker on account).

In short, the Advisers Act's requirement that broker-dealers who receive "special compensation" for investment advice must register as an investment adviser simply has no application to payments under Rule 12b-1.  Accordingly, the Amended Complaint should be dismissed in its entirety.

## II. THE INDIVIDUAL COUNTS AGAINST EVD FAIL TO STATE A CLAIM

### A. The Amended Complaint Fails to State a Claim Under ICA § 47(b)

Section 47(b) does not regulate conduct; it provides a remedy under which the parties to a contract may seek to rescind it if that contract violates another provision of this "subchapter" – the ICA or the regulations issued under the ICA.[8]  *See, e.g.*, *Stegall v. Ladner*, 394 F. Supp. 2d 358, 378 (D. Mass. 2005).  This aspect of the statute compels dismissal of plaintiff's § 47(b) claim for two reasons.

---

[8]     Section 47(b)(1) provides that "[a] contract that is made, or whose performance involves a violation of *this subchapter*, or any rule, regulation or order thereunder, is unenforceable by either party . . . ."  15 U.S.C. § 80a-46 (emphasis added).

First, since plaintiff's allegations that duties owed under the ICA have been breached depend entirely on his defective claim under the Advisers Act, he has not stated a violation of the ICA to support a § 47(b) claim.

Second, plaintiff's effort to bootstrap his way to a § 47(b) claim by alleging a supposed "violation" of § 36(a) and Rule 38-1 fails.  Numerous courts have recognized that § 36(a) does not provide a private plaintiff with a right of action.  *See*, *e.g.*, *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007); *Stegall*, 394 F. Supp. 2d at 371-72.  It therefore cannot serve as a basis for a claim under § 47(b).  *See Stegall*, 394 F. Supp. 2d at 378 (dismissing § 47(b) claim after finding no private right of action under § 36(a)).

Moreover, § 36(a) is not a substantive provision of the ICA that can be violated.  As the SEC has recognized, the section provided no basis for finding a violation of the Act, even by the SEC itself:

> Neither before the [1970] amendment nor afterwards, does § 36 in terms make anything unlawful.  It simply authorizes the Commission to file an action in the Federal court and empowers the court to grant appropriate relief.  Such language would not normally lead to the conclusion that the conduct actionable under the section is a violation of the Act.  Moreover, violations of the Act are criminal offenses.  And . . . Congress in 1940 deliberately determined that Section 36 should not be a basis for criminal prosecution. . . . Hence . . . Section 36 cannot serve as the sole basis for administrative sanctions.

*In re Carl L. Shipley*, Exchange Act Release No. 10870, 4 SEC Docket 476, 478, 1974 WL 161761, *3 (Jun. 21, 1974).

Thus, even though ICA § 9(b) authorizes the SEC to conduct an administrative proceeding for "willful[] viola[tions] [of] any provision[] of . . . this Act," the SEC has concluded that § 36(a) cannot be the basis for an administrative action because it cannot be "violated."  This analysis is equally applicable to § 47(b), which as a prerequisite to relief

similarly requires a plaintiff to show "a violation of this subchapter or of any rule, regulation or order thereunder." 15 U.S.C. § 80a-46(b). This is the only plausible view of the statutory text. It makes no sense to suggest that an enforcement provision that cannot itself be violated can serve as the basis for a remedy under § 47(b). *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994) (federal courts lack authority to "extend liability beyond the scope of conduct prohibited by the statutory text"); *cf. Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("One cannot go into court and claim a 'violation' of Section 1983 – for Section 1983 by itself does not protect anyone against anything.").

Similarly, Rule 38a-1 imposes no obligations on EVD, the only defendant named in Count I, or any other defendant. It imposes obligations only on registered investment companies and their Chief Compliance Officers ("CCOs"). For example, an investment company must adopt a compliance plan and designate a CCO. *See* Rule 38a-1(a)(1) and (4), 17 C.F.R. § 270.38a-1(a). The CCO must report violations of federal securities laws to the board. Rule 38a-1(a)(4)(iii), 17 C.F.R. § 270.38a-1(a)(4). There is no allegation that these requirements have not been satisfied here. Plaintiff attempts to spin from these provisions affirmative obligations on the part of the Trustees to take the action that he demands in the Amended Complaint. But Rule 38a-1 imposes no such obligations. *See Franklin*, 2010 WL 2348644, at *7-8 (Rule 38a-1 creates no private right of action and "does not impose on funds a duty to assure that the broker-dealers comply with registration requirements").

