# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JEFFREY WIENER, derivatively on behalf of
EATON VANCE MUNICIPALS TRUST,

          Plaintiff,

v.

EATON VANCE DISTRIBUTORS, INC.,
BENJAMIN C. ESTY, ALLEN R. FREEDMAN,
WILLIAM H. PARK, RONALD A.
PEARLMAN, HELEN FRAME PETERS,
HEIDI L. STEIGER, LYNN A. STOUT,
RALPH F. VERNI, and THOMAS FAUST,

          Defendants,

and

EATON VANCE MUNICIPALS TRUST,

          Nominal Defendant.

Civil Action No.: 10-10515-DPW

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
## THE AMENDED COMPLAINT BY THE INDEPENDENT TRUSTEE DEFENDANTS
## AND NOMINAL DEFENDANT EATON VANCE MUNICIPALS TRUST

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT .......................................................................................................... 4

I.     THE DECISION WHETHER THE ONGOING PAYMENTS AT ISSUE ARE LAWFUL IS PROPERLY COMMITTED TO THIS COURT, NOT TO THE MUTUAL FUND'S BOARD ................................................................ 4

     A.     Plaintiff Has Sufficiently Alleged the Trust's Ongoing Securities Law Violations ........................................................................................... 7

II.     APPLICABLE FEDERAL LAW PREEMPTS ANY STATE LAW THAT WOULD OPERATE TO INSULATE ALLEGED VIOLATIONS FROM JUDICIAL REVIEW ................................................................................... 10

III.     PLAINTIFF'S STATE LAW CLAIMS ARE ADEQUATELY PLEADED ...... 12

     A.     Plaintiff Adequately Alleges a Claim for Breach of Fiduciary Duty ....... 12

          1.     Rule 9(b) Does Not Apply Because Plaintiff Does Not Allege Fraud .............................................................................. 12

          2.     Plaintiff's Breach of Fiduciary Duty Claim Is Not a *Caremark* Claim ............................................................................ 13

     B.     Plaintiff Adequately Alleges a Claim for Corporate Waste ..................... 15

CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blake v. Smith*,
  No. 0300003 B, 2006 WL 4114305 (Mass. Super. Dec. 11, 2006).........................................16

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ......................................................................................................16

*Burks v. Lasker*,
  441 U.S. 471 (1979)..........................................................................................................10, 12

*Cal. Pub. Employees Ret. Sys. v. Coulter*,
  No. 19191, 2002 Del. Ch. LEXIS 144 (Del. Ch. Dec. 18, 2002) ............................................6

*Canadian Commer. Workers Indus. Pension Plan v. Alden*,
  No.1184-N, 2006 WL 456786 (Del. Ch. Feb. 22, 2006) ........................................................15

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007)............................................................................................7, 15

*Evangelist v. Fidelity Management & Research Co.*,
  554 F.Supp. 87 (D. Mass. 1982) ..............................................................................................8

*Fidelity Federal Savings and Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982)................................................................................................................11

*Financial Planning Ass'n v. SEC*,
  482 F.3d 481 (D.C. Cir. 2007) .................................................................................................1

*Galef v. Alexander*,
  615 F. 2d 51 (2d Cir. 1980).......................................................................................................8

*Gall v. Exxon Corp.*,
  418 F. Supp. 508 (S.D.N.Y. 1976)........................................................................................5, 9

*Gantler v. Stephens*,
  No. 2392, 2008 Del. Ch. LEXIS 20 (Del. Ch. Feb. 14, 2008)..................................................6

*Gerber v. Bowditch*,
  05-10782, 2006 WL 1284232 (D. Mass. May 8, 2006) (Woodlock, J.)............................12, 13

*Gray v. Barnett ( In re Dehon, Inc.)*,
  334 B.R. 55 (Bankr. D. Mass. 2005) ....................................................................................5, 9

*Grimes v. Donald*,
  No. 13358, 1995 Del. Ch. LEXIS 3 (Del. Ch. Jan. 12, 1995), *aff'd*, 673 A.2d 1207
  (Del. 1996) ...........................................................................................................................6

*Guttman v. Jen-Hsun Huang*,
  823 A.2d 492 (Del. Ch. 2003) ...........................................................................................6

*Harhen v. Brown*,
  730 N.E. 2d 859 (2000) ...............................................................................................4, 5

*Hendersen v. Axiam, Inc.*,
  No. 962572D, 1999 WL 33587312 (Mass. Super. Ct. June 22, 1999) ................................16

*In re Abbotts Labs. Derivative S'holders Litig.*,
  325 F.3d 795 (7th Cir. 2003) .....................................................................................14, 15

*In re Caremark In'l, Inc.Deriv. Litig.*,
  698 A.2d 959 (Del. Ch. 1996) .............................................................................13, 14, 15

*In re Kauffman Mutual Fund Actions*,
  479 F.2d 257 (1st Cir. 1973) .......................................................................................7, 8

*In re Sabine, Inc.*
  No. 05-1019, 2006 WL 1045712 (Bankr. D. Mass. Feb. 27, 2006) ....................................17

*In re SFBC Int'l, Inc. Sec. & Derivative Litig.*,
  495 F. Supp. 2d 477 (D.N.J. 2007) ...................................................................................15

*In re Stratus Computer, Inc Sec. Litig.*,
  89-2075, 1992 WL 73555 (D. Mass. Mar. 27, 1992) ..........................................................13

*In re Teu Holdings, Inc.*,
  287 B.R. 26 (Bankr.D.Del. 2002) .....................................................................................17

