# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY WIENER, derivatively on behalf of EATON VANCE MUNICIPALS TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>EATON VANCE DISTRIBUTORS, INC., BENJAMIN C. ESTY, ALLEN R. FREEDMAN, WILLIAM H. PARK, RONALD A. PEARLMAN, HELEN FRAME PETERS, HEIDI L. STEIGER, LYNN A. STOUT, RALPH F. VERNI, and THOMAS FAUST,<br><br>    Defendants,<br><br>and<br><br>EATON VANCE MUNICIPALS TRUST,<br><br>    Nominal Defendant. | Civil Action No. 10-10515-DPW<br><br>**Leave To File Granted on July 13, 2010** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
EATON VANCE DISTRIBUTORS, INC.'S AND THOMAS E. FAUST JR.'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Ryan M. Tosi (BBO #661080)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
Tel:  (617) 261-3100
Fax:  (617) 261-3175
ryan.tosi@klgates.com

Charles L. Eisen (admitted *pro hac vice*)
Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (admitted *pro hac vice*)
**K&L GATES LLP**
1601 K Street, NW
Washington, DC  20006-1600
Tel:  (202) 778-9000
Fax:  (202) 778-9100
charles.eisen@klgates.com
jeffrey.maletta@klgates.com
nicholas.terris@klgates.com

## **TABLE OF CONTENTS**

                                                    **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ................................................................................................................................ 2

I.      The Payments To EVD Under The Distribution Plans Do Not Violate The Advisers Act ................................................................................................................ 2

I.A.    The SEC's Proposal Concerning Mutual Fund Distribution ................................................ 4

II.     The Individual Counts Against EVD Fail To State A Claim ............................................... 7

        A.      The Amended Complaint Fails to State a Claim Under ICA § 47(b) .................... 7

        B.      The Amended Complaint Fails to State a Claim for "Contract Voiding" .............. 10

        C.      The Amended Complaint Fails to State a Claim for Breach of Contract ............... 11

III.    The Claims For Breach Of Fiduciary Duty And Waste Against Mr. Faust Should Be Dismissed .......................................................................................................... 12

CONCLUSION ........................................................................................................................... 12

## TABLE OF AUTHORITIES

Page

**Federal Cases**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ............................................................................................................7

*Burks v. Lasker,*
    441 U.S. 471 (1979) .......................................................................................................9, 11

*In re Charles Schwab Corp. Sec. Litig.,*
    257 F.R.D. 534 (N.D. Cal. 2009) ......................................................................................10

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ............................................................................................................4

*Financial Planning Association v. SEC,*
    482 F.3d 481 (D.C. Cir. 2007) ............................................................................................2

*Fogel v. Chestnutt,*
    533 F.2d 731, 745 (2d Cir. 1975) ....................................................................................8, 9

*GFL Advantage Fund, Ltd. v. Colkitt,*
    272 F.3d 189 (3d Cir. 2001) ..............................................................................................10

*Gozlon-Peretz v. United States,*
    498 U.S. 395 (1991) ............................................................................................................3

*Green v. Fund Asset Management L.P.,*
    245 F.3d 214 (3d Cir. 2000) ..............................................................................................10

*Kaiser Steel Corp. v. Mullins,*
    455 U.S. 72 (1982) ..................................................................................................7, 10, 11

*Kamen v. Kemper,*
    500 U.S. 90 (1991) ..............................................................................................................8

*Kelly v. Kosuga,*
    358 U.S. 516 (1959) ..........................................................................................................10

*In re Mutual Funds Inv. Litig.,*
    384 F. Supp. 2d 873 (D. Md. 2005) ..................................................................................10

*Nat'l Cable & Telecomm. Assoc. v. Brand X Internet Servs.,*
    545 U.S. 967, 982-85 (2005) ..............................................................................................9

*Paul Arpin Van Lines, Inc. v. Universal Transportation Services, Inc.*,
    988 F.2d 288 (1st Cir. 1993) ................................................................................... 11

*Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*,
    678 F.2d 552 (5th Cir. 1982) ............................................................................ 9, 10

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ................................................................................................. 9

*Smith v. Franklin/Templeton Distr. Inc.*,
    2010 WL 2348644 (N.D. Cal. June 8, 2010) ......................................................... 9

