**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JEFFREY WIENER, derivatively on behalf of EATON VANCE MUNICIPALS TRUST,<br><br>   Plaintiff,<br><br>v.<br><br>EATON VANCE DISTRIBUTORS, INC., BENJAMIN C. ESTY, ALLEN R. FREEDMAN, WILLIAM H. PARK, RONALD A. PEARLMAN, HELEN FRAME PETERS, HEIDI L. STEIGER, LYNN A. STOUT, RALPH F. VERNI, and THOMAS FAUST,<br><br>   Defendants,<br><br>and<br><br>EATON VANCE MUNICIPALS TRUST,<br><br>   Nominal Defendant. | Civil Action No. 10-10515-DPW<br><br>**<u>Leave Granted on July 13, 2010</u>** |

**REPLY MEMORANDUM OF LAW OF THE INDEPENDENT TRUSTEE DEFENDANTS
AND NOMINAL DEFENDANT EATON VANCE MUNICIPALS TRUST IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

GOODWIN PROCTER LLP

Stacey B. Ardini (BBO #663161)
53 State Street
Boston, MA 02109
(617) 570-1000

Mark Holland (*pro hac vice*)
Mary K. Dulka (*pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

*Attorneys for the Independent Trustee
Defendants and the Trust*

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...............................................................................................................2

I.  THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY
    WITH FED. R. CIV. P. 23.1 AND MASSACHUSETTS LAW ...................................2

    A.    Plaintiff Cannot Evade His Burden By Alleging "Ongoing Illegal Activity" ........... 2

    B.    The ICA Does Not Preempt Application of the Massachusetts Demand
    Statute. ...................................................................................................... 6

II.  PLAINTIFF FAILS TO DEMONSTRATE THAT HIS AMENDED COMPLAINT STATES
     A CLAIM AGAINST THE INDEPENDENT TRUSTEES .........................................9

    A.    Plaintiff's Allegations of an Intentional Breach of Fiduciary Duty Fail to
    Satisfy the Applicable Pleading Standards ............................................... 9

    B.    Plaintiff Does Not Allege that the Trust Received No Benefit From the Rule
    12b-1 Payments, Thus Failing to Plead a Claim for Waste ..................... 10

CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)................................................................................................10

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ..........................................................................................11

*Burks v. Lasker*,
441 U.S. 471 (1979).............................................................................................. 1, 6-8

*Cal. Pub. Employees' Ret. Sys. v. Coulter*,
2002 WL 31888343 (Del. Ch. Dec. 18, 2002)...........................................................4

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996).................................................................................9, 10

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007).....................................................................................4

*Evangelist v. Fidelity Mgmt. & Research Co.*,
554 F. Supp. 87 (D. Mass. 1982) ................................................................................5

*Gantler v. Stephens*,
2008 WL 401124 (Del. Ch. Feb. 14, 2008) ...............................................................4

*Gerber v. Bowditch*,
2006 WL 1284232 (D. Mass. May 8, 2006) .......................................................... 9-10

*Gray v. Barnett (In re Dehon, Inc.)*,
334 B.R. 55 (Bankr. D. Mass. 2005) ..........................................................................5

*Grimes v. Donald*,
673 A.2d 1207 (Del. 1996) .........................................................................................4

*Guttman v. Huang*,
823 A.2d 492 (Del. Ch. 2003)......................................................................................4

*Halebian v. Berv*,
931 N.E.2d 986 (Mass. 2010) .......................................................................... *passim*

*Hendersen v. Axiam, Inc.*,
1999 WL 33587312 (Mass. Super. Ct. June 22, 1999)......................................... 10-11

LIBNY/4932664.1

*Independent Cellular Tel., Inc. v. Barker*,
  1997 WL 153816 (Del. Ch. Mar. 21, 1997)................................................................11

*Kahn ex rel. DeKalb Genetics Corp. v. Roberts*,
  679 A.2d 460 (Del. 1996) ...........................................................................................4

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991).......................................................................................................8

*Kamen v. Kemper Fin. Servs., Inc.*,
  939 F.2d 458 (7th Cir. 1991) .......................................................................................8

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004)......................................................................................4

*Miller v. American Tel. & Tel. Co.*,
  507 F.2d 759 (3d Cir. 1974).........................................................................................4