Count I also fails because plaintiff does not allege that the Distribution Agreement itself is unlawful, only that its "performance" violates the duties arising under the ICA. *See*, *e.g.*, Am. Compl. ¶ 61. Section 47(b) does not support a claim absent an allegation that the relevant contract itself (here the Distribution Agreement) is illegal. *See*, *e.g.*, *GFL Advantage Fund, Ltd.*

*v. Colkitt*, 272 F.3d 189, 200-02 (3d Cir. 2001) (under the Securities Exchange Act of 1934 §

29(b), only unlawful contracts may be rescinded, not allegedly unlawful transactions made

pursuant to lawful contracts); *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*,

672 F.2d 901 (2d Cir. 1981).  As noted above, the Amended Complaint contains no allegation

that the payments from the Trust to EVD under the Distribution Agreement are "special

compensation" to a broker-dealer to provide "investment advice" to any customer in exchange

for that compensation.  *Cf. ING v. Principal Protection Funds Litig.,* 369 F. Supp. 2d 163, 169

(D. Mass. 2005) (dismissing claims that 25 basis point service fee was excessive where no

allegation that fees are unrelated to services being rendered).  In any event, as plaintiff

acknowledges, the retail broker-dealers can comply with plaintiff's vision of the Advisers Act,

thus making the payments lawful even under plaintiff's theory.  *See* Am. Compl. ¶ 51.

Finally, to the extent that the Amended Complaint relies on a violation of the ICA, no

relief can be granted, as EVD has a complete defense under § 38(c) of that Act.  15 U.S.C.

§ 80a-37(c).  Section 38(c) provides that "[n]o provision of this title imposing any liability shall

apply to any act done or omitted in good faith in conformity with any rule, regulation or order of

the [SEC]," even if such rule, regulation or order may subsequently be rescinded or invalidated.

As plaintiff's initial complaint itself alleged, the payments made under the Plans have been made

"as allowed by Rule 12b-1" (Compl. ¶ 45) and other SEC and NASD regulations.  There is no

allegation that defendants could not rely in good faith on this regulatory framework.  Therefore,

no liability may be based on § 47(b).

### B.     The Amended Complaint Fails to State a Claim for "Contract Voiding"

Plaintiff's Second Count, "Contract Voiding Pursuant to State Law Against Eaton Vance

Distributors," Am. Compl. ¶¶ 76-80, expressly asserts that the "Trust is obligated to void the

broker-dealer compensation provisions in its Distribution Agreement between the Trust and

Eaton Vance Distributors, because performance cannot be accomplished without violating the foregoing duties under the ICA and SEC Rule 38a-1 and the Advisers Act."  Am. Compl. ¶ 79. This claim fails for two reasons.

First, it is preempted by federal law.  Although state law generally governs the rights and duties of sellers and purchasers of goods and services, "the effect of illegality under a federal statute is a matter of federal law … even in diversity actions in the federal courts after [*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)." *Kelly v. Kosuga*, 358 U.S. 516, 519 (1959) (antitrust). The express remedies provided by federal law should "not be added to judicially by including the avoidance of private contracts as a sanction."  *Id.* (*citing D.R. Wilder Mfg. Co. v. Corn Products Refining Co.*, 236 U.S. 165 (1915).  *See also General Life of Mo. Inv. Co. v. Shamburger*, 546 F.2d 774, 783 n.15 (8th Cir. 1976) (enforceability of stock subscription agreement in violation of the Securities Act of 1933 was a matter of federal law); *Rothberg v. Rosenbloom*, 808 F.2d 252, 254 n.2 (3d Cir. 1986) ("We see no need to consider the defense of illegality under Pennsylvania law because the public policy, even as alluded to by the district court, is one that underlies federal securities law, not Pennsylvania law.  Therefore, the analysis with respect to the illegality defense is governed by federal law, not state law.") (transaction allegedly in violation of Rule 10b-5).[9]

The conclusion that states are not free to impose additional or different consequences to contracts in supposed violation of federal law is reinforced in this context given Congress's decision to reduce or eliminate overlapping and duplicative state and federal regulation of

---

[9]      *See generally Burks v. Lasker*, 441 U.S. 471, 476 (1979) ("When a federal statute condemns an act as unlawful the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted.") (citation and internal quotation marks omitted).

investment advisers.  *See* Advisers Act § 203A, 15 U.S.C. § 80b-3a; *S. Rep. No. 293*, 104th

Cong. 2d Sess. 3 (1996) (in the Investment Advisers Supervision Coordination Act, Congress

sought to eliminate "overlapping regulatory responsibilities" over investment advisers by the

states and the SEC).[10]

Here, there is an express federal remedy for a contract that supposedly violates a federal

statute. A new and broader one cannot be created under state law.

Even assuming *arguendo* that the state law claims were not broadly preempted in this

context, state law requires dismissal of plaintiff's § 47(b) claim and also dooms plaintiff's state

law "contract voiding" claim.

Where, as here, legislation addresses in detail when a contract is voidable for alleged

illegality, Massachusetts courts have recognized that there is no need or persuasive basis to tack

on additional or different standards under the common law.  *See, e.g., City of Lawrence v.

Falzarano*, 380 Mass. 18, 402 N.E.2d 1017, 1020 (1980) ("If a statute does not declare a contract

made in violation of its terms to be void, and if it is not necessary to hold the contract void in

order to accomplish the purposes of the statute, the inference is that the statute was intended to

be directory, and not prohibitory, of the contract."); *LeClair v. Norwell*, 430 Mass. 328, 719

N.E.2d 464, 472 (1999) (similar); *Town Planning and Engineering Associates, Inc.*, 369 Mass.