*In re Walt Disney Co. Derivative Litig.*,
  No. 15452, 2004 Del. Ch. LEXIS 132 (Del. Ch. Sept. 10, 2004), *aff'd*, 906 A.2d 27
  (Del. 2006) ...........................................................................................................................7

*Independent Cellular Telephone, Inc. v. Barker*,
  No. 15171, 1997 WL 153816 (Del. Ch. Mar. 21, 1997).....................................................17

*Insanaka v. Spectrum Technologies USA Inc.*,
  131 F. Supp.2d 353 (N.D.N.Y. 2001) ...............................................................................13

*Kahn ex rel. DeKalb Genetics Corp. v. Roberts*,
  679 A.2d 460 (Del. 1996) ...................................................................................................6

*Landy v. D'Alessandro,*
    316 F. Supp. 2d 49 (D. Mass. 2004) ...................................................................8

*Litt v. Wycoff,*
    No. 19083, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003) .......................................8

*Metro Commc'n Corp. BVI v. Advanced Mobilcomm Techs., Inc.,*
    854 A.2d 121 (Del. Ch. 2004) ...........................................................................6

*Miller v. American Tel & Tel. Co.,*
    507 F.2d 759 (3d Cir. 1974) ..........................................................................5, 9

*North Am. Catholic Educational Programming Foundation Inc. v. Cardinale,*
    567 F.3d 8 (1st Cir. 2009) .........................................................................12, 13

*O'Neal v. Smithkline Beecham Corp.,*
    551 F. Supp. 2d 993 (E.D. Cal. 2008) ...............................................................11

*Sachs v. Sprague,*
    401 F. Supp.2d 159 (D. Mass. 2005) ................................................................13

*SEC v. Keating,*
    91-6785, 1992 U.S. Dist. LEXIS 14630 (C.D. Cal. July 24,1992)...................11, 12

*Stern v. General Electric Co.,*
    86- 4055, 1992 WL 8195 (S.D.N.Y. Jan. 14, 1992) ..............................................16

*Swingless Golf Club Corp. v. Taylor,*
    679 F. Supp. 2d 1060 (N.D. Cal. 2009) .............................................................16

*White v. Panic,*
    793 A.2d 356 (Del. Ch. 2000) .........................................................................15

**STATUTES**

17 C.F.R. § 270.12b-1(b)(3) ...............................................................................14

18 U.S.C. § 610...............................................................................................9

Fed R. Civ. P. 23.1(b)(3)....................................................................................9

Mass. Gen. Laws ch. 156D, § 7.41 *et seq.*...........................................................4

Mass. Gen. Laws ch. 156D, § 7.42 .......................................................................7

**OTHER AUTHORITIES**

United States Constitution
    U.S. Const. Art. VI, Cl. 2................................................................................10

Plaintiff Jeffrey Wiener, suing derivatively on behalf of Eaton Vance Municipals Trust ("Trust"), respectfully submits this opposition to the motion to dismiss the Amended Complaint filed by the Independent Trustee Defendants and the Trust ("Motion").  Plaintiff incorporates by reference the arguments made in his opposition brief to the motion to dismiss filed by defendants Eaton Vance Distributors, Inc. and Thomas Faust ("Eaton Vance Distributors' Motion'").

## PRELIMINARY STATEMENT

Plaintiff complains derivatively that the Trust, his mutual fund, is using fund assets -- on an ongoing and current basis -- to pay "asset-based compensation" to broker-dealers, in contravention of a clear statutory ban on such compensation in the Investment Advisers Act of 1940, as definitively confirmed by *Financial Planning Ass'n v. SEC,* 482 F.3d 481 (D.C. Cir. 2007).

The Trust, as nominal defendant, defends on the ground that it has concluded, based on the recommendation of a committee of the board that received advice of counsel, that the challenged payments are legal and therefore plaintiff's demand was properly refused.

As described in the Trust's present motion, the board's decision was based on purely legal conclusions: (a) that "all asset-based compensation is not necessarily 'special compensation,'" as that term is employed in Section 202(a)(11)(C) of the Adviser's Act, such that the payments were lawful; and (b) that *Financial Planning Ass'n* "did not determine. . . that Rule 12b-1 fees or any other particular form of 'asset-based' compensation constitutes 'special compensation' for purposes of Section 202(a)(11)(C) in all instances.'" Motion at 8-10.  The board also determined that the benefit of pursuing litigation was outweighed by the likely actions that broker-dealers would take in response to any corrective action by the Trust (*i.e.* requiring advisory accounts or terminating the payments) during the pendency of the litigation.  *Id.* at 10-11.

The Trust's position is itself completely untenable.  However completely Massachusetts common or statutory law may commit *business* decisions to corporate boards, all applicable decisional law reserves to *courts* the ability, and indeed the duty, to determine whether the company is committing *ongoing violations of law.*  There can be no business judgment that it is in the "best interests of the corporation" to violate the law.  Nor can the Trust make a business decision to insulate itself from any judicial review of its *ongoing decisions to violate the law,* especially in view of the fact that the assertedly unlawful payments are being directly made from the individually allocable assets owned by mutual fund shareholders like plaintiff – assets held by the Trust solely in a fiduciary capacity.