*In re Servicesense.com v. Chase*,
    337 B.R. 434 (D. Mass. 2006) ............................................................................. 10

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979) ................................................................................................. 7


**State Cases**

*Frishman v. Maginn*,
    912 N.E.2d 468 (Mass. App. 2009) ..................................................................... 11


**Statutes**

Investment Company Act of 1940, Section 38(c), 15 U.S.C. § 80a-37(c) .................... 4

Investment Company Act of 1940, Section 47(b), 15 U.S.C. §80a-46(b) ..................... 8

Investment Advisers Act of 1940, Section 202(a)(11), 15 U.S.C. § 80b-2(a)(11) .......... 2


**Rules and Regulations**

Securities and Exchange Commission Rule 12b-1 ............................................... passim

Investment Company Act Rule 38a-1 ...................................................................... 7, 9

National Association of Securities Dealers Rule 2830 ................................................. 4

**Other**

Exchange Act Release No. 30897, 1992 WL 159735, 57 Fed. Reg. 30,985 (July 13,
    1992) ............................................................................................................................. 4

*Frank Russell Investment Management Co., SEC Corres.*, SEC No-Action Letter,
    1991 WL 176779 (May 21, 1991) .................................................................................. 3

*In re Carl L. Shipley*, Exchange Act Release No. 10870, 4 SEC Docket 476, 478, 1974
    WL 161761 (Jun. 21, 1974) .................................................................................... 7, 8, 9

Mutual Fund Distribution Fees; Confirmations (proposed rule), Release Nos. 33-9128,
    34-62544; File No. S7-15-10 (July 21, 2010)) ........................................................... passim

Defendants Eaton Vance Distributors, Inc. ("EVD") and Thomas E. Faust Jr. ("Mr. Faust") submit this Reply to Plaintiff's Opposition to their Motion to Dismiss (filed August 20, 2010, dckt. no. 32) (hereinafter the "Opposition" or "Opp."). EVD and Mr. Faust's opening Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint (filed July 15, 2010, dckt. no. 30) will be referred to hereinafter as the "Memorandum" or "Mem."

## PRELIMINARY STATEMENT

The Opposition adds little of substance to the Amended Complaint's lengthy legal arguments. It also fails to address in any meaningful way the recent proposal of the United States Securities and Exchange Commission ("SEC") to overhaul mutual fund distribution arrangements, and distorts the summary of existing law and requests for comments contained therein.[1] As detailed below, among other things, the SEC has proposed to "grandfather" existing Rule 12b-1 plans for five years and has reconfirmed yet again the validity of existing distribution practices. In the SEC's words: "[u]nder our rule proposals, funds could continue to pay broker-dealers 12b-1 fees at previously approved levels for grandfathered shares." The SEC proposal thus underscores that the rulemaking process, rather than a shareholder derivative lawsuit, is the appropriate procedure for plaintiff to vent his broad policy disagreements with the mutual fund distribution system.

Plaintiff also fails to resuscitate any of his five purported causes of action from defendants' additional grounds for dismissal. Plaintiff's grievance simply cannot be shoehorned into § 47(b) of the Investment Company Act of 1940, as amended ("ICA"). And, while plaintiff correctly states that federal law does not completely occupy the field of securities regulation, he fails to rebut defendants' specific argument: neither federal nor state law allows for additional

---

[1] *See* Mutual Fund Distribution Fees; Confirmations (proposed rule), Release Nos. 33-9128, 34-62544; IC-29367; File No. S7-15-10 (July 21, 2010) (hereinafter, the "12b-1 Release").

and potentially inconsistent contract voiding remedies predicated upon alleged violations of the ICA.

# ARGUMENT

I. **THE PAYMENTS TO EVD UNDER THE DISTRIBUTION PLANS DO NOT VIOLATE THE ADVISERS ACT**

Plaintiff extensively discusses his view of § 202(a)(11) of the Investment Advisers Act of 1940, as amended ("Advisers Act"), *see* Opp. 9-11, and the history of an unrelated SEC rule creating an exemption from the Advisers Act ultimately invalidated in *Financial Planning Ass'n v. SEC*, 482 F.3d 481 (D.C. Cir. 2007). *See* Opp. 5-7. However, plaintiff's discourse fails to refute defendants' arguments for dismissal.