*N. Am. Catholic Educational Programming Foundation, Inc. v. Cardinale*,
  567 F.3d 8 (1st Cir. 2009)...........................................................................................10

*In re Sabine, Inc.*,
  2006 WL 1045712 (Bankr. D. Mass. Feb. 27, 2006)..................................................11

*Sachs v. Sprague*,
  401 F. Supp. 2d 159 (D. Mass. 2005) ........................................................................10

*SEC v. Keating*,
  1992 WL 207918 (C.D. Cal. Jul. 23, 1992)............................................................. 8-9

*Stern v. General Electric Co.*,
  1992 WL 8195 (S.D.N.Y. Jan. 14, 1992) ..................................................................11

*Swingless Golf Club Corp. v. Taylor*,
  679 F. Supp. 2d 1060 (N.D. Cal. 2009) ....................................................................11

*In re Teu Holdings, Inc.*,
  287 B.R. 26 (Bankr. D. Del. 2002) ............................................................................11

*In re Walt Disney Co. Deriv. Litig.*,
  2004 WL 2050138 (Del. Ch. Sept. 10, 2004) .............................................................4

LIBNY/4932664.1

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 80a-20(a) .................................................................................................8

17 C.F.R. § 270.12b-1....................................................................................2, 10, 11

Fed. R. Civ. P. 8(a) ...................................................................................................10

Fed. R. Civ. P. 9(b) ...........................................................................................2, 9, 10

Fed. R. Civ. P. 23.1 ....................................................................................................4

Mass. Gen. Laws ch. 156B, § 61 ...............................................................................5

Mass. Gen. Laws ch. 156D, §7.44(a)........................................................................1

Mass. Gen. Laws ch. 156D, § 7.44(d) .............................................................. 2-3, 6, 9

Mass. Gen. Laws ch. 156D, § 8.30 .........................................................................3, 5

Mass. Gen. Laws ch. 156D, § 8.42 ...........................................................................3

LIBNY/4932664.1

## PRELIMINARY STATEMENT

In our moving papers, we demonstrated that where, as here, the board of trustees of a Massachusetts business trust has determined in good faith after conducting a reasonable inquiry to reject a shareholder's demand, his derivative suit should be dismissed.[1] The Supreme Judicial Court of Massachusetts has recently confirmed that this is the rule under Massachusetts law. *Halebian v. Berv*, 931 N.E.2d 986 (Mass. 2010). Plaintiff does not even attempt to argue in his opposition that the Independent Trustees lacked independence, did not act in good faith, or failed to conduct a reasonable inquiry. Instead, he argues that his claims are exempt from the requirements of the Massachusetts demand statute. His arguments are without merit.

Plaintiff cannot evade his burden under Massachusetts law by arguing that the conduct he complains of involves "ongoing illegal activity." In virtually every case in which a board is called upon to investigate a demand, alleged "illegal activity" is involved. The Massachusetts demand statute does not exempt cases alleging ongoing illegal activity from the requirement that courts dismiss derivative actions where the board has properly rejected a demand. Plaintiff does not -- and cannot -- cite to a single case that refused to uphold a board's reasonable, good faith determination that a derivative lawsuit should not proceed simply because the plaintiff alleged ongoing illegal activity.

Plaintiff's argument that federal law preempts the Massachusetts demand statute is also a non-starter. The U.S. Supreme Court, in the very case Plaintiff relies upon, among others, has recognized the authority of an investment company's board of trustees under state law to terminate shareholder derivative litigation. *E.g., Burks v. Lasker*, 441 U.S. 471 (1979). And Plaintiff does

---

[1]    *See* Independent Trustees' Moving Memorandum ("Trustee Mem."), Docket No. 28, at 12-17; Mass. Gen. Laws ch. 156D, §7.44(a).

not -- and cannot -- cite a single case in which a court has held that the Massachusetts demand

statute conflicts with the Investment Company Act of 1940 ("ICA").

Finally, Plaintiff fails in his Opposition to explain how he has stated a claim on the merits.

He concedes that his breach of fiduciary duty claim alleges intentional conduct, yet he does not

point to any facts alleged in his Complaint that demonstrate such conduct, let alone allegations that

would satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

He also does not -- and cannot -- argue that the Trust did not receive any benefit from the

challenged Rule 12b-1 payments, and thus cannot support his claim for waste.