737, 342 N.E.2d 706, 711 (1976) ("Our cases warn against the sentimental fallacy of piling on

sanctions unthinkingly once an illegality is found."  In addition, "[c]ourts do not go out of their

way to discover some illegal element in a contract or to impose hardship upon the parties beyond

---

[10]    *See also Rules Implementing Amendments to the Investment Advisers Act of 1940*,
Investment Advisers Act Release No. 1633, May 15, 1997 (adopting broad view of the
preemptive effect of the Investment Advisers Supervision Coordination Act of 1996, and
particularly § 203A of the Advisers Act).

what is necessary to uphold the policy of the law.") (citation and internal quotation marks omitted).

**C.     The Amended Complaint Fails to State a Claim for Breach of Contract**

Count III alleges a breach of contract based on purported violation of a warranty in the Distribution Agreement that EVD "will comply with the federal securities laws."  Am. Compl. ¶ 82.  Plaintiff alleges no actual damages, but contends that this supposed contractual breach resulted in a "per se" waste of Trust assets.  Am. Compl. ¶ 85.

Plaintiff's "per se damages" theory is preempted for the same reason as Count II: it seeks to impose additional state law consequences based solely on the supposed illegality of the Distribution Agreement under federal law.

In any event, the relevant provision in the Distribution Agreement, which is quoted elsewhere in the Amended Complaint itself, states that EVD agrees it "will use its *best efforts* in all respects duly to conform with the requirements of all state and federal laws *relating to the sale* of such [Fund] shares."  Am. Compl. ¶ 46.  *See* Maletta Decl. Ex. C at ¶ 4 (emphasis added).  Thus, there is no contractual term to support plaintiff's sweeping claim.  *See Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (to state a viable breach of contract claim, plaintiff "must do more than allege, in conclusory fashion, that the defendant breached the contract"; he must "describe[e], with 'substantial certainty,' the specific contractual promise the defendant failed to keep").  As demonstrated in the preceding sections, the Amended Complaint does not allege that EVD has even violated any of the securities laws, certainly none relating to the sale of securities.  And there are no facts alleged to support the conclusion that EVD did not use its best efforts to conform to the law.  Accordingly, Count III fails to state a claim and should be dismissed as well.

## III.   THE CLAIMS FOR BREACH OF FIDUCIARY DUTY AND WASTE AGAINST MR. FAUST SHOULD BE DISMISSED

The Amended Complaint contains no specific allegations concerning Mr. Faust that distinguish him from the group of Trustees as a whole.  As plaintiff concedes, his entire case, including the claims against the Trustees for breach of fiduciary duty and for waste, depends on the conclusion that the payment of asset-based compensation in connection with the sale of fund shares and servicing of shareholder accounts violates the Advisers Act.  As demonstrated above, the Trust's payment of Rule 12b-1 fees violates no law and is entirely consistent with the regulatory framework.  Accordingly, the claims against Mr. Faust and all Trustees should be dismissed for failure to state a claim.

In addition, because there are no allegations of fact upon which to base these claims against Mr. Faust, the claims should be dismissed on the grounds set forth in Parts II.A and B of the Trustees' Memorandum.

In the alternative, the Court should decline to exercise supplemental jurisdiction of the claims against Mr. Faust and the Trustees that are based on state law.  The Amended Complaint alleges jurisdiction under ICA § 44, 15 U.S.C. § 80a-43 and 28 U.S.C. §§ 1331 and 1337 over Counts I, II and III.  The remaining claims against Mr. Faust and the Trustees for breach of fiduciary duty and waste are before the Court only on an allegation of supplemental jurisdiction and 28 U.S.C. § 1367.  *See* Am. Compl. ¶¶ 6-7.  The Amended Complaint's claims under the Advisers Act and § 47(b) against EVD provide the only basis for federal jurisdiction.  Since plaintiff has failed to state a claim based on these provisions, the Court may decline to exercise supplemental jurisdiction and dismiss Counts IV through V.  *See Stegall*, 394 F. Supp. 2d at 378, n.26.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Trustees' Memorandum, the

Amended Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,

EATON VANCE DISTRIBUTORS, INC. and
THOMAS E. FAUST JR.

By their attorneys,

/s/ *Ryan M. Tosi*
Ryan M. Tosi (BBO #661080)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
Tel:  (617) 261-3100
Fax:  (617) 261-3175
Dated:   July 15, 2010       ryan.tosi@klgates.com

Charles L. Eisen (admitted *pro hac vice*)
Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (*pro hac vice* application to
be submitted)
**K&L GATES LLP**
1601 K Street, NW
Washington, DC  20006-1600
Tel:  (202) 778-9000
Fax:  (202) 778-9100
charles.eisen@klgates.com
jeffrey.maletta@klgates.com
nicholas.terris@klgates.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, if any, on this 15th day of July 2010.

/s/ <i>Ryan M. Tosi</i>
Ryan M. Tosi