Plaintiff's Amended Complaint focuses on the ongoing illegal conduct at issue, and makes no attempt to allege facts that rebut any business judgment of the board.  Yet, remarkably, the majority of the Trust's argument focuses on the independence of the Trustees and other factors pertinent to the business judgment rule – factors that plaintiff never sought to rebut.  This can all be disregarded.  The only argument that the Trust makes concerning the Rule 23.1 allegations actually pleaded in the Amended Complaint is that "conclusory" allegations of illegal conduct do not preclude the enforcement of the business judgment rule.  Motion at 15-17.  However, the Trust has no support for its argument.  Demand futility cases are inapposite.  Those cases (decided before Massachusetts' adoption of a universal demand statute) held only that the board should be given an opportunity to address the alleged illegal conduct before litigation is commenced – an opportunity plaintiff's demand gave the board here.  In any event, the pertinent caselaw, *i.e.* cases involving ongoing illegal conduct, demonstrates that plaintiff's non-frivolous allegations concerning the securities law violations at issue here are more than sufficient at this stage of the litigation.

Plaintiff also submits that the federal laws raised in his Amended Complaint, *viz.* the Investment Advisers Act of 1940 ("Advisers Act") and Investment Company Act of 1940 ("ICA"), as applied to the payments at issue, preempt any state laws, including the business judgment rule and any other state corporate governance laws, that arguably would impair or prevent enforcement of the federal laws.

Moreover, plaintiff's state law claims alleged against the Trustees are adequately pleaded. Plaintiff's breach of fiduciary duty claim is a properly pleaded direct claim against the Trustees arising from their ongoing failure to cease the illegal asset-based compensation payments, which are harming the Trust and its shareholders. The corporate waste claim is plausibly alleged because the Trust paid for advisory accounts on behalf of its shareholders and never received that service.

Based on the foregoing, the Court should deny the Motion in its entirety.

## FACTUAL BACKGROUND

In the response to the demand, the Trustees rejected plaintiff's legal position that asset-based compensation is the subject of the "no special compensation" prong of the statutory Broker-Dealer Exclusion to the Advisers Act. AC ¶ 69. According to the Trustees, asset-based compensation is not barred "in all instances." *Id*. The response letter repeatedly concedes that the payments are asset-based compensation. *Id*. In their motion, the Trustees incorporate the arguments contained in Eaton Vance Distributors' Motion, *see* Motion at 2 n.2, which argues that the "fees are transaction-based compensation in that they are tied to the sale of particular mutual fund shares." Eaton Vance Distributors' Motion at 2.

Both positions cannot be right. Either the 12b-1 payments are treated under the Broker-Dealer Exclusion as ongoing asset-based compensation *or* are treated as a transaction-based sales commission. The Trustees have no coherent theory of why the payments are lawful, much less

any business judgment on the subject.

The remaining relevant facts are set forth at length in plaintiff's opposition to the Eaton

Vance Distributors' Motion, which is being filed simultaneously herewith.  To avoid repetition,

those facts will not be repeated here.

## ARGUMENT

**I.    THE DECISION WHETHER THE ONGOING PAYMENTS AT ISSUE ARE
       LAWFUL IS PROPERLY COMMITTED TO THIS COURT, NOT TO THE
       MUTUAL FUND'S BOARD**

The Trust invokes *Harhen v. Brown,* 730 N.E. 2d 859, 865-67 (2000), to argue that its

refusal to stop making the payments at issue is protected by the business judgment rule, as

subsequently codified in 2004 by Mass. Gen. Laws ch. 156D, § 7.44.  Motion at 12-13.  The

Trust argues that the business judgment rule insulates all board decisions unless the complaint

particularizes reasons that the board was not "independent" and did not act in "good faith" after

conducting a "reasonable inquiry."  *Id.*

Consistent law from Massachusetts, Delaware, New York, and federal courts holds that

the business judgment rule does not and cannot insulate *ongoing assertedly unlawful decisions or

conduct* by corporate boards from judicial review.

The *Harhen* case -- the seminal case on the business judgment rule in Massachusetts --

itself confirms plaintiff's point, stating that:  "Of course, where the failure to pursue a claim in

itself is an illegal act or results in the continuation of an illegal act, the business judgment rule

does not apply."  *Harhen,* 730 N.E. 2d at 866 n.7 (citing *Miller v. American Tel & Tel. Co.,* 507

F.2d 759, 762 (3d Cir. 1974) (business judgment rule does not insulate directors from liability

stemming from current violation of federal statute)).[1]  The Amended Complaint clearly alleges

---

[1] Although the Massachusetts Supreme Judicial Court in *Harhen* dismissed the plaintiff's action
based upon the business judgment rule, that conclusion has no applicability here, as the court

4

throughout that the Trust's ongoing payments are unlawful.  *See, e.g.,* AC ¶¶ 4-5, 53-55, 57.

The distinction between past and ongoing illegal conduct in *Miller* was aptly explained by the court in *Gall v. Exxon Corp.*, 418 F. Supp. 508 (S.D.N.Y. 1976):

> The Court [in *Miller*] noted that had plaintiffs' complaint alleged only a failure to pursue a corporate claim, application of the business judgment rule would support the district court's ruling that a shareholder could not attack the decision of the directors.  The Court went on to note, however, that where the decision not to collect the debt owed to the corporation was itself alleged to be an illegal act, a different rule would apply.  Since the Court found that issues had been raised as to whether the defendant directors had breached 18 U.S.C. § 610 as plaintiffs had charged, it concluded that plaintiffs' complaint stated a claim upon which relief could be granted sufficient to withstand a motion to dismiss.

*Id*. at 518 n.19.  Accordingly, when the board decision being challenged involves conduct that assertedly remains unlawful on an ongoing basis, and the derivative plaintiff seeks to terminate the unlawful conduct, the board's "business" judgment is not involved and the business judgment rule does not preclude the action.