First, as noted in the Memorandum (at pp. 7-8), plaintiff never alleges that EVD, which receives the payments under the Distribution Agreement under attack, is giving any investment advice to anyone. Plaintiff asserts in response that broker-dealers paid by EVD pursuant to separate selling agreements (which are not at issue in this case) do furnish investment advice. Opp. 2-4. But, while plaintiff is free to sue his broker, this provides no basis for a finding that the Distribution Agreement that plaintiff seeks to attack in this lawsuit is illegal.

Second, plaintiff offers no cogent response to defendants' argument and authorities demonstrating that 12b-1 fees are a form of sales compensation that the SEC has specifically approved for payment to broker-dealers. *See* Mem. 8-9.

Plaintiff suggests that it is immaterial whether a customer pays a broker a percentage of all assets in the customer's brokerage account or a mutual fund pays a broker 12b-1 fees for selling fund shares based on a percentage of the value of the fund shares. *See* Opp. 2-3. To the contrary, the source and nature of the payment make all the difference – particularly given that 12b-1 fees vary from fund to fund. If a mutual fund or other issuer pays an intermediary to

distribute securities, it creates a potential conflict of interest between that intermediary and investors. It is precisely those divided loyalties or conflicts of interest faced by the intermediary and its representatives that drive much of broker-dealer regulation. *Cf. Frank Russell Investment Management Co., SEC Corres.*, SEC No-Action Letter, 1991 WL 176779 (May 21, 1991) (contractual arrangements between sponsor of Frank Russell mutual funds and investment advisers in which advisers would be paid to provide investment advice only with respect to client assets invested in Frank Russell funds "raised serious concerns" given that advisers did not register as broker-dealers in accordance with § 15(b) of the Securities Exchange Act of 1934).

Plaintiff observes that certain 12b-1 fees – such as the .75% distribution fee assessed on Class C shares plaintiff owns – are potentially of "unlimited duration[]." Opp. 12. *See also* Opp. 2, 5, 7, 13. Plaintiff further notes that 12b-1 fees in some cases may be paid to a broker who did not make the initial sale of fund shares but to whom the investor transferred his account. *See* Opp. 13. Irrespective of whether asset based sales loads are financed over a potentially indefinite period or split with another broker, however, the fundamental point remains: 12b-1 fees are sales compensation tied to transactions in the shares of a particular mutual fund. Moreover, the SEC has observed that class C shares generally are sold to those who anticipate being short-term fund investors – not those who intend to hold their shares indefinitely.[2]

Even assuming contrary to the foregoing that plaintiff's arguments were persuasive as an *a priori* matter, the Opposition fails to address the core point of defendants' motion: the SEC has approved the precise practice of paying 12b-1 fees to broker-dealers in the manner at issue in this lawsuit. *Cf. Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) ("A specific provision

---

[2] *See* 12b-1 Release at 201 ("Class C shares …are generally described in fund prospectuses as being suitable for short-term investments…. [W]e believe they generally would not be held long-term.").

3

controls one of more general application."). There is no basis to overturn the SEC-approved regulatory scheme in light of the deference due the agency's decisions. *See generally Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Indeed, the Opposition indicates that plaintiff does not even intend to try. *See* Opp. 19 ("Rule 12b-1 is not going to be invalidated by this lawsuit").

Plaintiff nonetheless states that defendants "never make any showing that there is any conflict between Rule 12b-1 and the Advisers Act." Opp. 19. But plaintiff improperly focuses on only one part of the regulatory scheme. The SEC has specifically approved NASD Rule 2830 as consistent with the mandate of ICA § 22(b) to "prohibit excessive sales loads" while ensuring that "broker-dealers … receive reasonable compensation." Exchange Act Release No. 30897, 1992 WL 159735, 57 Fed. Reg. 30,985, 30,989 (July 13, 1992). Thus, there is a clear conflict between plaintiff's erroneous interpretation of the Advisers Act and the "order[s] of the [SEC]" relating to mutual fund distribution. 15 U.S.C. § 80a-37(c).