The Complaint therefore should be dismissed in its entirety with prejudice.

## ARGUMENT

## I.

## THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 23.1 AND MASSACHUSETTS LAW

### A.    Plaintiff Cannot Evade His Burden By Alleging "Ongoing Illegal Activity"

Plaintiff concedes that his Complaint "makes no attempt to allege facts that rebut any

business judgment" of the Trust's Board.[2]   Instead, Plaintiff claims that because he has alleged

ongoing illegal conduct, the Board's independence and "other factors pertinent to the business

judgment rule . . . can all be disregarded."[3]   This argument completely ignores the express

requirements of the Massachusetts demand statute.   Section 7.44(d) states that a court "shall

dismiss" a derivative action following a board's rejection of the plaintiff's demand "unless the

plaintiff has alleged with particularity facts rebutting the corporation's filing" showing the board's

independence and "that the independent directors made the determination [to reject the demand] in

---

[2]    Plaintiff's Opposition to Motion to Dismiss the Amended Complaint by the Independent Trustee
Defendants and Nominal Defendant Eaton Vance Municipals Trust ("Opp.") at 2.

[3]    *Id.*

2

good faith after conducting a reasonable inquiry upon which their conclusions are based." Mass.

Gen. Laws ch. 156D, § 7.44(d) (emphasis added). The statute does not contain any exception for

derivative suits alleging "ongoing illegal conduct."

The Supreme Judicial Court of Massachusetts very recently construed Section 7.44 for the

first time in *Halebian v. Berv*, 931 N.E.2d 986 (Mass. 2010). *Halebian* held that Section 7.44

applies regardless of whether a derivative complaint was filed before or after a board rejected a

shareholder's demand. In so doing, the Supreme Judicial Court reiterated that the statute gives *the*

*board* the power to decide whether to bring a lawsuit, and that a derivative lawsuit must be

dismissed unless the plaintiff pleads facts showing that the board's decision to reject the demand

was not made in good faith after reasonable inquiry. *Id.* at 995.[4]

Plaintiff's argument that the Trust's Board cannot make "a business decision to insulate

itself from any judicial review of its *ongoing decisions to violate the law*" confuses two separate

concepts, as the *Halebian* court makes clear.[5] In *Halebian*, the Supreme Judicial Court

distinguished between (i) the business judgment "rule,"[6] which protects officers and directors from

liability for conduct taken in good faith and reasonable care in the best interest of the corporation,

and (ii) the business judgment "doctrine" set forth in the Massachusetts demand statute, which

"protects a corporation's decision that prosecution of the claim demanded by the shareholder is not

in the best interests of the corporation where the decision is made in good faith by independent

decision makers after reasonable inquiry." *Halebian*, 931 N.E.2d at 991 n.11. The "rule" may not

shield directors or officers from liability for ongoing illegal activity, whereas the "doctrine," which

---

4    The *Halebian* court also confirmed that the demand statute applies to Massachusetts business trusts,
     such as the Trust here. *See* 931 N.E.2d at 988 n.4.

5    Opp. at 2 (emphasis in original).

6    *See* Mass. Gen. Laws ch. 156D, §§ 8.30, 8.42.

3

is the basis for the Independent Trustees' motion here, protects the decision not to pursue a claim

alleging ongoing illegal activity.

Thus, in *Miller v. American Telephone & Telegraph Company*, 507 F.2d 759, 762 (3d Cir.

1974) upon which Plaintiff relies (Opp. at 4-5, 9), the court distinguished between the two

concepts outlined in *Halebian* and rejected Plaintiff's logic here.  In *Miller*, the shareholder

plaintiff alleged that a telephone company's provision of services to the Democratic National

Convention ("DNC") without charge amounted to an illegal contribution which violated campaign

finance laws and "involve[d] the corporation in criminal activity." *Id*. at 763.  At issue was

whether the decision not to collect the money owed by the DNC was subject to the directors'

business judgment under New York law.  The court held it was not.  Unlike this case, in *Miller* no

demand was made on the company's board to take action.  Nor did the board investigate the

allegations of illegal conduct.  The *Miller* court noted, however, that "[h]ad plaintiffs' complaint

alleged only a failure to pursue a corporate claim, application of the sound business judgment rule

would support the district court's ruling that a shareholder could not attack the directors'

decision." [7]