For instance, a board can exercise its business judgment not to seek a damages remedy for past illegal conduct (for example, the board of a manufacturing company may make a business decision not to sue and antagonize a critical parts supplier even if payments to it were unlawful).  However, such an exercise of board authority is not permitted if the assertedly unlawful conduct was *continuing* at the time the board was considering the shareholder's demand to cease the unlawful conduct.  This is because engaging in illegal activity is *ultra vires* and not a valid business judgment, and therefore it is a matter for a court to decide.  *See Gray v. Barnett ( In re Dehon, Inc.)*, 334 B.R. 55, 66 (Bankr. D. Mass. 2005):

> Under the facts presented in the Plan Administrator's complaint, however, the challenged distributions were not legitimate business decisions, regardless of whether the Defendants believed that they were in the best interests of the Debtor,

---

noted that there was no allegation of ongoing illegal conduct by the plaintiff.  *Harhen*, 730 N.E. 2d at 866 n.7.

since the Debtor's insolvency renders such distributions unlawful under § 61. As the Massachusetts Supreme Judicial Court alluded to in *Harhen*, challenges to business decisions involving illegal actions do not implicate the business judgment rule. *See Harhen*, 431 Mass 838, 730 N.E.2d at 866 (citing *Miller v. Am. Tel. & Tel. Co.,* 507 F.2d 759, 762 (3d Cir.1974)).

*See also Kahn ex rel. DeKalb Genetics Corp. v. Roberts*, 679 A.2d 460, 465 (Del. 1996) (business judgment rule only protects lawful actions of a board); *Gantler v. Stephens*, No. 2392, 2008 Del. Ch. LEXIS 20, at *59 n.112 (Del. Ch. Feb. 14, 2008) ("[v]oid acts contrary to public policy or beyond the authority of the corporation. . . cannot be cured by ratification"); *Metro Commc'n Corp. BVI v. Advanced Mobilcomm Techs., Inc.*, 854 A.2d 121, 131 (Del. Ch. 2004) ("[u]nder Delaware law, a fiduciary may not choose to manage an entity in an illegal fashion, even if the fiduciary believes that the illegal activity will result in profits for the entity"); *Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 506 n. 34 (Del. Ch. 2003) ("one cannot act loyally as a corporate director by causing the corporation to violate the positive laws it is obligated to obey"); *Cal. Pub. Employees Ret. Sys. v. Coulter*, No. 19191, 2002 Del. Ch. LEXIS 144, at *34, *39-40 (Del. Ch. Dec. 18, 2002) (holding that a repricing of stock options where "the underlying stock option plan does not permit repricing of options" is *ultra vires*, that "the business judgment rule may not be invoked to shelter unauthorized actions of a board of directors" and that "[a]ny action of the board that falls outside the rather broad scope of its authority is not entitled to the protection of the business judgment rule"); *Grimes v. Donald*, No. 13358, 1995 Del. Ch. LEXIS 3, at *21 (Del. Ch. Jan. 12, 1995) ("The question whether these contracts are valid or not does not fall into the realm of business judgment, it cannot be definitively determined by the informed, good faith judgment of the board.  It must be determined by the court."), *aff'd*, 673 A.2d 1207, 1212 (Del. 1996).[2]

---

[2] *See also In re Walt Disney Co. Derivative Litig.*, No. 15452, 2004 Del. Ch. LEXIS 132, at *31-32 (Del. Ch. Sept. 10, 2004), *aff'd*, 906 A.2d 27 (Del. 2006) ("if the transaction constitutes

Those authorities, preserving for *judicial* review claims alleging that ongoing corporate

activity is unlawful, demonstrate that the business judgment rule is inapplicable here.

### A.   Plaintiff Has Sufficiently Alleged the Trust's Ongoing Securities Law Violations

Defendants cannot cite a single authority suggesting that the business judgment rule

permits a board to conclude that it is in the "best interests of the corporation" to continue with

illegal conduct.  Instead, defendants cite to cases that address the issue of demand futility (when

a plaintiff has filed litigation without first making a demand on the board), rather than cases

involving allegations of wrongful refusal of a demand.  Recognizing the inapplicability of their

cases, defendants weakly claim that demand futility precedents are relevant because the pleading

standard is the same for demand futility and demand refusal.  Motion at 16 n.57.

However, the operative pleading standard has nothing to do with the applicability of the

business judgment rule, as defendants' own cases explain.  In *In re Kauffman Mutual Fund

Actions*, 479 F.2d 257, 266-67 (1st Cir. 1973), the Court affirmed the granting of a motion to

dismiss a derivative action on the grounds that the shareholder had not demonstrated demand

futility because the board should have had the opportunity to address the alleged misconduct

without the need for litigation.[3]  The opinion does not address whether the board could have

relied upon the business judgment rule to reject a demand.  Indeed, the Court expressly noted

that its decision was limited to the demand obligation, and that its decision did not bar a plaintiff

---

waste, illegality, fraud, or an *ultra vires* act, not even ratification by disinterested directors or
anything less than a unanimous shareholder vote will protect the transaction, or those
participating in it"); *Desimone v. Barrows*, 924 A.2d 908, 934 (Del. Ch. 2007) (directors have
"wide authority to take lawful action on behalf of the corporation" but "have no authority
knowingly to cause the corporation to become a rogue, exposing the corporation to penalties
from criminal and civil regulators").