**I.A.    THE SEC'S PROPOSAL CONCERNING MUTUAL FUND DISTRIBUTION**

As plaintiff acknowledges, the SEC recently issued a comprehensive proposal to overhaul 12b-1 fees. The SEC's proposal eliminates any scintilla of support for this lawsuit.

The 12b-1 Release proposes to modify the current mutual fund distribution regime in a number of respects.[3] Two elements of the 12b-1 Release are highly significant here. First, the Release proposes to "grandfather" existing Rule 12b-1 plans for five years on existing and certain new shares. *See* Rule 12b-1 Release at 123. Second, the 12b-1 Release confirms key points supporting defendants' motion to dismiss. *See, e.g.,* Rule 12b-1 Release at 133-40, 266.

---

[3]    *See* SEC Proposes Reform of Rule 12b-1, Mutual Fund Distribution Payment Framework (article from K&L Gates web site dated July 30, 2010, attached as Ex. 6 to Declaration of Janine Pollack, filed with plaintiff's Opposition).

4

The 12b-1 Release repeatedly reiterates that 12b-1 fees are a substitute for a traditional front-end sales load and/or ensure that investors receive post-sale services from their brokers. *See, e.g.*, 12b-1 Release at 37 & n.141 ("We acknowledged … at least implicitly, when we approved the NASD sales charge rule amendments in 1992 … that … asset-based sales charges[] function[] like a sales load that is paid over time and thus should be subject to the requirements and limitations that apply to traditional sales loads."); 12b-1 Release at 29 n.108 ("Rule 12b-1 fees are now used primarily to reward brokers for sales of adviser mutual fund shares.") (citation and internal quotation marks omitted); 12b-1 Release at 170-71 (the "continuing shareholder account services encompassed by the NASD service fee" are among the "legitimate distribution related activit[ies]" that would continue to be authorized).[4]

The 12b-1 Release also makes plain that the SEC does not intend to disturb the established practice of paying 12b-1 fees to broker-dealers and proposes evolutionary changes largely predicated on the existing regulatory structure. 12b-1 Release at 126 ("[o]ur proposals would largely preserve existing distribution arrangements"); 12b-1 Release at 51 ("[w]e view our proposal in many respects as the further development of the NASD sales charge rule, which was intended to bring total 12b-1 fees into 'approximate economic equivalency' with traditional sales loads"); 12b-1 Release at 44 (proposed new rule would use the existing NASD limit on service

---

[4] *See also* 12b-1 Release at 7-8 n. 14 ("FINRA rules do not apply directly to mutual funds, but to registered broker-dealers that are FINRA members…. Most funds therefore structure their sales loads to meet FINRA rules in order for their shares to be distributed and sold by registered broker-dealers in the United States."); 12b-1 Release at 1 (new rule would preserve funds' ability "to provide investors with alternatives for paying sales charges"); 12b-1 Release at 7, 66 (similar); 12b-1 Release at 18-19 (in 1988 SEC considered but rejected idea of prohibiting 12b-1 fees; ability to defer distribution costs benefited investors); 12b-1 Release at 171 (proposal "would benefit investors by permitting funds to continue to pay for … follow-up services provided to investors by brokers and other intermediaries"); 12b-1 Release at 26 ("A significant use of 12b-1 fees today is for what is typically characterized as 'services' provided to investors after the sale by broker-dealers and other intermediaries who sell the fund."); 12b-1 Release at 9 (few funds "market[] their shares directly to investors without the assistance of a retail broker.").

fees, which the SEC approved "as an appropriate exercise of the NASD's congressional mandate to prevent excessive sales charges on mutual fund shares").[5]

Indeed, notwithstanding that the proposed sales and service fees are "asset based" fees in the broad sense, the 12b-1 Release indicates that broker-dealers are clearly appropriate recipients of such fees. *See, e.g.,* 12b-1 Release at 6 n.9 ("Although the use of the term 'intermediary' in this Release is not limited to registered broker-dealers, receipt of the fees addressed in this Release may, depending on the services provided, require the recipient to register as a broker-dealer or rely on an exception or exemption from broker-dealer registration."); 12b-1 Release at 47 n.168 ("As a form of deferred sales load, all payments of ongoing sales charges to intermediaries would constitute transaction-based compensation. Intermediaries receiving those payments thus would need to register as broker-dealers under section 15 of the Exchange Act unless they can avail themselves of an exception or exemption from registration. Marketing and service fees paid to an intermediary may similarly require the intermediary to register under the Exchange Act.").[6]