---

[7]     *Id.* at 762; *see* Opp. at 5.  None of the other cases Plaintiff cites involved a board's decision not to
pursue a claim demanded by a shareholder, let alone held that such a decision was invalid because of
ongoing illegal conduct.  (*See* Opp. at 6 and n.2.)  *E.g.*, *Cal. Pub. Employees' Ret. Sys. v. Coulter*,
2002 WL 31888343, at *11 (Del. Ch. Dec. 18, 2002) (court found that the plaintiff adequately alleged
that conduct relating to re-pricing of stock options fell outside of the board's authority, and thus
demand was excused); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*, 854 A.2d
121, 131 (Del. Ch. 2004) (non-derivative case involving claims between members of a limited liability
company); *In re Walt Disney Co. Deriv. Litig.*, 2004 WL 2050138, at *8 (Del. Ch. Sept. 10, 2004)
(granting summary judgment dismissing claim that defendant breached his fiduciary duty when he
negotiated his employment contract).  Indeed, many of Plaintiff's cited cases upheld the board's
business judgment and dismissed the plaintiff's complaint.  *See, e.g., Grimes v. Donald*, 673 A.2d
1207, 1220 (Del. 1996) (discussed in the Trustees Mem. at 12-13 n.48); *Kahn ex rel. DeKalb Genetics
Corp. v. Roberts,* 679 A.2d 460, 466 (Del. 1996); *Gantler v. Stephens*, 2008 WL 401124, at *1 (Del.
Ch. Feb. 14, 2008); *see also Guttman v. Huang*, 823 A.2d 492, 506 n. 34 (Del. Ch. 2003) (dismissing
complaint for failure to satisfy particularity requirement of Rule 23.1); *Desimone v. Barrows*, 924 A.2d
908 (Del. Ch. 2007) (dismissing complaint because demand was not excused).

LIBNY/4932664.1

*Gray v. Barnett (In re Dehon, Inc.)*, 334 B.R. 55, 66 (Bankr. D. Mass. 2005) (Opp. at 5-6, 9), also involved the "rule" described in *Halebian* -- not the "doctrine" at issue here -- and thus does not support Plaintiff's argument. *Gray* is not even a derivative action, and thus does not address whether the board made a good faith, reasonable decision that maintenance of a lawsuit was not in the company's best interest.[8] Rather, in *Gray* the company's bankruptcy plan administrator alleged that the company's directors illegally made distributions to the company's stockholders when the company was insolvent, in violation of Mass. Gen. Laws ch. 156B, § 61. The defendants argued that the business judgment rule (Mass. Gen. Laws ch. 156D, § 8.30) protected them from liability because they believed that the distributions were in the corporation's best interest. The court disagreed, explaining that the business judgment rule would only protect the directors' determination that the company was not insolvent and that the distributions would not render it insolvent, but would not shield them from illegally making distributions to stockholders. *Id.* at 66. The Massachusetts demand statute was never at issue in the case.

Plaintiff thus fails to cite a single case decided before or after enactment of the Massachusetts demand statute that overturned a board's decision to not pursue litigation because the plaintiff had alleged ongoing illegal conduct. By contrast, the Independent Trustees have cited authorities involving demand futility that hold that conclusory allegations of illegal conduct do not undermine a board's right to determine whether to bring a lawsuit on the company's behalf.[9]

---

8  *Compare* Opp. at 9 (characterizing *Gray* as a "derivative complaint") *with Gray*, 334 B.R. at 65 ("Defendants rely primarily on language from Massachusetts decisions discussing the business judgment rule presumption in the context of shareholder derivative suits…The claims made here are not derivative.").

9  *See* Trustee Mem. at 16. Indeed, Plaintiff's cited authority recognizes that "directors, despite being defendants, are still capable of making an honest decision about whether to sue on the corporation's behalf," and that a derivative suit can be barred entirely "upon a showing that the directors' refusal to sue was in good faith." *Evangelist v. Fidelity Mgmt. & Research Co.*, 554 F. Supp. 87, 90-91 (D. Mass. 1982) (discussed in Opp. at 8).