[3] *Kauffman* was decided before Massachusetts implemented a universal demand requirement in
2004.  *See* Mass. Gen. Laws ch. 156D, § 7.42.

from pursuing the underlying cause of action in the future after making a proper demand. *Id.* at 267 ("In affirming we must, however, comment upon one phrase in the order of the district court granting the motion to dismiss, that it is 'without prejudice.' This must mean without prejudice as to the substantive cause of action. The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint.").

The irrelevance of *Kauffman* to the issue of wrongful refusal was highlighted in *Galef v. Alexander*, 615 F. 2d 51, 59-60 (2d Cir. 1980), where the Court stated, in pertinent part:

> The decision as to whether a demand is excusable, however, does not necessarily answer the question presented here, of whether a resolution by directors to seek summary termination of the suit should be honored . . . A determination that directors are not so interested in the underlying transaction as to excuse demand on them does not mean that they are so disinterested as to enable them to eliminate the lawsuit. The rationale of the cases holding that demand must be made even if the directors have been or may be made defendants, is not that the directors can preclude suit despite being defendants, but rather that they might cause the corporation to pursue the suit despite being defendants. *See In re Kauffman Mutual Fund Actions, supra*, 479 F.2d at 265 (additional citations omitted).[4]

*See also Evangelist v. Fidelity Management & Research Co.*, 554 F.Supp. 87, 90 (D. Mass. 1982) ("But the rationale of those cases [*Kauffman* and other demand futility cases] is not that the directors are able to preclude suit entirely by refusing a demand. Rather, they rest on the proposition that directors, despite being defendants, are still capable of making an honest decision about whether to sue on the corporation's behalf.  Failure to make demand only

---

[4] *Landy v. D'Alessandro*, 316 F. Supp. 2d 49 (D. Mass. 2004) and *Litt v. Wycoff*, No. 19083, 2003 WL 1794724, at *7 (Del. Ch. Mar. 28, 2003) (Motion at 16) also concern demand futility. In those cases, the courts were considering claims that the boards had approved illegal transactions in the past. *Landy*, 316 F. Supp. 2d at 61 (allegations that board had awarded executive compensation in violation of Plan of Reorganization); *Litt*, 2003 WL 1794724, at *1 (allegations of prior illegal lending activities, illegal bonus payments to officers, and illegal commission payments to officers and directors).  In contrast, here, plaintiff has alleged substantial particularized facts concerning ***ongoing*** securities law violations, which the board has refused to remedy.  *See* AC ¶¶  5, 70.

temporarily bars the shareholder's suit. Whether the directors correctly assessed the merits of the

corporate claim in refusing plaintiff's demand relates to plaintiff's standing to sue, not to

whether intracorporate remedies have been exhausted.") (citations omitted).

Defendants contend that conclusory allegations of illegal conduct cannot prevent the

dismissal of a complaint based upon a wrongful refusal of the demand.  Apart from the fact that

there is no precedent for this assertion (defendants' demand futility cases do not support it), it is

well established that the plaintiff does not have to *prove* his allegations of ongoing illegal

conduct in his complaint. *See, e.g., Miller*, 507 F.2d 763-64 ("[w]e have accepted plaintiffs'

allegation of a violation of 18 U.S.C. § 610  as a shorthand designation of the elements necessary

to establish a breach of that statute. This is consonant with the federal practice of notice pleading.

. . . At the appropriate time, plaintiffs will be required to produce evidence sufficient to establish

three distinct elements comprising a violation of 18 U.S.C. § 610") (citations omitted); *Gall*, 418

F. Supp. at 518 n.19 (noting that complaint in *Miller* was sustained because "issues had been

raised as to whether the defendant directors had breached 18 U.S.C. § 610"); *Gray,* 334 B.R. at

66 (sustaining derivative complaint because construing allegations in light most favorable to

plaintiff supported the inference that director-defendants had violated Massachusetts law by

authorizing stock repurchases and dividend payments when they knew that the company was

insolvent).

Here, plaintiff has met the "particularity" element of Fed R. Civ. P. 23.1(b)(3), because

the Amended Complaint explains that broker-dealers may not receive asset-based compensation,

¶¶ 20-34, explains how performance of the Distribution Agreement providing for such payments

involves participating in violations of the Advisers Act, ¶¶ 44-58, explains the duties that the

Trustees and Eaton Vance Distributors have under the ICA that directly pertain to the payments

at issue, ¶¶ 59-65, explains how the ICA requires that compliance with the ICA must trump any conflicting contractual obligations, ¶¶ 71-80, and otherwise provides particular detail demonstrating that the Trust and its shareholders are being harmed by improper use of Trust assets on an ongoing basis, and therefore a derivative action is appropriate. ¶¶ 66-70.

## II.   APPLICABLE FEDERAL LAW PREEMPTS ANY STATE LAW THAT WOULD OPERATE TO INSULATE ALLEGED VIOLATIONS FROM JUDICIAL REVIEW

The Trust's contention that state corporate governance laws prevent review by this Court of alleged violations of federal securities laws also implicates the Supremacy Clause.[5]  In *Burks v. Lasker*, 441 U.S. 471 (1979), the Supreme Court -- in a case that, like this one, was a mutual fund shareholder derivative action alleging violations of the ICA and the Advisers Act -- set forth a two-step inquiry to determine whether the mutual fund board has the power to terminate derivative litigation, consistent with the Supremacy Clause.  First, the court should "determine whether state law permitted [the mutual fund's] disinterested directors to terminate respondents' suit.  If so, the next inquiry should have been whether such a state rule was consistent with the policy of the ICA and [Adviser's Act]." *Id*. at 480.