In short, while plaintiff correctly states that the 12b-1 Release refers to this litigation, *see* Opp. 8; 12b-1 Release at 124-25, he is wrong to infer that the SEC disapproves of the existing regulatory structure. To the contrary, the 12b-1 Release reaffirms the validity of the very industry practices plaintiff seeks to attack in this case.

---

[5] *See also* 12b-1 Release at 56 (use of existing NASD rules "may minimize operational burdens of the amendment because funds, their underwriters, and broker-dealers are already familiar with [the rules] and have structured their systems accordingly.") (footnote omitted); 12b-1 Release at 200-01 (predicting that compliance with proposed requirements "with respect to class B shares would result in, at most, a minor reduction in compensation to broker-dealers).

[6] *See also* 12b-1 Release at 203 & n.507 (most recipients of 12b-1 fees that would be affected by the SEC's proposal are broker-dealers or banks); 12b-1 Release at 40 (regulation that provides banks exemptions from broker-dealer registration specifically references 12b-1 fees).

## II. THE INDIVIDUAL COUNTS AGAINST EVD FAIL TO STATE A CLAIM

### A. The Amended Complaint Fails to State a Claim Under ICA § 47(b)

1. **No implied right of action under Section 36(a) or Rule 38a-1**. Citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18 (1979), which construed the contract voiding provision of § 215 of the Advisers Act, plaintiff contends that it is not a necessary condition of a § 47(b) claim that a private right of action be available for the substantive provision of the ICA violated by the contract. Opp. 16-17. Plaintiff asserts that defendant's implied right of action analysis of § 47(b) is inconsistent with *Transamerica*. However, while federal courts once routinely found implied private causes of action in the Securities Exchange Act of 1934 and other federal securities laws, the Supreme Court has since "abandoned" that approach "even when interpreting the same Securities Exchange Act of 1934." *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). The Court should not extend older decisions involving other statutes to recognize new private rights. *See* Mem. 11. Defendants' view of § 47(b) would not render it a "nullity." Opp. 17. The provision still could be used defensively. *See Transamerica*, 444 U.S. at 18; *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 81 n.7 (1982).

2. **No substantive provision of the ICA alleged to be violated.** More straightforwardly, plaintiff has failed to allege a violation of a substantive provision of the ICA, which as plaintiff acknowledges is necessary to sustain a § 47(b) claim. Plaintiff's continued attempts to substitute an alleged violation of the Advisers Act for this requirement fail.

With respect to § 36(a), plaintiff asserts that "defendants' authority only holds that the SEC must, as stated in the statute, enforce [§ 36(a)] in federal district court rather than in an administrative proceeding." Opp. 15. But this simply ignores the language and holding of *In re Carl L. Shipley*, Exchange Act Release No. 10870, 4 SEC Docket 476, 478, 1974 WL 161761

(Jun. 21, 1974): "Neither before the [1970] amendment nor afterwards, does § 36 in terms make anything unlawful." *Id.,* at *3. *See also* Mem. 11-12.

Next, while acknowledging that § 36(a) "speaks only of the SEC's authority to file civil actions for breach of fiduciary duty," plaintiff insists that § 36(a) "'implicitly established a federal standard of fiduciary duty.'" Opp. 14-15 n.25, *quoting Fogel v. Chestnutt*, 533 F.2d 731, 745 (2d Cir. 1975). This is incorrect. A conclusion that § 36(a) implicitly codifies a general fiduciary duty would federalize broad swaths of corporate law and is thus contrary to the Supreme Court's recognition that corporations "are creatures of state law" and that "nothing in the limited regulatory objectives of the ICA. . . evidenced a congressional intent that federal courts fashion an entire body of federal corporate law out of whole cloth." *Kamen v. Kemper*, 500 U.S. 90, 99 (1991) (citation and internal quotation marks omitted). Plaintiff's "implicit codification" contention is also irrelevant because violation of any supposed "implicit[]… federal standard" is not a violation "of [the ICA], or of any rule, regulation, or order thereunder." 15 U.S.C. § 80a-46(b), *i.e.*, a violation of the text of the statute, rules, or an implementing order.