LIBNY/4932664.1

Plaintiff's contention that his Complaint "does not have to **prove** his allegations of ongoing illegal conduct" also misses the mark.[10]   The basis for the Independent Trustees' motion is that Plaintiff must plead with particularity sufficient facts to show that the Board's decision to reject his demand was not made in good faith after conducting a reasonable inquiry, and that he has not done so.[11]   Plaintiff acknowledges that allegations of past illegal conduct are subject to the Board's business judgment not to pursue such claims.[12]   And he cannot point to any exemption in Section 7.44(d) for cases alleging "ongoing illegal conduct."   That is not surprising, as such an exception would eviscerate Section 7.44's policy of vesting the power to manage the business and affairs of a trust, including the power to pursue or terminate litigation, in the hands of the board of directors. *See Halebian*, 931 N.E.2d at 995.

As discussed in their Moving Memorandum, the Independent Trustees conducted a detailed and thorough review of Plaintiff's demand, and acting in good faith exercised their reasonable business judgment in concluding that Plaintiff's claims had no merit.[13]   Plaintiff's allegations of purported ongoing illegal conduct do not satisfy his burden under Section 7.44(d) to plead with particularity facts rebutting that showing.

### B.   The ICA Does Not Preempt Application of the Massachusetts Demand Statute

Plaintiff also argues that the ICA preempts application of Massachusetts' demand statute. He relies principally on *Burks v. Lasker*, 441 U.S. 471 (1979).[14]   Plaintiff is correct that *Burks* "is controlling authority here."[15]   *Burks*, however, held quite the opposite of what Plaintiff contends:

---

[10]   Opp. at 9 (emphasis in original).

[11]   *See* Trustee Mem. at 6-11, 14-15.

[12]   *See* Opp. at 5.

[13]   *See* Trustee Mem. at 6-11, 14-15.

[14]   Opp. at 11.

[15]   Opp. at 11.

6

it recognized that federal courts should respect a board's decision under state law to terminate a shareholder derivative suit alleging violations of the ICA.

In *Burks*, the plaintiff brought a derivative action on behalf of a registered investment company, alleging that the fund's investment adviser and directors breached the ICA, the Investment Advisers Act ("IAA"), and contractual and common law duties when the fund purchased commercial paper issued by a railway company that went bankrupt. *Id.* at 473. The district court held that the independent directors had properly exercised their business judgment under Delaware law to terminate a derivative action asserting federal as well as state law claims. The Second Circuit, echoing the logic Plaintiff employs here, reversed and held that "as a consequence of the ICA, disinterested directors of an investment company do not have the power to foreclose the continuation of nonfrivolous litigation brought by shareholders . . . ." *Id.* at 475 (citation and internal quotations omitted).

The Supreme Court reversed the Second Circuit, and explained that the ICA and IAA do not "forbid director termination of all nonfrivolous actions." *Id*. at 486. The Court ruled that "federal courts should apply state law governing the authority of independent directors to discontinue derivative suits to the extent such law is consistent with the policies of the ICA and IAA." *Id.* In so doing, the Court emphasized Congress' purpose in structuring the ICA to place a fund's unaffiliated directors in the role of "independent watchdogs" overseeing the fund's internal affairs, including the decision whether to bring litigation:

> [T]he structure and purpose of the ICA indicate that Congress entrusted to the independent directors of investment companies, exercising the authority granted to them by state law, the primary responsibility for looking after the interests of the funds' shareholders. There may well be situations in which the independent directors could reasonably believe that the best interests of the shareholders call for a decision not to sue – as, for example, where the costs of litigation to the corporation outweigh any potential

7

> recovery . . . . In such cases, it would certainly be consistent with the
> [ICA] to allow the independent directors to terminate a suit, even
> though not frivolous.  Indeed, it would have been paradoxical for
> Congress to have been willing to rely largely upon "watchdogs" to
> protect shareholder interests and yet, where the "watchdogs" have
> done precisely that, require that they be totally muzzled.

*Id.* at 484-85.  *Burks* thus embraces the principle that a fund's independent directors may, in the

exercise of their business judgment, refuse a demand to bring litigation under the ICA.