According to the Supreme Court, the ICA and the Advisers Act "do not require that federal law displace state laws governing the power of directors unless the state laws permit action prohibited by the Acts, or unless 'their application would be inconsistent with the federal policy underlying the cause of action . . . .'" *Id.* at 479 (citing *Johnson v. Railway Express Agency*, 421 U.S. 454, 465 (1975)).  "Federal courts must be ever vigilant to insure that application of state law poses 'no significant threat to any identifiable [federal] policy or

---

[5] The United States Constitution and federal laws and treaties "shall be the supreme Law of the Land;" and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. Art. VI, Cl. 2.

interest.'" *Id.* (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966)).

The *Burks* opinion is controlling authority here, and essentially follows the established "conflict preemption" prong of Supremacy Clause jurisprudence. *See O'Neal v. Smithkline Beecham Corp.*, 551 F. Supp. 2d 993, 1002 (E.D. Cal. 2008) ("Conflict preemption can be either direct or indirect. Direct conflict, or 'impossibility preemption,' occurs where it is 'impossible for a private party to comply with both state and federal requirements,' indirect conflict, or 'obstacle preemption,' exists 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (quoting *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002) (internal quotations and citations omitted)). Regulations promulgated pursuant to federal statutory authority "have no less pre-emptive effect than federal statutes." *Fidelity Federal Savings and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

This Court does not need to reach the preemption issue here because, under the first step of the *Burks* test, the Court looks to Massachusetts law to determine if the business judgment rule applies to ongoing illegal conduct. Since it does not, as described above, the board lacks the authority to terminate the litigation, and therefore no conflict preemption analysis is necessary. *Even if* the second step of the *Burks* test were to be reached, it is clear that, under the standards for conflict preemption, this is a case of "direct conflict" because the business judgment rule, a creation of state law, would act to shield ongoing violations of the federal securities laws.

The significance of *Burks*, as aptly summarized by the district court in *SEC v. Keating*, 91-6785, 1992 U.S. Dist. LEXIS 14630, at *11 (C.D. Cal. July 24,1992), is that it is "impermissible to allow the business judgment rule, a creation of state law, to supersede the requirements, prohibitions, and policies of the federal securities laws":

> First, the business judgment rule usually applies to actions (generally those brought by shareholders) to enjoin corporate acts or to seek damages from

11

directors based on the actions taken by the directors.  Second, it would be impermissible to allow the business judgment rule, a creation of state law, to supersede the requirements, prohibitions, and policies of the federal securities laws.  A state business judgement rule cannot permit action otherwise prohibited by the federal securities laws.  *Burks v. Lasker,* 441 U.S. 471, 479, 99 S. Ct. 1831, 1838, 60 L. Ed. 2d. 404 (1979); *Galef v. Alexander,* 615 F.2d 51, 62 (2d Cir. 1980).  State law cannot be used to supplement the federal securities law if the state law would be inconsistent with the principles underlying federal law. *Kamen v. Kemper Financial Services, Inc.,* 111 S. Ct. 1711, 1717, 114 L. Ed. 2d 152 (1991).  In sum, if Ligget's conduct was in violation of the federal securities laws, the business judgment rule could not be allowed to apply; if his conduct did not violate those laws, the defense is superfluous.

*Id*. at *11-12.

Accordingly, the business judgment rule is inapplicable here, and, even assuming it were applicable, it is preempted.

## III.    PLAINTIFF'S STATE LAW CLAIMS ARE ADEQUATELY PLEADED

### A.    Plaintiff Adequately Alleges a Claim for Breach of Fiduciary Duty

#### 1.    Rule 9(b) Does Not Apply Because Plaintiff Does Not Allege Fraud

The Trustees argue that Rule 9(b) applies to plaintiff's breach of fiduciary duty claim. Motion at 17-18.  Defendants are wrong.  As this Court has held, a plaintiff alleging a breach of fiduciary duty claim generally need only comply with Rule 8(a) of the Federal Rules of Civil Procedure.  *Gerber v. Bowditch*, 05-10782, 2006 WL 1284232, at *13 (D. Mass. May 8, 2006) (Woodlock, J.).  Rule 9(b) applies to a breach of fiduciary duty claim only if the claim is grounded in fraud.  *See North Am. Catholic Educational Programming Foundation Inc. v. Cardinale,* 567 F.3d 8, 14 (1st Cir. 2009) (Rule 9(b) covers claims where the core allegations effectively charge fraud)*; Gerber,* 2006 WL 1284232, at *13.

Here, the Trustees do not claim, nor could they, that plaintiff's breach of fiduciary duty is based on fraud.  Rather, the Trustees argue that Rule 9(b) applies because plaintiff alleged an intentional breach of fiduciary duty.  Motion at 17-18.  However, the only cases on which they

rely for this proposition do not so hold and instead are consistent with this Court's ruling in *Gerber* that breach of fiduciary duty claims are subject to Rule 8(a), and the First Circuit's ruling in *Cardinale* that Rule 9(b) only applies if fraud is alleged. For example, the Trustees rely on *In re Stratus Computer, Inc Sec. Litig.*, 89-2075, 1992 WL 73555 (D. Mass. Mar. 27, 1992), and *Sachs v. Sprague*, 401 F. Supp.2d 159 (D. Mass. 2005). Yet in *Stratus*, Rule 9(b) was applied not because of an alleged intentional breach of fiduciary duty, but because the breach of fiduciary duty "derives from conduct that is fraudulent." *Stratus,* 1992 WL 73555, at *8. Further, although the *Sachs* court did use the term "intentional breaches of fiduciary duties," it cites *Insanaka v. Spectrum Technologies USA Inc*., 131 F. Supp.2d 353 (N.D.N.Y. 2001), which holds that: "When a claim for breach of fiduciary duty is based primarily upon alleged *fraudulent conduct,* the heightened pleading requirements of Fed.R.Civ.P. 9(b) apply." *Id.* at 362 (emphasis added). Accordingly, the Trustees' cases support plaintiff's position here that Rule 9(b) does not apply because there are no allegations of fraud in the Amended Complaint.