Plaintiff's additional argument that "the SEC could not enforce a duty that does not exist," Opp. 14-15 n.25, is a red herring. Section 36(a) gives the SEC authority to punish violations of other substantive sections of the ICA or of state law that rise to the level of a breach of fiduciary duty involving personal misconduct. *In re Carl L. Shipley*, Exchange Act Release No. 10870, 4 SEC Docket 476, 478, 1974 WL 161761, at *4 (Jun. 21, 1974) ("Consequently, for example, in an administrative proceeding where we had found willful violations of some other provisions of the Act, we could, on the issue of what sanction was appropriate, consider and determine whether or not the respondent had committed a breach of trust involving personal

8

misconduct within the meaning of Section 36."). It is meritless to argue that § 36(a) itself must be the source of the relevant fiduciary duty.[7]

Plaintiff similarly fails to coherently explain why ICA Rule 38a-1 is relevant to this case. *See* Mem. 12. It is true that Rule 38a-1 requires the Trustees "to adopt written compliance programs for the Trust, and to review and approve the compliance programs," Opp. 15, of EVD and certain other service providers. But of course, the rule imposes no obligation on EVD and no obligation on the Trustees to approve the compliance procedures *of the broker-dealers* who are alleged to have improperly failed to register under the Advisers Act. *See Smith v. Franklin/Templeton Distr. Inc.*, 2010 WL 2348644, at *7- 8 (N.D. Cal. June 8, 2010). Even setting this aside, Rule 38a-1 does not and could not compel the Trustees to seek to void a contract, reform a contract, or institute litigation. Such decisions are a matter for the Trustees' business judgment. *See generally Burks v. Lasker*, 441 U.S. 471 (1979). Once again, plaintiff is attempting to create duties that do not exist under the ICA in his attempt to demonstrate the requisite predicate violation.

3. **At most, plaintiff has alleged unlawful transactions by broker-dealers pursuant to a lawful contract.** Plaintiff's reliance on *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 678 F.2d 552, 560 (5th Cir. 1982), for the proposition that § 47(b) should not be limited to voiding contracts "by which persons have agreed in express terms to violate the Act," Opp. 18, is unavailing. Even accepting this *arguendo*, the supposed violation of the ICA by broker-dealers who are not parties to this lawsuit is collateral to (rather than

---

[7] To the extent that the Second Circuit's discussion in *Fogel* is inconsistent with the SEC's authoritative view of § 36(a) rendered in an adjudication, the SEC's view in *Shipley* controls. *See, e.g., Nat'l Cable & Telecomm. Assoc. v. Brand X Internet Servs.*, 545 U.S. 967, 982-85 (2005); *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947).

9

inseparable from) the performance of the Distribution Agreement. It thus cannot support plaintiff's § 47(b) claim. *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 873, 881 (D. Md. 2005) (rejecting similar argument based on *Regional Properties*); *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 200-02 (3d Cir. 2001) (same); *In re Servicesense.com v. Chase*, 337 B.R. 434, 440-41 (D. Mass. 2006) (same).

4. **Defendants Acted in Good Faith.** Especially given the recent 12b-1 Release, it is plain that plaintiff may not pursue this lawsuit in light of defendants' good faith conformity with the existing regulatory scheme. *See* Mem. 13 (discussing ICA § 38(c)).

B. **The Amended Complaint Fails to State a Claim for "Contract Voiding"**

Defendants do not argue that the ICA broadly preempts all state law claims that may impact investment companies or that overlap with the remedies provided by the federal securities laws. *See* Opp. 19. Defendants' narrower contention is that, where as here, plaintiff seeks a contract voiding remedy for a violation of a federal statute, the Supreme Court has made clear that federal law controls. *See Kelly v. Kosuga*, 358 U.S. 516, 519 (1959) ("the effect of illegality under a federal statute is a matter of federal law … even in diversity actions in the federal courts after [*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).]").[8] *See also* Mem. 14 & n.9.