The Supreme Court later reiterated these principles in *Kamen v. Kemper Financial

Services, Inc.*, 500 U.S. 90 (1991).  There, a mutual fund shareholder brought a derivative suit

alleging that a fund's proxy statement contained misleading facts in violation of Section 20(a) of

the ICA.  Rejecting an argument similar to the one Plaintiff asserts here -- that the ICA preempts

state law on the issue of demand -- the Court ruled that courts should apply state law in

determining whether shareholders are required to make a demand before bringing claims under the

ICA.  The *Kamen* Court emphasized the importance of the demand requirement "to protect the

directors' prerogative to take over the litigation or to oppose it," and explained that the board's

decision to do the latter is an exercise of their business judgment.  *Id.* at 101 (citations omitted).[16]

Plaintiff cites *SEC v. Keating*, 1992 WL 207918 (C.D. Cal. Jul. 23, 1992), for the

proposition that the business judgment rule cannot "supersede the requirements" of the federal

securities laws.[17]  *Keating* was not a derivative action.  In *Keating*, the SEC sought to enjoin

violations of the federal securities laws, and an individual defendant asserted the business

judgment rule as an affirmative defense to the SEC's charges.  The court held that such a defense

"is inapplicable to an injunctive action brought by the SEC to enforce the securities laws."  *Id.* at

---

[16]   On remand, the Seventh Circuit, applying Maryland law as directed by the Supreme Court, upheld the
decision by the fund's independent directors to terminate the derivative litigation alleging violations of
the ICA.  *Kamen v. Kemper Fin. Servs., Inc.*, 939 F.2d 458, 462-63 (7th Cir. 1991).

[17]   Opp. at 11.

8

*4.  *Keating*'s refusal to allow assertion of the business judgment rule as a defense to securities

claims brought by the SEC does not in any way preclude application of the business judgment

doctrine (as explained in *Halebian*) to terminate private shareholder derivative actions alleging

violations of the ICA.

Plaintiff's preemption argument thus also lacks any merit.  Since Plaintiff has not complied

with Section 7.44(d) or shown any reason why he is exempt from complying with that statute, his

Complaint should be dismissed.

## II.

### PLAINTIFF FAILS TO DEMONSTRATE THAT HIS AMENDED COMPLAINT STATES A CLAIM AGAINST THE INDEPENDENT TRUSTEES

### A.    Plaintiff's Allegations of an Intentional Breach of Fiduciary Duty Fail to Satisfy the Applicable Pleading Standards

Plaintiff's Opposition attempts to avoid Rule 9(b)'s heightened pleading requirements by

arguing that his breach of fiduciary duty claim is not based on intentional conduct that sounds in

fraud.[18]  Yet, Plaintiff also argues that he asserts more than a *Caremark* failure of oversight claim

because the Trustees knowingly made illegal payments out of Trust assets.[19]  Plaintiff thus

undermines his own argument.

Plaintiff cites to *Gerber v. Bowditch*, 2006 WL 1284232 (D. Mass. May 8, 2006) (Opp. at

12), where this Court made clear that Rule 9(b)'s heightened pleading standard "extends to all

claims of fraud, whatever may be the theory of legal duty statutory, tort, contractual or

fiduciary."[20]  In *Gerber*, this Court applied Rule 9(b) to the plaintiffs' breach of fiduciary duty

claims arising from, among other things, the defendants' purported nondisclosures in connection

---

[18]    Opp. at 12-13; *see In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).

[19]    *Id.* at 13-15.

[20]    *Gerber*, 2006 WL 1284232, at *13 (citation and internal quotations omitted).

LIBNY/4932664.1

with a tender offer and their failure to ensure that the plaintiffs received a fair value for their

partnership interests.[21]

Here, Plaintiff asserts that *Caremark* does not apply because he is alleging that the Trustees

were "aware that [they] were deciding to make asset-based compensation payments to broker-

dealers" which purportedly were illegal, thus breaching their fiduciary duties "arising from their

own misconduct in using Trust assets improperly" to the Trust's detriment.[22]  Such allegations are

precisely the type of "intentional breaches of fiduciary duties" which this Court has stated are

subject to Rule 9(b).  *Sachs v. Sprague*, 401 F. Supp. 2d 159, 170 n.15 (D. Mass. 2005).  Far from

satisfying Rule 9(b), Plaintiff has not even alleged "sufficient factual matter" under Rule 8(a) that

the Trustees knowingly made illegal payments in order to survive a motion to dismiss.[23]  And, to

the extent that Plaintiff is alleging something less than knowing, intentional conduct, such as the