> 2.      Plaintiff's Breach of Fiduciary Duty Claim Is Not a *Caremark* Claim

Although defendants contend that Rule 9(b) applies to plaintiff's breach of fiduciary duty claim, defendants do not assert that plaintiff failed to meet the particularity standards set forth in Rule 9(b). Rather, the Trustees argue that plaintiff is making a *Caremark,* or failure to monitor, claim, without pleading a "sustained or systematic failure" to exercise oversight. Motion at 18. Defendants once again miss the mark because plaintiff pled direct liability for the Trustees' own actions in approving the payments at issue, not a failure to detect wrongdoing by corporate personnel other than the Trustees.

In *Caremark,* the court states that it is *ignorance of the liability creating activities* that triggers the *Caremark* standard, which are certainly not the facts here.

> [A] claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation. . . . [O]nly sustained or systematic failure of the board to exercise oversight such as an utter failure to attempt to assure a reasonable information and reporting system exits (sic) will establish the lack of good faith that is a necessary condition for liability.

*In re Caremark In'l, Inc.Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996). *See also In re Abbotts Labs. Derivative S'holders Litig.*, 325 F.3d 795, 808-809 (7th Cir. 2003) (in *Caremark*, there was no evidence to indicate that the Caremark directors knew of the violations of law and the directors' liability was "predicated upon ignorance" of the "liability-creating activities which resulted in unconsidered failure to act.").

Here, the board was aware of the "liability-creating activities," *i.e.* the board was aware that it was deciding to make asset-based compensation payments to broker-dealers, and therefore, at all times, had the opportunity (indeed, the duty) to consider the compliance issues raised by those payments.  By contrast, in a *Caremark* claim, some low level employee will have engaged in misconduct and the derivative shareholder seeks to hold the board liable for failing to discover that the conduct that created liability for the corporation had occurred.

Here, the payments at issue are made out of Trust assets, which implicates SEC Rule 12b-1, and are being made to firms that sell Trust shares, which implicates the Securities Exchange Act, and are of a form of ongoing compensation that implicates the Advisers Act, and the Trust's compliance with all of these laws and regulations is the direct and primary responsibility of the board.  AC ¶¶ 59-65; *see also* 17 C.F.R. § 270.12b-1(b)(3) (board responsibilities to be aware of the uses of Rule 12b-1 payments out of Trust assets).

As such, the Amended Complaint alleges a direct breach of fiduciary duty claim against the Trustees arising from their own misconduct in using Trust assets improperly, which resulted

in harm to the shareholders of the Trust.[6]  *See* AC ¶¶ 4, 5, 61.   *See also In re SFBC Int'l, Inc.*

*Sec. & Derivative Litig.*, 495 F. Supp. 2d 477, 484 (D.N.J. 2007) (noting that "[u]nlike other

theories of director liability," a *Caremark* claim alleges "loss to the corporation resulting from an

unconsidered failure of the board to act"); *Abbott Lab*s, 325 F.3d at 806 (facts are "exactly the

opposite of *Caremark*; members of the board in Abbott were aware of the problems."); *White v.*

*Panic*, 793 A.2d 356, 363 (Del. Ch. 2000) (where gravamen of the complaint alleged that

defendant directors were "liable for their affirmative and intentional decisions allegedly reached

in bad faith or with a reckless disregard of their fiduciary duties," then plaintiff did not plead a

*Caremark* claim).

Because the Trustees seek dismissal of plaintiff's breach of fiduciary duty claim solely on

the grounds that it is an inadequately pleaded *Caremark* claim, a contention that has no merit, the

Trustees' request to dismiss plaintiff's breach of fiduciary duty claim should be denied.[7]

### B.    Plaintiff Adequately Alleges a Claim for Corporate Waste

The Trustees argue that plaintiff has failed to adequately allege waste.  Motion at 19-20.

However, plaintiff has met his pleading burden for this claim.  "[A]lthough there is a stringent

standard to *prove* a claim of corporate waste at trial, [plaintiff] need only state a *plausible* claim

of corporate waste to survive a motion to dismiss under *Iqbal*."  *Swingless Golf Club Corp. v.*

*Taylor,* 679 F. Supp. 2d 1060, 1071 (N.D. Cal. 2009) (emphasis in original).  *See also Stern v.*

*General Electric C*o., 86- 4055 (MJL), 1992 WL 8195, at * 5 (S.D.N.Y. Jan. 14, 1992) (court

---

[6] The Trustees concede as much in their Preliminary Statement in which they assert that plaintiff alleges "conscious wrongdoing by the Independent Trustees in permitting the allegedly unlawful payments."  Motion. at 2.