The additional federal cases plaintiff cites, Opp. 19, are fully consistent with defendants' preemption analysis, and the issue of possible inconsistency with federal law apparently was not raised in the state court case. Indeed, the extensive discussion of the appropriate remedy for illegality in *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 81-82 (1982) confirms defendants'

---

[8] Thus, *Green v. Fund Asset Management L.P.*, 245 F.3d 214 (3d Cir. 2001), and *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), are inapposite. *Green* simply held that § 36(b) of the ICA did not preempt a traditional state law action for breach of fiduciary duty and deceit. The portion of *Schwab* plaintiff cites discusses whether, as a matter of California law, the "purpose of California's unfair business practices provision" was consistent with extending the statute to situations regulated by the ICA. *Id.* at 553. The court had no occasion to discuss *Kosuga*, contract voiding, or even federal preemption generally.

10

position that the issue is one of federal law.  *See Burks v. Lasker*, 441 U.S. 471, 486 (1979) ("we did not grant certiorari to decide a question of state law") (citation and internal quotation and other marks omitted).  Further, plaintiff's three additional cases merely stand for the proposition that courts should not "command[] unlawful conduct," *Kaiser,* 455 U.S. at 79, by specifically enforcing a contractual provision when doing so would make the "courts a party to the carrying out" of an illegal scheme.  *Kaiser,* 455 U.S. at 80 (citation and internal quotation marks omitted).[9]  Defendants do not ask the Court here to enforce the Fund's Distribution Agreement or to command any supposedly illegal conduct.  And plaintiff's cases do not address the impact of a statute such as the ICA, which (particularly in §§ 38(c) and 47(b)) spells out when contracts should or should not be voided.

### C. The Amended Complaint Fails to State a Claim for Breach of Contract

Plaintiff apparently concedes that Count III of the Amended Complaint is subject to the same preemption analysis as the state law contract voiding claim in Count II.  *See* Mem. 16.

Plaintiff also fails to respond to defendants' arguments demonstrating that the breach of warranty claim in Count III must be dismissed for two independent reasons: plaintiff has failed to allege facts indicating either that EVD: (1) violated any securities laws relating to the sale of securities or (2) did not use its best efforts to conform to the law.  *See* Mem. 16.

---

[9]  *See also Paul Arpin Van Lines, Inc. v. Universal Transportation Services, Inc.,* 988 F.2d 288, 290-91 (1st Cir. 1993) (affirming dismissal of suit seeking to enforce contract by broker not properly licensed by the Interstate Commerce Commission); *Frishman v. Maginn,* 912 N.E.2d 468, 476-80 (Mass. App. 2009) (similarly affirming dismissal of suit to enforce illegal contract under Massachusetts state law principles; no discussion of the possibility that federal law might control).

11

### III.  **THE CLAIMS FOR BREACH OF FIDUCIARY DUTY AND WASTE AGAINST MR. FAUST SHOULD BE DISMISSED**

Consistent with the Amended Complaint, the Opposition does not distinguish Mr. Faust from the Trustees as a group.  Mr. Faust accordingly adopts the additional arguments for dismissal set forth in the Trustees' reply memorandum.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Trustees' reply memorandum, the Amended Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,

EATON VANCE DISTRIBUTORS, INC. and
THOMAS E. FAUST JR.

By their attorneys,

/s/ *Ryan M. Tosi*
Ryan M. Tosi (BBO #661080)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
Tel:  (617) 261-3100
Fax:  (617) 261-3175

Dated:  September 10, 2010

ryan.tosi@klgates.com

Charles L. Eisen (admitted *pro hac vice*)
Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (admitted *pro hac vice*)
**K&L GATES LLP**
1601 K Street, NW
Washington, DC  20006-1600
Tel:  (202) 778-9000
Fax:  (202) 778-9100
charles.eisen@klgates.com
jeffrey.maletta@klgates.com
nicholas.terris@klgates.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, if any, on this 10th day of September 2010.

                                                                         /s/ *Ryan M. Tosi*  
                                                                           Ryan M. Tosi