Trustees' purported failure to ensure the Trust's compliance with all applicable laws and

regulations, he similarly has failed to plead facts to support the requisite conscious disregard of

duties for such a *Caremark* claim.[24]

### B.       Plaintiff Does Not Allege that the Trust Received No Benefit From the Rule 12b-1 Payments, Thus Failing to Plead a Claim for Waste

Plaintiff contends that he has adequately alleged a waste claim because Trust assets were

used "for unlawful compensation payments to broker-dealers."[25]  Yet even Plaintiff's own cited

authority holds that to state a claim for waste, a complaint must allege conduct "for which the

---

[21]   *Id.* at \*14.  Plaintiff's other cited authority, *N. Am. Catholic Educational Programming Foundation, Inc. v. Cardinale*, 567 F.3d 8, 15-16 (1st Cir. 2009) (Opp. at 12), likewise applied Rule 9(b) to the breach of fiduciary duty claims.

[22]   Opp. at 14.

[23]   *See* Trustee Mem. at 17 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

[24]   *See* Trustee Mem. at 18-19.

[25]   Opp. at 16.

LIBNY/4932664.1

corporation receives *no benefit*." *Hendersen v. Axiam, Inc.,* 1999 WL 33587312, at \*53 (Mass.

Super. Ct. June 22, 1999) (emphasis added) (discussed in Opp. at 16). *See also In re Teu*

*Holdings, Inc.*, 287 B.R. 26, 34 (Bankr. D. Del. 2002) (Opp. at 17) ("[a] corporate waste claim

must fail if the corporation received any benefit from the challenged transaction").[26]

Plaintiff's waste claim does not and could not allege that the Trust failed to receive *any*

distribution services from EVD or the broker-dealers in exchange for the Rule 12b-1 payments.

Instead, Plaintiff merely asserts that because the broker-dealers did not register as investment

advisers and establish advisory accounts, the Trust and its shareholders only had brokerage

accounts which were "not a comparable service."[27]  That hardly constitutes an "unconscionable

case" of Trustees irrationally squandering away the Trust's assets for no consideration, requiring

dismissal of Plaintiff's waste claim.  *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000).

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in the Independent Trustees'

Moving Memorandum and in EVD's and Thomas Faust's Moving and Reply Memoranda,

Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

---

[26]  Thus, in *In re Sabine, Inc.*, 2006 WL 1045712 (Bankr. D. Mass. Feb. 27, 2006) (Opp. at 17), the court upheld a waste claim alleging a diversion of a subsidiary's funds to cover expenses from the corporate parent's other operations because the subsidiary "did not receive *any* benefit" from those transfers. *Id.* at \*9 (emphasis in original). *See also Independent Cellular Tel., Inc. v. Barker*, 1997 WL 153816, at \*6 (Del. Ch. Mar. 21, 1997) (Opp. at 17) (alleging that the corporation's payment of a finder's fee "is not justified by *any* service provided") (emphasis added).  Plaintiff's other cases are also distinguishable.  (Opp. at 15-17.)  *See Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1071 (N.D. Cal. Dec. 24, 2009) (alleging that the corporation failed to use any of the investors' funds to develop and sell its namesake product); *Stern v. General Electric Co.*, 1992 WL 8195, at \*1 (S.D.N.Y. Jan. 14, 1992) (challenging corporation's payments to support anti-business politicians whose positions harmed the interests of the company's shareholders).

[27]  Opp. at 16 n.8.

11

Dated:  September 10, 2010

Respectfully submitted,

GOODWIN PROCTER LLP


/s/ Stacey B. Ardini
Stacey B. Ardini (BBO #663161)
53 State Street
Boston, MA 02109
Tel: (617) 570-1000
Fax: (617) 523-1231
sardini@goodwinprocter.com


Mark Holland (admitted *pro hac vice*)
Mary K. Dulka (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone:  (212) 813-8800
Fax:  (212) 355-3333
mholland@goodwinprocter.com
mdulka@goodwinprocter.com

*Attorneys for the Independent Trustee Defendants and
the Trust*

12

## CERTIFICATE OF SERVICE

I, Stacey B. Ardini, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 10, 2010.


                                      /s/ Stacey B. Ardini