[7] As plaintiff does not allege a *Caremark* claim, the cases cited by the Trustees are inapposite. *See, e.g., Desimone,* 924 A.2d at 939 (plaintiff's complaint alleged a *Caremark* claim based on defendant directors' "fail[ure] to adequately monitor" its finance reporting system)*; Canadian Commer. Workers Indus. Pension Plan v. Alden*, No.1184-N, 2006 WL 456786, at * 6-8 (Del. Ch. Feb. 22, 2006) (plaintiff specifically alleged *Caremark* claim in the complaint).

acknowledged that the standard of proving a waste claim is "clearly very high," but held complaint's allegations sufficiently pled a waste claim, and observed that "plaintiff's claim must succeed or fail after a thorough discovery process and elaboration of proof.").  As shown below, plaintiff's claim for corporate waste is plausible and properly pled.

"The essence of a claim of waste of corporate assets is the diversion of corporate assets for improper or unnecessary purposes."  *Hendersen v. Axiam, Inc.*, No. 962572D, 1999 WL 33587312, *53 (Mass. Super. Ct. June 22, 1999) (citing *Michelson v. Duncan,* 407 A.2d 211, 217 (Del. 1979)).  Here, plaintiff has pled such a diversion of assets, *i.e.* use of Trust assets for unlawful compensation payments to broker-dealers.  AC ¶¶ 4, 5, 61, 65.[8]

The Trustees also contend that plaintiff has failed to allege facts that show that the Trustees made an "egregious or irrational decision" that "could not have been in the Trust's best interest."  Motion at 19-20.  They cite *Blake v. Smith*, No. 0300003 B, 2006 WL 4114305 (Mass. Super. Dec. 11, 2006), in which an exculpatory clause barred plaintiff's waste claim because the claim as pled was too vague and lacked allegations exceeding the bounds of the clause in that plaintiff did not plead bad faith.  *See id.*  at *10 ("Because the alleged conduct by the outside directors in the claim for corporate waste amounts to ordinary inattention and/or inadvertence, which does not exceed gross negligence, the exculpatory provision bars the [waste claim].").  In this instance, plaintiff alleges that the Trustees acted in bad faith because they did not properly exercise their responsibilities for compliance, and refused to seek a judicial declaration on the disputed legal issue.  *See* AC ¶¶ 70, 90.

---

[8] The Trustees rely on *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000), in which the court stated that no waste exists if "there is any substantial consideration received by the corporation."  *Id.* at 263. Plaintiff alleges that the Trust and its shareholders were deprived of the advisory accounts for which they paid, and were legally entitled to receive, which is a lack of consideration, given that a brokerage account is not a comparable service.  AC ¶ 25, 65.

Finally, the Trustees assert that "significant harm" would "likely result to the Trust by pursuing litigation" because, if the payments are found to be unlawful, then compliance with the Advisers Act might be a burden on the broker-dealers.  Motion at 20 (citing Response Letter at 7).  However, this is just acknowledging that a threshold legal issue is in dispute, and is not relevant to the adequacy of the waste claim.  *See In re Sabine, Inc.* No. 05-1019, 2006 WL 1045712, at *9 (Bankr. D. Mass. Feb. 27, 2006) (defendant's argument why waste claim should be dismissed "is a legal one and inappropriate for motion to dismiss").

Therefore, plaintiff's claim for corporate waste, as with other waste claims based on the payment of improper fees, should be upheld at the motion to dismiss stage.  *See, e.g., In re Teu Holdings, Inc.,* 287 B.R. 26, 35 (Bankr.D.Del. 2002) (when viewed in the light most favorable to plaintiff, allegation that payment of at least $2 million in fees and expenses for failed services constituted waste were sufficient to survive a motion to dismiss); *Independent Cellular Telephone, Inc. v. Barker,* No. 15171, 1997 WL 153816, at * 6-7 (Del. Ch. Mar. 21, 1997) (although allegation that "[t]he payment of such fee is not justified by any service provided" was "inartfully worded," the complaint was "sufficiently particularized, and can reasonably be regarded as alleging waste").

## CONCLUSION

Based on the foregoing, the Motion should be denied in its entirety.

DATED:  August 20, 2010                              MILBERG LLP


                                          _____/s/  Janine L. Pollack___

                                          Michael C. Spencer
                                          mspencer@milberg.com
                                          Janine L. Pollack
                                          jpollack@milberg.com
                                          One Pennsylvania Plaza

New York NY  10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229


Glen DeValerio
gdevalerio@bermandevalerio.com
BERMAN DEVALERIO
One Liberty Square
Boston, MA 02109
Tel:  (617) 542-8300
Fax: (617) 542-1194

Lee A. Weiss
lweiss@bwgfirm.com
BROWNE WOODS GEORGE LLP
1 Liberty Plaza, Suite 2329
New York, NY  10006
Tel:  (212) 354-4901
Fax: (212) 354-4904


Ronald A. Uitz
ron877@yahoo.com
UITZ & ASSOCIATES
1629 K Street, N.W. Suite 300
Washington, D.C.  20006
Telephone:  (202) 296-5280
Facsimile:   (202) 521-0619


Richard J. Lantinberg, Esq.
RLantinberg@whmlegal.com
WILNER HARTLEY & METCALF, P.A.
444 E. Duval Street
Jacksonville, FL  32202
Telephone: (904) 446-9817
Facsimile: (904) 446-9825

***Attorneys for Plaintiff***

CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2010 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Ryan M. Tosi
ryan.tosi@klgates.com

Charles L. Eisen *(admitted pro hac vice)*
charles.eisen @klgates.com *(admitted pro hac vice)*

Jeffrey B. Maletta
Jeffrey.maletta@klgates.com

   /s/   Janine L. Pollack   
Janine L. Pollack